DCP:JRS/GK/DAS
F. #2021R00900

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.
*   FEBRUARY 22, 2023   *
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

Judge Margo K. Brodie
Magistrate Judge Ramon E. Reyes

- - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

CARLOS WATSON and
OZY MEDIA, INC.,

              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - X

I N D I C T M E N T

Cr. No. **23-CR-82**
(T. 18, U.S.C., §§ 371, 981(a)(1)(C),
1028A(a)(1), 1028A(b), 1028A(c)(5),
1349, 2 and 3551 et seq.; T. 21, U.S.C.,
§ 853(p); T. 28, U.S.C., § 2461(c))

THE GRAND JURY CHARGES:

## INTRODUCTION

At all times relevant to this Indictment, unless otherwise indicated:

I.    The Defendants and Co-Conspirators

    1.    The defendant OZY MEDIA, INC. ("OZY") was a Delaware corporation headquartered in Mountain View, California. OZY was a media and entertainment company whose businesses included digital newsletters, television production, podcasts and live events.

    2.    The defendant CARLOS WATSON was a resident of Mountain View, California. WATSON was OZY's founder and Chief Executive Officer ("CEO"), as well as the star and host of several of OZY's television programs.

    3.    Samir Rao ("Rao") was a resident of Menlo Park, California, and Palo Alto, California. Rao was OZY's Chief Operating Officer.

    4.    Suzee Han ("Han") was a resident of San Francisco, California, and New York, New York. Han was OZY's Chief of Staff from approximately 2019 to 2021.

II.   OZY's History

      5.     The defendant CARLOS WATSON founded OZY in 2012.  That same year, WATSON recruited Rao to join the company, and Rao was later given the title of "Co-Founder."

      6.     OZY had a five-person board of directors (the "Board") with three directors appointed by holders of OZY common stock and two directors appointed by outside investors.  Because WATSON held a controlling interest in the common stock, WATSON effectively appointed three of the directors and controlled the Board.

      7.     OZY officially launched in 2013.  At the time, its core products were its website and daily newsletters sent to subscribers summarizing news and highlighting content on OZY's website.

      8.     From its inception to approximately the end of 2014, OZY raised approximately $35 million dollars from investors including Early Investor 1, a philanthropy- and venture capital-focused limited liability company, an entity the identity of which is known to the Grand Jury.  During this time period, OZY closed three fundraising rounds (the Series Seed, Series A and Series B rounds), grew its audience and obtained several high-profile interviews and collaborations.

      9.     By 2015, however, OZY's digital business was not succeeding.  In part in an attempt to diversify revenue away from a pure digital business, OZY began to focus more on creating television content and on producing a live festival, known as "OZY Fest."

      10.    OZY's television and festival businesses were significantly more expensive to run than a digital business.  As a result, by 2016, OZY was rapidly spending its

available cash.  OZY borrowed several million dollars in 2016, primarily from preexisting investors, but that cash began to run out in 2017.

11.      Beginning in 2018, OZY took on increasing debt in order to survive. Much of this debt was high-interest loans secured by OZY's accounts receivable.  At times, OZY was paying tens of thousands of dollars a day in interest on these debts.  To service that debt and to continue its operations, OZY took on even more debt and sought additional money from investors and potential investors.

III.      The Fraudulent Scheme

12.      In or about and between 2018 and 2021, the defendants CARLOS WATSON and OZY, together with Rao, Han and others, engaged in a scheme to defraud OZY's investors, potential investors, potential acquirors, lenders and potential lenders through material misrepresentations and omissions about, among other things, OZY's historical and projected financial results, OZY's debts, OZY's audience numbers, the identities of OZY's investors and the sizes of their investments, the existence and timing of investment rounds, the identities of OZY's business partners, the existence and terms of key contracts and purported offers to purchase OZY by high-profile corporations.

A.      2018: Misrepresentations to Investors and Potential Investors Regarding Revenue

13.      In 2018, OZY raised money in part through the sale of convertible notes. To induce investors to purchase these notes and to maintain investors' interest in making future equity investments, beginning in at least January 2018, the defendant CARLOS WATSON, together with Rao and others, misrepresented, among other things, OZY's historical and forecasted revenue.

14.      For example, the defendant CARLOS WATSON, together with Rao and others, represented to numerous investors and potential investors that OZY had approximately

doubled its revenues from 2016 to 2017, from approximately $6 million in 2016 to approximately $12 million in 2017. In reality, OZY's revenue had been almost flat in 2017 and totaled less than $7 million.

15. The defendant CARLOS WATSON, together with Rao and others, further represented to investors and potential investors that OZY would approximately double its revenue again in 2018 and would achieve revenue of $22 million. WATSON and Rao repeated this forecast to investors and potential investors in emails over the course of 2018, even after it became clear that OZY could not achieve that result, and knowingly provided false representations on OZY's progress towards meeting that result.

16. For example, on or about August 5 and 8, 2018, the defendant CARLOS WATSON sent emails to investors in OZY's convertible notes, which emails included a company update and an invitation to invest further. Those emails stated that OZY had raised $12 million in revenue in 2017 and had already booked $14 million in revenue in 2018 against its $22 million goal. However, WATSON knew at that time that OZY had earned less than $7 million in revenue in 2017 and had not booked $14 million in revenue at that time in 2018. WATSON received weekly internal revenue updates, and on or about August 4, 2018, WATSON received an internal weekly revenue update stating that OZY had as of that date booked approximately $8.1 million in revenue for 2018.

17. On or about August 27, 2018, Rao, copying the defendant CARLOS WATSON, sent an email to the CEO of a venture capital lender ("Venture Lender 1 CEO"), an individual whose identity is known to the Grand Jury. WATSON was soliciting an investment from the venture capital lender ("Venture Lender 1"), an entity the identity of which is known to the Grand Jury. Rao's email to Venture Lender 1 CEO falsely stated that OZY had raised $12

million in revenue in 2017 and booked $14 million in revenue against its $22 million goal. At that time, both WATSON and Rao knew that OZY had not raised $12 million in revenue in 2017, had not booked $14 million in revenue in 2018 and did not expect to earn $22 million in revenue in 2018. On or about August 17, 2018, an OZY finance employee ("Finance Employee 1"), an individual whose identity is known to the Grand Jury, sent an email to WATSON and Rao in which she explained that she had reduced OZY's 2018 revenue forecast from $22 million to $12.7 million. Further, on or about August 25, 2018, WATSON and Rao received a weekly internal revenue update stating that OZY had booked only approximately $8.3 million in revenue for 2018.

18.     At the end of 2018 and in early 2019, the defendant CARLOS WATSON, together with Rao and others, sent emails to numerous investors and potential investors in OZY falsely representing that OZY had achieved $22 million in revenue in 2018. To make this false claim appear more impressive, WATSON also falsely claimed that OZY's revenue target for 2018 had been $18 million (as opposed to the $22 million figure he had earlier claimed) and that achieving $22 million in revenue meant that OZY had exceeded its revenue target. In fact, WATSON knew from weekly internal revenue emails he received in December 2018 that OZY's final revenue for 2018 was less than $11 million.

B.     2018-2019: The Fraudulent Series C Offering

19.     OZY's financial difficulties persisted into late 2018 and throughout 2019. During that period, the defendant CARLOS WATSON, together with Rao, Han and others, sought to raise additional money for OZY through the sale of preferred stock in a new "Series C" financing round. During the Series C process, WATSON, together with Rao, Han and others, induced and attempted to induce investors and potential investors to purchase Series C preferred

shares by means of material misrepresentations and omissions regarding, among other things, OZY's historical and projected financial results, as well as the participants in the Series C offering and the size of various individuals' and entities' investments in OZY.

20.     In addition, to induce investors to provide money to OZY as quickly as possible, the defendant CARLOS WATSON, together with Rao, Han and others, misrepresented and omitted material facts regarding the timing of the Series C closing and the Board's authorization for the issuance of Series C shares.  The Board did not authorize issuance of Series C shares until September 2019, and the Series C did not actually close until later that month. Nevertheless, beginning in at least February 2019, WATSON, together with Rao, Han and others, falsely claimed to certain investors that the Board had already approved the Series C issuance and that closings were scheduled to occur on a rolling basis beginning as early as February 2019.  As a result, WATSON, together with Rao, Han and others, induced these investors to transfer millions of dollars to OZY on the basis of misrepresentations and omissions, purportedly in exchange for shares that, unbeknownst to those investors, did not in fact exist and whose issuance had not yet been authorized by the Board.

i.     Misrepresentation to Series C Investor 1

21.     On or about November 5, 2018, the defendant CARLOS WATSON sent to a partner at a venture capital firm headquartered in Dallas, Texas, and New York, New York ("Series C Investor 1 Partner" and "Series C Investor 1," as applicable), an individual and entity whose identities are known to the Grand Jury, an investor presentation falsely claiming, among other things, that OZY had earned $12 million in revenue in 2017 and was on track to achieve $22 million in revenue in 2018.  WATSON knew that these claims were false.  On October 15, 2018, Rao had sent WATSON a copy of OZY's 2017 federal tax return, which stated that OZY

had earned less than $7 million in 2017.  Further, on or about November 3, 2018, two days prior

to his email to Series C Investor 1 Partner, WATSON received a weekly internal revenue report

stating that OZY had booked only approximately $8.6 million in revenue for 2018 year-to-date.

Based in part on this misrepresentation, on or about December 28, 2018, Series C Investor 1

Partner agreed that Series C Investor 1 would invest $2 million in the Series C offering.

          22.     On or about March 1, 2019, Rao, blind carbon copying the defendant

CARLOS WATSON, emailed Series C Investor 1 Partner a set of purported closing documents

for the Series C.  On or about March 7, 2019, Series C Investor 1 wired $2 million to OZY,

purportedly in exchange for Series C preferred stock, which in fact had not been issued and the

issuance of which had not been authorized by OZY's Board.

          ii.     Misrepresentations to Series C Investor 2

          23.     On or about January 2, 2019, the defendant CARLOS WATSON spoke to

an individual investor ("Series C Investor 2"), an individual whose identity is known to the

Grand Jury, by telephone and induced him to invest $1 million in the Series C offering.  That

same day, WATSON texted Rao to inform him that Series C Investor 2 had agreed to invest $1

million of his personal money, but that Rao should misrepresent the investment in investment

materials as coming from the venture fund that Series C Investor 2 had operated before it closed

("Venture Capital Fund 1"), an entity the identity of which is known to the Grand Jury.

Specifically, WATSON sent a text message to Rao in which he stated: "[Series C Investor 2] in

for another $1M . . . Put that in the document as [Venture Capital Fund 1]."

          24.     On or about January 4, 2019, the defendant CARLOS WATSON sent an

email to Series C Investor 2 in which he misrepresented that OZY had "doubled revenue" in

2018 to "$22M in revenue ($4M above plan)."  In fact, as set forth above, WATSON knew that

OZY's 2018 revenue was less than $11 million and that OZY's 2017 revenue was less than $7 million.

25.     On or about February 26, 2019, Rao, copying the defendant CARLOS WATSON, sent an email to Series C Investor 2 to which he attached a set of purported closing documents for the Series C offering.  The following day Series C Investor 2 wired $1 million to OZY, purportedly in exchange for Series C preferred stock, which in fact had not been issued and the issuance of which had not been authorized by OZY's Board.

iii.     Misrepresentations to Series C Investor 3

26.     On or about January 15, 2019, the defendant CARLOS WATSON sent an email to the owner of a large hedge fund ("Series C Investor 3"), an individual whose identity is known to the Grand Jury, in which he stated that the Series C offering was scheduled to close in January, with a second closing in February.  On or about February 25, 2019, WATSON sent an email to Series C Investor 3 to which he attached a set of purported Series C closing documents and falsely claimed that a first Series C closing was scheduled for that week.  In the email, WATSON repeated, among other material misrepresentations, that OZY had earned $22 million in revenue in 2018.

27.     On or about March 19, 2019, Series C Investor 3 sent an email to the defendant CARLOS WATSON and Rao in which he asked how much other investors had invested in the purported first Series C closing.  Rao responded, copying WATSON, and provided a list of investors who had purportedly invested in the first Series C closing and the purported amounts of their investments.  In fact, many of the investors listed in the email had not yet invested in the Series C and would not invest for months.  In other cases, the investor had wired money to OZY, purportedly in exchange for Series C preferred stock, but had sent

significantly less than Rao represented.  For example, although Series C Investor 1 had wired $2 million approximately two weeks earlier, Rao claimed Series C Investor 1 had invested $10 million.  In this email, Rao also misrepresented that the personal investment of Series C Investor 2 had been made by Venture Capital Fund 1.

28.     On or about March 21, 2019, Series C Investor 3 wired $1 million to OZY, purportedly in exchange for Series C preferred stock, which in fact had not been issued and the issuance of which had not been authorized by OZY's Board, and a seat on the Board.

iv.     Misrepresentations to Series C Investor 4

29.     In or about May 2019, the defendant CARLOS WATSON flew to South Korea, where he met with potential investors, including representatives of a Korean venture capital firm ("Series C Investor 4"), an entity the identity of which is known to the Grand Jury. On or about June 4, 2019, after Series C Investor 4 had expressed interest in investing in OZY, Rao, copying WATSON, sent representatives of Series C Investor 4 a purported income statement claiming that OZY earned approximately $22 million in revenue in 2018.  As set forth above, OZY in fact earned less than $11 million in revenue in 2018.

30.     On or about June 13, 2019, after a representative of Series C Investor 4 told the defendant CARLOS WATSON that Series C Investor 4 hoped to rely in part on due diligence done by other Korean investors, WATSON falsely told representatives of Series C Investor 4 that at least one of two specific Korean firms would be investing in OZY in the Series C offering.

31.     On or about July 1, 2019, Series C Investor 4 wired $2 million to OZY, purportedly in exchange for Series C preferred stock, which in fact had not been issued and the issuance of which had not been authorized by OZY's Board.

v.    Misrepresentations to Middle East Investors 1 and 2

32.    In or about March 2019, OZY engaged an intermediary to assist OZY in raising funds from Middle Eastern investors (the "Middle East Liaison"), an individual whose identity is known to the Grand Jury.  In or about May 2019, the Middle East Liaison and the defendant CARLOS WATSON traveled to the Middle East to meet potential investors in person, including two Middle Eastern investment funds ("Middle East Investor 1" and "Middle East Investor 2"), entities the identities of which are known to the Grand Jury.  In meetings with these potential investors, WATSON falsely claimed, among other things, that OZY had earned $12 million in revenue in 2017 and $22 million in revenue in 2018.

33.    On or about June 21, 2019, the Middle East Liaison sent an email to representatives of Middle East Investor 1, copying the defendant CARLOS WATSON and Rao, to which he attached OZY documents provided by Rao.  One of the attached documents purported to list committed investors in the Series C offering and falsely stated that Series C Investor 1 had committed to invest $10 million and that the "[Series C Investor 3] Group" had committed to invest $5 million.  In fact, Series C Investor 1 had invested only $2 million, and Series C Investor 3 had invested only $1 million, all of which was in his individual capacity.  No "[Series C Investor 3] Group" existed.

34.    On or about July 24, 2019 and July 26, 2019, Middle East Investor 1 and Middle East Investor 2 wired to OZY $3 million and $250,000, respectively, purportedly in exchange for Series C preferred stock, which in fact had not been issued and the issuance of which had not been authorized by OZY's Board.

####### vi.     The Real Series C Closing

35.     OZY's Board authorized issuance of the Series C shares on or about September 11, 2019.  The Series C closed two days later, on or about September 13, 2019.  In connection with the Series C offering, OZY raised approximately $13 million in new money.  In addition, in connection with the Series C offering, the approximately $22 million of convertible notes previously sold to investors in and before 2018 were converted into Series C preferred shares.  The vast majority of the new money had been raised in purported Series C closings prior to the actual close.  Virtually all of the money raised in the Series C had been induced through material misrepresentations and omissions regarding, among other things, OZY's historical and projected financial results, as well as misrepresentations and omissions about the timing of the Series C offering, investors in the Series C offering and the size of various individuals' and entities' investments in OZY.

C.     August-December 2019: Misrepresentations During the Potential Acquisition by Media Company 1

36.     Just prior to the real Series C closing, beginning in or about August 2019, the defendant CARLOS WATSON began discussions with a digital media company headquartered in New York, New York ("Media Company 1"), an entity the identity of which is known to the Grand Jury, about Media Company 1 potentially acquiring OZY and hiring WATSON to work at Media Company 1.  In connection with those discussions, and in an effort to induce Media Company 1 to acquire OZY at a higher price, WATSON, together with Rao, Han and others, made a series of material misrepresentations and omissions to Media Company 1 about, among other things, OZY's revenue, the existence of certain key contracts and the terms of key contracts.

37.     On or about September 26, 2019, Han sent an email to the defendant CARLOS WATSON to which she attached an OZY presentation intended for Media Company 1 and in which she stated, "Samir [Rao] wanted you to take a look @ the numbers to confirm this is what we want to share." The purported financial results shown in the presentation were false. For example, the presentation stated that OZY's 2018 revenue was $18.5 million, which was not only different from the fraudulent $22 million figure that WATSON, Rao and Han had previously provided to Series C investors, but also was well above the true revenue of less than $11 million. The presentation also stated that OZY's 2017 revenue was $12 million, which was well above the actual total 2017 revenue of less than $7 million.

38.     Soon after Han sent the presentation, the defendant CARLOS WATSON sent a text message to Rao and Han in which he stated that he had spoken to Han about the presentation and told her to "[m]ake sure we lead with TV/Festivals throughout the deck" and to "[u]pdate financials appropriately." Han then sent WATSON and Rao a revised presentation for WATSON's review. The revised presentation altered the false numbers to, among other things, increase OZY's projected revenue for 2020 and increase the share of OZY's forecasted revenue in 2019 and 2020 attributed to television and events.

39.     After receiving the revised presentation, the defendant CARLOS WATSON sent a text message to Han and Rao, in which he stated, "Looks good overall . . . Financials — Please review numbers with Samir.  Check things like comparative growth rates to make sure it will stand up to fresh scrutiny." Later that night, Han sent Media Company 1 a further revised presentation, copying WATSON and Rao. The revised presentation further increased the already false 2020 revenue forecast and again increased the share of OZY's revenue in 2019 and 2020 attributed to television and events.

40.     As part of due diligence of OZY, Media Company 1 asked to review
OZY's contracts for some of its television shows.  The defendant CARLOS WATSON, together
with Rao, Han and others, had previously misrepresented to Media Company 1 that some of the
contracts contained terms more favorable to OZY than the actual terms of the contracts.  As a
result, Rao and Han, with WATSON's knowledge, fraudulently altered the contracts for two of
OZY's television shows to make the contracts' terms appear to be significantly more favorable to
OZY.  Han then emailed the falsified documents to Media Company 1 on October 16, 2019.

41.     In reliance in part on the false financial data and false descriptions of
OZY's television contract terms, Media Company 1 began preliminary discussions with the
defendant CARLOS WATSON and Rao to potentially acquire OZY for up to $225 million of
Media Company 1 stock.  As part of the ensuing negotiations, WATSON pushed for a $35
million cash payment to himself, Rao and others.

42.     Ultimately, the transaction did not proceed.  Nevertheless, the defendant
CARLOS WATSON, together with Rao, Han and others, made false claims about the
negotiations with Media Company 1 in order to induce investors and potential investors to invest
in OZY.  For example, on or about December 7, 2019, WATSON sent a text message to Rao and
Han, in which he stated: "FYI — told [the Middle East Liaison] that [Media Company 1] offered
$300M to buy us."  As WATSON knew, Media Company 1 had never offered $300 million to
buy OZY.

D.     December 2019-March 2020: Misrepresentations to Bank Lender 1

43.     In or about December 2019, OZY was again on the verge of running out
of money.  To address the need for cash, the defendant CARLOS WATSON, together with Rao,
Han and others, attempted to induce an FDIC-insured bank ("Bank Lender 1"), a financial
institution the identity of which is known to the Grand Jury, to lend OZY money based on

misrepresentations and omissions about, among other things, OZY's revenue, the existence of signed contracts for new OZY television shows and the terms of such contracts.

44. The defendant CARLOS WATSON, together with Rao and others, sought a loan from Bank Lender 1 to be secured by anticipated revenues from a second season of an OZY television show (the "OZY Television Show"), the first season of which had aired on a cable network ("Cable Network 1"), an entity the identity of which is known to the Grand Jury. Because the loan from Bank Lender 1 was predicated on the anticipated revenue from the second season of the OZY Television Show, the loan could not go forward until the contract with Cable Network 1 for the second season was finalized.

45. To induce Bank Lender 1 to make the loan and make it sooner, the defendant CARLOS WATSON directed the then-CFO of OZY, an individual whose identity is known to the Grand Jury, to send Bank Lender 1 a fake signed contract purporting to be for the second season despite the fact that negotiations with Cable Network 1 were still ongoing. When the then-CFO refused, WATSON and Rao agreed that Rao would send a fake contract to Bank Lender 1 with false terms that were unrealistically favorable for OZY and a forged signature for the representative of Cable Network 1.

46. Rao sent the fake contract to Bank Lender 1 on or about December 30, 2019 and copied the then-CFO of OZY. This fake contract contained numerous favorable terms for OZY, including terms regarding the number of episodes and the contributions of Cable Network 1 to the production budget, and a forged signature of Cable Network 1's representative. Later the same day, after receiving the email with the fake contract, the then-CFO emailed the defendant CARLOS WATSON and Rao to say that she was resigning effective immediately. She explained, "this . . . is illegal. This is fraud. This is forging someone's signature with the

intent of getting an advance from a publicly traded bank." She continued, "To be crystal clear, what you see as a measured risk — I see as a <u>felony</u>. Did either of you (Carlos, when you asked me to put together a contract and / or Samir, when you sent the email) have any idea (or did it even occur to you to care) that I could go to jail for forgery and bank fraud?"

47.     Despite the then-CFO's email, for the next several months, the defendant CARLOS WATSON, together with Rao and others, continued to attempt to induce Bank Lender 1 to lend OZY several million dollars based on misrepresentations and omissions about, among other things, the expected revenue from the second season of the OZY Television Show. As these discussions continued, Bank Lender 1 asked to speak to a representative of Cable Network 1. Because WATSON and Rao had misrepresented the status of the relationship between OZY and Cable Network 1 and had sent Bank Lender 1 a fake contract, WATSON and Rao agreed that Rao should impersonate an actual executive from Cable Network 1 ("Identity Theft Victim 1"), an individual whose identity is known to the Grand Jury, in communications with Bank Lender 1. On February 13, 2020, with WATSON's approval, Rao created a fake email address in the name of Identity Theft Victim 1, which he used to communicate with representatives of Bank Lender 1 about the potential loan. Due in part to the start of the COVID-19 pandemic, Bank Lender 1 ultimately did not lend OZY any money.

E.     August 2019-October 2020: Additional Misrepresentations to Middle East Investor 1

48.     In or about and between August 2019 and October 2020, the defendant CARLOS WATSON, together with Rao, Han and others, sought to induce Middle East Investor 1 and others to invest additional money in OZY by means of misrepresentations and omissions regarding, among other things, OZY's historical and projected financial results, the size of potential offers to acquire OZY and the identities of potential investors in OZY.

WATSON, Rao and Han ultimately succeeded in inducing Middle East Investor 1 to wire OZY an additional $5 million, purportedly in exchange for Series D preferred shares, which at that time had not been issued or authorized by the Board.

49.     In an effort to induce additional investments, the defendant CARLOS WATSON, together with Rao, Han and others, repeatedly told Middle East Investor 1 and other potential investors through a series of fraudulent communications that OZY would soon have a Series D financing round led by one of the owners of Cable Network 1 ("Network Owner 1") and a live entertainment company ("Entertainment Company 1"), an individual and an entity whose identities are known to the Grand Jury. In fact, neither Network Owner 1 nor Entertainment Company 1 were ever in discussions to invest in OZY, and neither ever invested in OZY. For example:

(a)     On or about August 20, 2019, WATSON sent an email to the Middle East Liaison, copying Rao, in which WATSON stated that he wanted "to confirm our Series D fundraising trip" the following month to the Middle East. WATSON wrote that he "expect[ed] to have clarity on [Network Owner 1] and [Entertainment Company 1]" participation in the Series D offering by the time of the trip, which would be "good ammo to drive conversations."

(b)     On or about August 20, 2019, Rao sent an email to the Middle East Liaison, copying WATSON and Han, in which Rao falsely stated, among other things, "We are pleased to share that we have commitments from both [Network Owner 1] and [Entertainment Company 1] to lead our Series D financing round." Prior to sending the email, Rao had sent a draft of the email to WATSON and Han, stating, "Are we good to send this note? Wanted to make sure we're aligned on the Series D timing / details." WATSON responded, "Yes send."

(c)     On or about September 3, 2019, WATSON, Rao and Han had a telephone call with the Middle East Liaison. During the call, WATSON sent text messages to Rao containing instructions of what to say, writing "$10M committed by [the initials for Entertainment Company 1] and [the initial of Network Owner 1's first name] — each," "$325M-pre" (a reference to the supposed valuation of OZY in the purported Series D), and "Great job!"

(d)     In or about December 2019, WATSON traveled to the Middle East, along with the Middle East Liaison, to meet with potential investors for the purported Series D offering, including Middle East Investor 1. Prior to the meeting with Middle East Investor 1, on or about December 9, 2019, the Middle East Liaison sent to a representative of Middle East Investor 1 an investor presentation prepared by OZY, copying WATSON and Han, for use in the meeting. In addition to false financial information, the presentation repeatedly stated that the Series D offering would be led by Network Owner 1 and Entertainment Company 1.

(e)     On or about January 27, 2020, Rao sent an email to the Middle East Liaison, copying WATSON and Han, in which he stated that "[Network Owner 1] is going to double her commitment to OZY in conjunction with the Series D." Prior to sending the email to the Middle East Liaison, Rao sent a draft to WATSON and Han for their review. After receiving the email, the Middle East Liaison sent it to Middle East Investor 1.

50.     The defendant CARLOS WATSON, together with Rao, Han and others, repeatedly provided Middle East Investor 1 inflated revenue figures for 2019 and inflated projections for 2020. For example, although OZY's actual revenue in 2019 was, at most, approximately $13 million, WATSON, together with Rao, Han and others, falsely told Middle East Investor 1 that OZY had earned $35 million in revenue in 2019. WATSON, together with

Rao, Han and others, also falsely told Middle East Investor 1 multiple times that OZY was forecasted to earn $65 million in 2020.  At the same time they were providing these inflated figures to Middle East Investor 1, WATSON, together with Rao, Han and others, was providing contradictory (but also false) figures to other investors.  For example:

(a)     On or about January 3, 2020, WATSON sent an email to the Middle East Liaison, copying Rao and Han, to which he attached a letter stating, "OZY revenue grew about 50% last year to $35M."  On January 6, 2020, the Middle East Liaison relayed this information to Middle East Investor 1, copying WATSON, Rao and Han on the transmittal email.  However, on or about January 5, 2019, WATSON sent a letter to another investor that claimed that OZY earned $30 million in revenue in 2019, and on January 9, 2020, Rao sent a letter to a third investor, copying WATSON, claiming $30 million in revenue in 2019.  As set forth above, OZY's actual 2019 revenue was, at most, approximately $13 million.

(b)     On or about March 21, 2020, Rao sent an email to Middle East Investor 1, copying WATSON and the Middle East Liaison, which included an update regarding OZY.  Among other misrepresentations, Rao falsely stated that OZY had a target revenue of $65 million for 2020.  WATSON knew that Rao's statement was false.  Two weeks earlier, on or about March 12, 2020, WATSON had sent an email to an OZY finance employee ("Finance Employee 2"), an individual whose identity is known to the Grand Jury, stating that OZY's goal for the year was $35 million in revenue.  Four days after the email to Middle East Investor 1, on or about March 25, 2020, Rao sent WATSON and Han a draft email for another investor that changed the annual revenue target for 2020 from the $65 million that was told to Middle East Investor 1 to $45 million, which was still $10 million higher than the target WATSON communicated internally.  That same day, Rao sent the email to the other investor with the $45

million figure, copying WATSON.  OZY ultimately earned approximately $11 million in revenue in 2020.

51.     On or about April 5, 2020, Middle East Investor 1 wired $3 million to OZY, purportedly in exchange for Series D preferred stock, which in fact had not been issued and the issuance of which had not been authorized by OZY's Board.  On or about October 7, 2020, Middle East Investor 1 wired an additional $2 million to OZY, purportedly in exchange for additional Series D preferred stock, which still had not been issued and the issuance of which had still not been authorized by OZY's Board.  The Board did not actually authorize issuance of any Series D preferred shares until May 2021.

F.     February-October 2020: Misrepresentations to Venture Lender 1

52.     OZY remained heavily in debt in 2020, and much of OZY's debt was high-interest debt requiring tens of thousands of dollars of interest payments each day, which OZY often struggled to pay.  In part to attempt to replace that debt load, the defendant CARLOS WATSON, together with Rao, Han and others, induced Venture Lender 1 to lend OZY approximately $11.5 million by means of misrepresentations and omissions regarding, among other things, OZY's historical and projected financial results, debt load and equity fundraising.

53.     On or about February 4, 2020, the defendant CARLOS WATSON had breakfast with Venture Lender 1 CEO, during which they discussed a potential loan to OZY. WATSON connected Venture Lender 1 CEO and Rao by email and instructed Rao to provide Venture Lender 1 CEO with investment materials.  On or about February 11, 2020, Rao sent an email to Venture Lender 1 CEO, copying WATSON, to which he attached a presentation falsely claiming that OZY was in the middle of a Series D financing round led by Network Owner 1 and Entertainment Company 1 and that OZY had earned approximately $30 million in revenue in

2019. As set forth above, each of these representations was false. The presentation also falsely claimed that OZY had lost only $1 million in 2019. In fact, OZY had lost over $6 million in 2019.

54.     Among the conditions for Venture Lender 1's loans to OZY was that OZY not have any outstanding liens from prior debtors. Although OZY was subject to numerous liens and had significant outstanding debt, the defendant CARLOS WATSON, together with Rao and others, falsely told Venture Lender 1 that OZY had no outstanding debt. In addition, to remove liens imposed by other debtors, Rao fraudulently terminated several liens by forging emails from lenders stating that the liens had been released. Rao then represented to Venture Lender 1 that there were no liens against OZY, but omitted the material fact that the pre-existing liens had been fraudulently removed.

55.     On or about March 3, 2020, Venture Lender 1 wired OZY $5 million in connection with its first loan to OZY.

56.     In April and May 2020, the defendant CARLOS WATSON, together with Rao, Han and others, sought an additional loan from Venture Lender 1. On April 17, 2020, Rao, copying WATSON and Han, sent an email to Venture Lender 1 CEO to which he attached a presentation that included numerous misstatements and claimed, among other things, that Series C Investor 3 and Series C Investor 1 had committed to additional investments in OZY in 2020, which was not true. On or about May 13, 2020, Venture Lender 1 wired OZY $3 million in connection with a second loan to OZY.

57.     In or about July 2020, the defendant CARLOS WATSON, together with Rao, Han and others, sought an additional loan from Venture Lender 1. On or about July 19, 2020, Rao sent an email to Venture Lender 1 CEO in which he falsely claimed that OZY had

earned over $18 million in revenue in the first half of 2020 and was on pace to exceed its target of $45 million in revenue for the year. Rao also attached to the email a presentation claiming that OZY had $14.9 million in cash as of June 30, 2020, as well as other misstatements about OZY's investors and the size of its revenues from particular customers and partners. Rao did not copy WATSON on the email to Venture Lender 1 CEO, but less than one minute after sending the email, Rao forwarded the email and attachments to WATSON and Han. Contrary to the claims in the email and attachments, WATSON, Rao and Han had been informed earlier that week by Finance Employee 2 that OZY was on track to earn only approximately $8 million in revenue in 2020. WATSON, Rao and Han had also been informed by Finance Employee 2 that OZY had less than $5 million in cash as of June 30, 2020 and had less than $4 million in cash at the time the email was sent.

58. On July 29, 2020, Venture Lender 1 wired OZY $2 million in connection with a third loan to OZY.

59. In September and October 2020, the defendant CARLOS WATSON, together with Rao, Han and others, sought an additional loan from Venture Lender 1. On or about September 14, 2020, Rao sent an email to Venture Lender 1 CEO soliciting an additional loan in which he claimed that OZY was on track to earn over $52 million in revenue in 2020. The email also attached a purported diligence file, which falsely stated, among other things, that OZY had been profitable in the second quarter of 2020 and was expected to earn over $5 million in profit in 2020. Before sending the email, Rao sent a draft of the email and its attachments to WATSON and Han for their review. WATSON, Rao and Han all knew that OZY was not on track to earn $52 million 2020; one week earlier, Finance Employee 2 had informed WATSON, Rao and Han that OZY was on track to earn only approximately $8.3 million in revenue in 2020.

WATSON, Rao and Han also all knew that OZY was not profitable.  On or about August 12, 2020, WATSON had sent a text message to Rao in which he complained that a new person had been hired to work on one of OZY's newsletters, stating, in part, "Why?  WTF?  Are we profitable and I do not know it?"  OZY in fact lost over $8 million dollars in 2020.

60.     In 2020, Venture Lender 1 CEO's child was an intern at OZY.  To prevent Venture Lender 1 CEO from learning of OZY's true financial situation, the defendant CARLOS WATSON, Rao and Han reminded each other to be careful in what they said around Venture Lender 1 CEO's child.  For example, on or about August 11, 2020, Han sent a text message to WATSON and Rao in which she stated: "Need to be careful as [Venture Lender 1 CEO's child] is on . . . [Her or His] dad thinks we had a good q2."  Similarly, on or about September 17, 2020, Han sent a text message to WATSON and Rao, in which she stated: "Be careful what [Venture Lender 1 CEO's child] heard . . . Hears . . . [Venture Lender 1 CEO] thinks we're doing 52."  WATSON responded: "Assume he is listening . . . Unequivocally [s]ay we are doing well."

61.     On or about October 23, 2020 Venture Lender 1 wired OZY $1.5 million in connection with a fourth loan to OZY.

G.     November 2020-February 2021: Attempted Fraudulent Investment from Financial Institution 1

62.     From approximately November 2020 to February 2021, the defendant CARLOS WATSON, together with Rao, Han and others, attempted to induce a financial institution headquartered in New York, New York ("Financial Institution 1"), an entity the identity of which is known to the Grand Jury, to invest up to $45 million in OZY by means of material misrepresentations and omissions regarding OZY's historical and projected financial results, debts and business relationships.  Had the full $45 million investment occurred as

intended, $6 million of the $45 million would have been paid to WATSON personally, $3 million would have been paid to Rao and $1 million would have been paid to Han.

63.     On or about November 1, 2020, Rao, copying the defendant CARLOS WATSON and Han, sent an email to an employee of Financial Institution 1, to which he attached an OZY investor presentation.  The presentation falsely stated, among other things, that OZY had earned $22 million in revenue in 2018 and $33 million in 2019 and expected to earn $45 million in revenue and $4 million in profit in 2020.  In fact, as set forth above, OZY's internal estimates from September 2020 predicted annual revenue of approximately $8 million and WATSON, Rao and Han knew that OZY was not profitable.  The presentation also included false claims about the size of payments by certain OZY business partners that significantly overstated the payments by these partners to OZY.  The presentation also claimed that certain individuals would be investing in OZY's Series D investment round, even though these individuals had not agreed to invest in the Series D offering.

64.     On or about December 4, 2020, Rao, copying the defendant CARLOS WATSON and Han, sent an email to employees of Financial Institution 1 to which he attached an OZY investor presentation and a spreadsheet containing purported 2021 revenue forecasts. Both attachments falsely stated that OZY had already booked approximately $39 million in revenue for 2021, approximately $5.75 million of which was purportedly payments from an online video service ("Video Service 1") owned by a large technology company ("Technology Company 1"), entities the identities of which are known to the Grand Jury, for the OZY show "The Carlos Watson Show" ("TCWS").  In fact, OZY was not paid by Video Service 1 to produce TCWS.  Prior to sending the materials to Financial Institution 1, Rao sent a draft of the cover email and the attachments to WATSON and Han for their review.

65.     On or about December 9, 2020, Rao, copying the defendant CARLOS
WATSON and Han, sent an email to an employee of Financial Institution 1 to which he attached
due diligence materials, including a purported income statement for January through November
2020, which stated that OZY had earned over $41 million in revenue in that period.  In fact,
OZY earned only approximately $11 million in revenue in all of 2020.  The due diligence
materials also again claimed that OZY had already booked $5.75 million in licensing revenue for
TCWS for 2021 from Video Service 1, even though OZY never earned any licensing revenue for
TCWS.  Prior to sending the materials to Financial Institution 1, Han sent multiple drafts of the
purported diligence materials to WATSON and Rao for their review.

66.     On or about January 13, 2021, as part of the due diligence process,
Financial Institution 1 asked the defendant CARLOS WATSON and Rao to arrange a meeting
with someone from Video Service 1 to discuss OZY's relationship with Video Service 1.
WATSON and Rao knew that the arrangement with Video Service 1 that they had described to
Financial Institution 1 was false and that such a meeting would reveal the falsity of their
representations.  Accordingly, WATSON and Rao agreed that Rao would impersonate an
executive from Video Service 1 ("Identity Theft Victim 2"), an individual whose identity is
known to the Grand Jury, in communications with Financial Institution 1.

67.     On or about January 28, 2021, Rao, with the agreement of the defendant
CARLOS WATSON, created a fake email address in the name of Identity Theft Victim 2.  That
same day, Rao sent an email to employees of Financial Institution 1, copying the fake email
address he had created for Identity Theft Victim 2, to purportedly introduce certain employees of
Financial Institution 1 to Identity Theft Victim 2.  The employees of Financial Institution 1

corresponded with who they believed to be Identity Theft Victim 2 by email and scheduled a call for February 2, 2021 at 11:00 a.m. (EST).

68.     During the February 2, 2021 call between the employees of Financial Institution 1 and Rao posing as Identity Theft Victim 2, the defendant CARLOS WATSON and Rao were in a room together.  Rao used a voice alteration app he had downloaded to his cellular telephone to mask his voice on the call, and impersonated Identity Theft Victim 2.  On the call, Rao, impersonating Identity Theft Victim 2, said, among other things, that he ordered a multi-episode pilot after meeting with WATSON, that TCWS had done exceptionally well in terms of viewership, and that Video Service 1 was expecting future seasons of TCWS and was considering whether TCWS could be Video Service 1's premium talk show.  These statements were false.

69.     Throughout the call, the defendant CARLOS WATSON sent a series of text messages to Rao, which included instructions of what to say and not say.  For example, at approximately 11:19 a.m. (EST), WATSON texted Rao, "I am a big fan of Carlos, Samir and the show."  At approximately 11:21 a.m. (EST), WATSON texted Rao, "Use the right pronouns . . . You are NOT OZY."  At approximately 11:26 a.m. (EST), after Rao had repeatedly used the first name of one of the employees of Financial Institution 1 who was on the call, WATSON texted Rao, "Stop using her name."

70.     Shortly after the February 2, 2021 call, one of the employees of Financial Institution 1 contacted the real Identity Theft Victim 2, who confirmed that he had not been on the call and that Video Service 1 had no role in the production of TCWS.  On February 3, 2021, employees of Financial Institution 1 spoke to the defendant CARLOS WATSON, who falsely

claimed that Rao had acted alone and had impersonated Identity Theft Victim 2 as a result of a mental breakdown.

71.     As a result of the Rao's impersonation of Identity Theft Victim 2 on the telephone call, Financial Institution 1 ended its due diligence and did not ultimately invest in OZY.

H.     November 2020-February 2021: The Investment of Investment Fund 1

72.     From approximately November 2020 to February 2021, the defendant CARLOS WATSON, together with Rao, Han and others, induced an investment fund ("Investment Fund 1"), an entity the identity of which is known to the Grand Jury, and related individuals to invest approximately $2 million in OZY by means of misrepresentations and omissions regarding OZY's historical and projected financial results and existing investors, as well as the reasons that Financial Institution 1 had not invested in OZY.

73.     On or about November 5, 2020, Han, copying the defendant CARLOS WATSON and Rao, sent an email to a representative of Investment Fund 1 to which she attached an OZY investor presentation.  The presentation included misrepresentations including, but not limited to, that OZY had earned $11 million in revenue in 2017, $22 million in revenue in 2018 and $33 million in revenue in 2019; and that OZY was on track to earn $45 million in revenue and $4 million in profit in 2020.  As set forth above, WATSON, Rao and Han knew that each of these claims was false.

74.     Investment Fund 1's investment strategy was to invest alongside larger investors.  On or about January 4, 2021, the defendant CARLOS WATSON spoke to a representative of Investment Fund 1 and falsely told him that OZY had term sheets from three prominent financial institutions to invest in the Series D offering, including Financial Institution 1.  In fact, OZY had not had any discussions regarding a Series D investment with any

of the financial institutions WATSON named except Financial Institution 1.  WATSON also falsely told the representative of Investment Fund 1 that all existing investors in OZY would be participating in the Series D offering.

76. On or about January 22, 2021, the defendant CARLOS WATSON told a representative of Investment Fund 1 that Financial Institution 1 would be leading the Series D offering, which WATSON claimed would close on February 10, 2021.

76. On or about February 8, 2021, after Financial Institution 1 had ended its negotiations with OZY, a representative of Investment Fund 1 sent a text message to the defendant CARLOS WATSON in which he asked if there were any updates on the Series D offering.  On February 15, 2021, the representative spoke to WATSON by telephone.  During the call, WATSON falsely stated that OZY was significantly overperforming its financial goals and, as a result, WATSON no longer wanted to move forward with the investment from Financial Institution 1 or the Series D offering at that time.  WATSON also stated that he would speak to the OZY Board about finding some way for OZY to allow Investment Fund 1 to invest in OZY.  WATSON omitted the true reasons that Financial Institution 1 would not be investing in OZY, including the impersonation of Identity Theft Victim 2.

77. On or about February 17, 2021, Rao spoke to a representative of Investment Fund 1 and falsely told him that the OZY Board had agreed that Investment Fund 1 could invest in the Series C offering at the Series C valuation level, which was significantly lower than the purportedly anticipated Series D valuation level.  On February 17, 2021, Rao sent an email to the representative to which he attached fabricated documents for a Series C closing. In response to the email, the representative responded to Rao that Investment Fund 1 might be

willing to invest up to $2 million.  Rao forwarded the email thread to the defendant CARLOS
WATSON and Han.

78.     On or about February 23, 2021, Investment Fund 1, along with individual
partners in Investment Fund 1 and their families, wired a total of $2 million to OZY, purportedly
in exchange for Series C preferred stock.

I.     March-May 2021: Misrepresentations to Technology Company 1

79.     From approximately March 2021 to May 2021, the defendant CARLOS
WATSON, together with Rao, Han and others, attempted to induce Technology Company 1 to
invest $25 million in OZY in connection with a contemplated hiring of WATSON by
Technology Company 1 by means of misrepresentations and omissions regarding, among other
things, OZY's historical and projected financial results and investors.

80.     Beginning in approximately October 2020, Technology Company 1
discussed hiring the defendant CARLOS WATSON to lead Technology Company 1's news
business.  In discussions with WATSON about the potential position, Technology Company 1
informed WATSON that he would have to leave OZY if he were to take the role.  Because
WATSON's leaving would potentially harm OZY's business, in or about March 2021,
Technology Company 1 and WATSON began discussing the possibility that, if WATSON were
hired by Technology Company 1, Technology Company 1 would invest $25 million in OZY's
Series D offering to help smooth WATSON's transition away from OZY.  WATSON requested
that $5 million of Technology Company 1's investment would be paid personally to WATSON,
Rao and Han.

81.     On or about March 16, 2021, the defendant CARLOS WATSON sent a
text message to Rao and Han in which he stated that he had a "[g]ood convo" with Technology

Company 1 and that he "told them $300M pre . . . and [initials for Early Investor 1] as the lead.  I should have said [Series C Investor 3]."  In fact, Early Investor 1 was not the lead investor in the Series D round, and neither Early Investor 1 nor Series C Investor 3 was investing in the Series D offering.

82.     On or about the next day, March 17, 2021, Rao sent an email to two Technology Company 1 employees, copying WATSON and Han, which included a summary of the purported Series D terms and an investment presentation.  In the email, Rao falsely claimed that the Series D offering would be led by Series C Investor 3.  The presentation attached to the email contained false and inflated revenue figures for 2017, 2018, 2019 and 2020.

83.     Conversations between Technology Company 1 and the defendant CARLOS WATSON continued through approximately May 2021.  At approximately the end of May 2021, WATSON withdrew from consideration for the position at Technology Company 1.  Technology Company 1 did not ultimately invest in OZY.

    J.     March-August 2021: Misrepresentations to Series D Investor 1

84.     From approximately March 2021 to August 2021, the defendant CARLOS WATSON, together with Rao, Han and others, induced Series D Investor 1, an investment firm headquartered in New York, New York, the identity of which is known to the Grand Jury, to invest $22.5 million in OZY by means of material misrepresentations and omissions regarding, among other things, OZY's historical and projected financial results, debt and investors, as well as misrepresentations regarding purported offers to purchase OZY.

85.     On or about April 21, 2021, the defendant CARLOS WATSON sent an email to Rao and Han, in which he asked Rao to send OZY's Series D investor presentation to a partner at Series D Investor 1 (the "Series D Investor 1 Partner"), an individual whose identity is

known to the Grand Jury.  That same day, Han emailed a Series D investor presentation to

WATSON, Rao and the Series D Investor 1 Partner.  The presentation falsely stated that OZY

had earned $46 million in revenue and $4 million in profit in 2020, when in fact OZY had earned

only approximately $11 million in revenue that year and had lost over $8 million.  The

presentation also claimed that the Series D offering was being led by Technology Company 1,

which would invest $30 million.  In fact, Technology Company 1 had never agreed to lead the

Series D offering and had not agreed to invest $30 million.  The presentation also omitted that

any investment by Technology Company 1 was contingent on WATSON leaving OZY to work

at Technology Company 1.

   86. On or about April 22, 2021, the defendant CARLOS WATSON spoke

with the Series D Investor 1 Partner and repeated the false claims that OZY had earned

$46 million in revenue in 2020 and that Technology Company 1 would be investing $30 million.

   87. On or about May 5, 2021, in response to due diligence questions, Han sent

an email to the Series D Investor 1 Partner, copying the defendant CARLOS WATSON and Rao,

in which she stated that OZY had booked revenue of $35.8 million for 2021.  That claim was

false.  Less than 24 hours earlier, Han had sent to WATSON and Rao an email in which she

stated that the total revenue booked for 2021 was $13.3 million as of May 4, 2021.

   88. On or about May 17, 2021, Series D Investor 1 wired OZY $20 million,

purportedly in exchange for Series D shares.  Over the following several days, Series D Investor

1 representatives repeatedly asked for confirmation that Technology Company 1, who Series D

Investor 1 had been told by the defendant CARLOS WATSON, Rao and Han was the lead

investor, had also closed on its investment in OZY.  Rao, working in coordination with

WATSON, repeatedly assured them that Technology Company 1 would be closing soon, which was false. For example:

(a)     On or about May 18, 2021, Rao sent an email to the Series D Investor 1 Partner, in which he falsely stated that "[Technology Company 1] gave us a heads up that they should be closing tomorrow given the focus on their [developer] conference today." Although Rao did not copy WATSON on the email, prior to sending it, he sent WATSON a text message containing the draft language for the email for WATSON's approval.

(b)     Later on or about May 18, 2021, Rao sent an email to representatives for Series D Investor 1, in which he falsely stated that "remaining investors are coming in this week, and in [Technology Company 1]'s case, facilitating the close is just mechanical at this point." Although Rao did not copy WATSON on the email, prior to sending it, he sent WATSON a text message containing the draft language for the email for WATSON's approval.

89.     On or about May 19, 2021, the Series D Investor 1 Partner asked Rao to reverse the wire and return Series D Investor 1's money so that Series D Investor 1 could close at the same time as Technology Company 1.

90.     On or about May 20 and 21, 2021, on calls with the Series D Investor 1 Partner, the defendant CARLOS WATSON falsely told the Series D Investor 1 Partner that WATSON had spoken to the Chief Executive Officer of Technology Company 1, who said that Technology Company 1 was not going to be investing in OZY's Series D offering because Technology Company 1 instead wanted to purchase OZY for $600 million. In fact, Technology Company 1 and its CEO had never offered to purchase OZY at any price. Initially, WATSON

claimed to the Series D Investor 1 Partner that he was unsure if he would accept Technology Company 1's acquisition offer.

91.     On May 20, 2021, the defendant CARLOS WATSON and the Series D Investor 1 Partner had a call scheduled for 6:00 p.m. (PDT).  WATSON sent the following text message to Rao in anticipation of the call: "8 pm CT/6 pm PT — are you READY?"  During the call, as Rao listened in, Rao sent text messages to WATSON, in which he stated: "Will he support us if we stay the course . . . You Got Him — how do we land it . . . Oh . . . He thinks they will still invest . . . Even if you say no."  Rao had to leave before the call ended, and when the call was over, WATSON sent the following text message to Rao: "Ended well.  Told him I would sleep on it.  I think we go back and say we are going to say no to [Technology Company 1] (at least for now), so a smaller Series D so we avoid rampant dilution.  Take in $40M including their $20M — and maybe some debt.  Let's talk when you can."

92.     The defendant CARLOS WATSON and the Series D Investor 1 Partner ultimately agreed that if OZY did not accept Technology Company 1's supposed acquisition offer, Series D Investor 1 would go forward with its $20 million investment in OZY.  On or about May 21, 2021, WATSON sent an email to the Series D Investor 1 Partner to follow up on their May 21, 2021 conversation, in which he stated, "To confirm, you are good for the $20M investment in our Series D at $300M pre-, subject to [Technology Company 1]."

93.     The defendant CARLOS WATSON eventually told the Series D Investor 1 Partner that WATSON had decided not to sell OZY to Technology Company 1, and Series D Investor 1 proceeded with its investment in OZY.  On or about May 28, 2021, Rao sent sham closing documents to the Series D Investor 1 Partner and other Series D Investor 1 representatives.  The documents included a fake list of investors that stated, among other false

claims, that Series C Investor 3 had invested $1 million in the Series D offering, Series C

Investor 1 had invested $2.25 million in the Series D offering and Middle East Investor 1 had

invested $7 million in the Series D offering.  In fact, Series C Investor 3 and Series C Investor 1

did not invest in the Series D offering, and Middle East Investor 1 invested only $5 million in its

two transactions in 2020.

94.    On or about July 29, 2021, the defendant CARLOS WATSON sent an

email to the Series D Investor 1 Partner and another individual in which he falsely claimed that

OZY had earned approximately $50 million in revenue in 2020 and expected to earn $65 million

in revenue in 2021.  The previous day, on July 28, 2021, Han had reported to WATSON and Rao

in an email that OZY had booked only $21.5 million in revenue for 2021 as of that date.

95.    On or about August 11, 2021 Series D Investor 1 wired OZY an additional

$2.5 million to purchase additional Series D shares, raising its total investment to $22.5 million.

K.    August-September 2021: Misrepresentations for a Purported Series E Closing

96.    From approximately August 2021 to September 2021, the defendant

CARLOS WATSON, together with Rao, Han and others, attempted to induce potential investors

to invest in a purported Series E fundraising round based on continued misrepresentations of

OZY's historical and projected financial results.  For example, on or about September 21, 2021,

WATSON sent an email to a potential investor in which he claimed that he expected OZY to

earn approximately $94 million in revenue in 2021.  The prior day, Han had reported to

WATSON and Rao in an email that OZY had booked only $32 million for 2021 as of September

20, 2021.  WATSON also claimed in his email that OZY had earned $50 million in revenue in

2020, when the true number was approximately $11 million.

## COUNT ONE
(Conspiracy to Commit Securities Fraud)

97.     The allegations contained in paragraphs one through 96 are realleged and incorporated as if fully set forth in this paragraph.

98.     In or about and between January 2018 and October 2021, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants CARLOS WATSON and OZY MEDIA, INC., together with others, did knowingly and willfully conspire to use and employ manipulative and deceptive devices and contrivances, contrary to Rule 10b-5 of the Rules and Regulations of the United States Securities and Exchange Commission, Title 17, Code of Federal Regulations, Section 240.10b-5, by: (i) employing one or more devices, schemes and artifices to defraud; (ii) making one or more untrue statements of material fact and omitting to state one or more material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (iii) engaging in one or more acts, practices and courses of business which would and did operate as a fraud and deceit upon one or more investors and potential investors in OZY MEDIA, INC., in connection with the purchase and sale of investments in OZY MEDIA, INC., directly and indirectly, by use of means and instrumentalities of interstate commerce and the mails, contrary to Title 15, United States Code, Sections 78j(b) and 78ff.

99.     In furtherance of the conspiracy and to effect its objects, within the Eastern District of New York and elsewhere, the defendants CARLOS WATSON and OZY MEDIA, INC., together with others, did commit and cause to be committed, among others, the following:

OVERT ACTS

(a)     On or about March 21, 2018, Rao sent an email to a partner at a private equity company who resides in Brooklyn, New York ("WATSON Friend 1"), an individual whose identity is known to the Grand Jury, copying WATSON.  WATSON Friend 1 had asked Rao and WATSON for a justification of OZY's purported valuation in connection with the convertible notes.  WATSON Friend 1 told WATSON and Rao that he wanted to provide the justification to another potential investor in OZY.  Rao's email to WATSON Friend 1 falsely stated that one justification for the valuation was that OZY's 2017 revenue was approximately $12 million.

(b)     On or about May 11, 2019, WATSON flew from John F. Kennedy International Airport ("JFK Airport") in Queens, New York, to South Korea to meet with potential investors.

(c)     On or about August 20, 2019, Rao sent an email to the Middle East Liaison, copying WATSON and Han, in which he falsely stated, among other things, "We are pleased to share that we have commitments from both [Network Owner 1] and [Entertainment Company 1] to lead our Series D financing round."

(d)     In or about October 2019, Rao and Han altered contracts for two of OZY's television shows to make the contracts' terms appear to be significantly more favorable to OZY than the true contracts were and then emailed the falsified documents to Media Company 1.

(e)     On or about December 6, 2019, WATSON flew from JFK Airport in Queens, New York, to the United Arab Emirates to meet with potential investors.

(f)     On or about January 3, 2020, WATSON sent an email to the Middle East Liaison to which he attached a letter falsely stating, among other things, "While we

are still finalizing our numbers, early indication is that OZY revenue grew about 50% last year to $35M."

        (g)      On or about January 5, 2020, WATSON sent an email to WATSON Friend 1 to which he attached a draft letter and sought WATSON Friend 1's input before it was sent to other investors and potential investors.  The letter falsely stated, among other things, "While we are still finalizing our numbers, early indication is that OZY revenue grew about 50% last year to $30M."

        (h)      On or about January 21, 2020, at approximately 11:50 a.m. (PST), Han sent an email to WATSON and Rao stating "I've have [sic] 2019 revenue at ~$35M, and 2020 projected at ~$45M," to which she attached a draft business update for Series C Investor 3 that contained false financial figures.

        (i)      On or about January 21, 2020, at approximately, 1:42 p.m. (PST), WATSON sent a text message to Rao and Han, which stated in part, "[Series C Investor 3] — 1.  $35M seems too high."

        (j)      On or about January 21, 2020, at approximately 2:34 p.m. (PST), Han sent an email to WATSON and Rao stating, "Samir + Carlos -- I updated the #s to have 2019 rev at $30m.  Revised financials and update attached," and attaching a revised draft update for Series C Investor 3 that contained false financial figures.  WATSON responded, "Please double check against everything we have previously sent him."

        (k)      On or about January 21, 2020, at approximately 11:38 p.m. (PST), Rao sent an email to Series C Investor 3, copying WATSON, to which he attached a letter falsely stating, among other things, "While we are still finalizing our numbers, early indication is that OZY revenue grew about 50% last year to ~$30M."

(l)     On or about February 14, 2020, Rao sent an email to Series C
Investor 1 Partner, blind carbon copying WATSON and Han, in which he falsely stated, among
other things, that OZY generated approximately $34 million in revenue in 2019 and $20 million
in revenue in 2018.

(m)     On or about February 28, 2020, Rao emailed several lenders
located in Brooklyn, New York, in connection with removing liens to satisfy the conditions of
Venture Lender 1's first loan.

(n)     On or about July 15, 2020, during a call with Series C Investor 1
Partner, WATSON sent a text message to Rao and Han stating, "[Series C Investor 1 Partner] —
what did we tell him our revenue was for the year?!"  Rao responded, "33."  WATSON
responded, "Are you sure?"  Rao responded, "Reference it as north of 40 . . . 3 . . . 0 . . . Last
year . . . 33 . . . This year 45."  Han responded, "I'm looking."  Rao then continued, "7 thru q1 . .
. Send him the cheat sheet."  Han responded, "We told [WATSON Friend 1] . . . Q1 — 7m; Q2
7m; Q3 9m; Q4 12M — adds to 35M."  WATSON then asked, "What adds to $45M."  Han
responded, "we told [Series C Investor 1] in Apr we were doing 45M in revenue . . . Adds up to:
. . . Q1 — 6.4M; Q2: 10M; Q3: 17M; Q4: 12M . . . KEY NOTES: we told [Series C Investor 1]
this in April.  The 45M includes 6M of Events . . . If we remove events, annual revenue ends up
39M which breaks down as: 6.4M, 10M, 12M, 10M."

(o)     In or about January 2021, Rao and Han, at WATSON's direction,
created a falsified version of OZY's general ledger, which included a line-by-line listing of the
company's purported accounting, that aligned with the fabricated financial figures that
WATSON, Rao and Han had provided to Financial Institution 1.

(p)     On or about January 19, 2021, during a call with the accountants retained by Financial Institution 1 to perform due diligence on OZY, which call was joined by a representative of Financial Institution 1 ("Financial Institution 1 Representative"), an individual whose identity is known to the Grand Jury, Rao sent a text message to WATSON, stating, "Remember [Financial Institution 1 Representative] is on and [Video Service 1] is paying us."

(q)     On or about January 22, 2021, WATSON sent an email to Series C Investor 3, blind carbon copying Rao and Han, in which he falsely stated, among other things, "We reached ~$47M revenue and $5M EBITDA in 2020."

(r)     On or about February 2, 2021, Rao spoke by telephone with employees of Financial Institution 1 and impersonated Identity Theft Victim 2 using a voice alteration application.  During the call, Rao misrepresented not only his identity, but also the business relationship between OZY and Video Service 1.

(s)     On or about February 2, 2021, during Rao's call with employees of Financial Institution 1, WATSON sent text messages to Rao containing various instructions, such as "Use the right pronouns," "You are NOT OZY," and "Stop using her name."

(t)     On or about March 31, 2021, WATSON sent text messages to Rao stating, "[Series C Investor 1 Partner] at 9:30 . . . what have you told him? . . . Financials . . . Series D plans." Rao responded, "[Early Investor 1] / board numbers . . . 45 and 4 . . . We're en route to a series d . . . Sent him materials to come in early on C and pro rata on D . . . had to chase he never flllowed [sic] up . . . Told him [Financial Institution 1] was leading."

(u)     On or about May 21, 2021, WATSON sent an email to the Series D Investor 1 Partner in which he stated, "To confirm, you are good for the $20M investment in our Series D at $300M pre-, subject to [Technology Company 2]."

(v)     On or about May 25, 2021, WATSON sent text messages to Rao and Han stating, "[Series C Investor 1] — what numbers do they have? . . . Need it NOW please . . . On with [Series C Investor 1 Partner]." Rao responded, "Sent . . . 46 and 5 for 2020 . . . 70 and 12 for 2022 . . . Last update was in January . . . So he may not remember." WATSON responded, "Thanks."

(w)     On or about September 8, 2021, WATSON flew to LaGuardia International Airport in Queens, New York, to meet with investors, potential investors and bankers in New York in connection with the Series E offering.

(x)     On or about and between September 9 and 12, 2021, WATSON attended the U.S. Open in Queens, New York, where he met with investors, potential investors and bankers in connection with the Series E offering.

(Title 18, United States Code, Sections 371 and 3551 et seq.)

## COUNT TWO
(Conspiracy to Commit Wire Fraud)

100.    The allegations contained in paragraphs one through 96 are realleged and incorporated as if fully set forth in this paragraph.

101.    In or about and between January 2018 and October 2021, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants CARLOS WATSON and OZY MEDIA, INC., together with others, did knowingly and intentionally conspire to devise a scheme and artifice to defraud one or more investors, and potential investors in and lenders and potential lenders to, OZY MEDIA, INC., and to obtain money and property from them by means of one or more materially false and fraudulent pretenses, representations and promises, all affecting financial institutions and others, and for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted by means

of wire communication in interstate and foreign commerce writings, signs, signals, pictures and

sounds, contrary to Title 18, United States Code, Section 1343.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

### COUNT THREE
(Aggravated Identity Theft)

102.    The allegations contained in paragraphs one through 96 are realleged and

incorporated as if fully set forth in this paragraph.

103.    In or about and between February 2020 and February 2021, both dates

being approximate and inclusive, within the Eastern District of New York and elsewhere, the

defendant CARLOS WATSON, together with others, during and in relation to the crime charged

in Count Two, did knowingly and intentionally transfer, possess and use, without lawful

authority, one or more means of identification of one or more persons, knowing that the means of

identification belonged to other persons.

(Title 18, United States Code, Sections 1028A(a)(1), 1028A(b), 1028A(c)(5), 2

and 3551 et seq.)

### CRIMINAL FORFEITURE ALLEGATION
AS TO COUNTS ONE AND TWO

104.    The United States hereby gives notice to the defendants that, upon their

conviction of either of the offenses charged in Count One or Count Two, the government will

seek forfeiture in accordance with Title 18, United States Code, Section 981(a)(1)(C) and

Title 28, United States Code, Section 2461(c), which require any person convicted of such

offenses to forfeit any property, real or personal, constituting, or derived from, proceeds obtained

directly or indirectly as a result of such offenses.

105.     If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

(a)     cannot be located upon the exercise of due diligence;

(b)     has been transferred or sold to, or deposited with, a third party;

(c)     has been placed beyond the jurisdiction of the court;

(d)     has been substantially diminished in value; or

(e)     has been commingled with other property which cannot be divided

without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

A TRUE BILL

_____
FOREPERSON

_____
BREON PEACE
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

F.#: 2021R00900

FORM DBD-34
JUN. 85

No.

# UNITED STATES DISTRICT COURT

EASTERN *District of* NEW YORK

CRIMINAL DIVISION

THE UNITED STATES OF AMERICA

*vs.*

CARLOS WATSON AND OZY MEDIA, INC.,

Defendants.

# INDICTMENT

(T. 18, U.S.C., §§ 371, 981(a)(1)(C), 1028A(a)(1), 1028A(b),
1028A(c)(5), 1349, 2 and 3551 et seq.; T. 21, U.S.C., § 853(p);
T. 28, U.S.C., § 2461(c))

*A true bill.*

_____ *Thomas Paradis*
                                                              *Foreperson*

*Filed in open court this _____ day.*

*of _____ A.D. 20 _____*

_____
                                                                   *Clerk*

*Bail, $ _____*

**Jonathan Siegel, Gillian Kassner and Dylan A. Stern,**
**Assistant U.S. Attorneys (718) 254-6293/6224/6213**