UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> v. <br><br> CARLOS WATSON, ET AL., <br><br> Defendants. | Case No. 23-Crim.-82 (EK) <br><br> **ORAL ARGUMENT REQUESTED** |

# DEFENDANT CARLOS WATSON'S MOTION TO SUPPRESS AND RETURN ILLEGALLY SEIZED PROPERTY

**RONALD SULLIVAN LAW PLLC**

Ronald S. Sullivan Jr., Esq.
1300 I Street NW
Suite 400 E
Washington, D.C. 20005
Telephone: 202-313-8313
Email: rsullivan@ronaldsullivanlaw.com

Admitted Pro Hac Vice
*Counsel for Defendant Carlos Watson*

**TABLE OF CONTENTS**

**INTRODUCTION** ................................................................................................................... 3
**FACTUAL BACKGROUND** .................................................................................................. 4
**ARGUMENT** ............................................................................................................................. 5
    **I.**    **The initial seizure of Mr. Watson's personal property was illegal.** ............................. 5
        A.    The issuance of a warrant is not dispositive. ................................................................ 5
        B.    The Williams Affidavit does not provide a basis for probable cause because it relies on wholly conclusory statements. ................................................................................... 6
        C.    Further, the Williams Affidavit relies on the stale accusations of the affidavit. ............ 8
    **II.**    **Even had the initial seizure been legal, the government's unreasonable delay in obtaining a warrant necessitates suppression.** ................................................................. 10
    **III.**    **The good faith exception does not apply.** ................................................................... 13
**CONCLUSION** ....................................................................................................................... 14

## TABLE OF AUTHORITIES

**CASES**

*Carpenter v. United States*, 138 S. Ct. 2206, 2214 (2018) ................................................................ 8
*Golden v. City of New York*, 418 F. Supp. 2d 226 (E.D.N.Y. 2006) ............................................. 6
*Herring v. United States*, 555 U.S. 135, 142 (2009) ...................................................................... 13
*Illinois v. Gates*, 462 U.S. 213, 239 .................................................................................................. 5
*Matter of Black iPhone 4*, 27 F. Supp. 3d 74, 78 (D.D.C. 2014) ................................................... 14
*Riley v. California*, 573 U.S. 373, 399 (2014) ................................................................................. 8
*United States v. Babilonia*, 854 F.3d 163, 180 (2d Cir. 2017) ....................................................... 8
*United States v. Dass*, 849 F.2d 414, 415 (9th Cir. 1988) ............................................................ 11
*United States v. Gomez*, 652 F. Supp. 461, 463 (E.D.N.Y. 1987) .......................................... 8, 10
*United States v. Grant*, 682 F.3d 827, 835 (9th Cir. 2012) ........................................................... 10
*United States v. Griffith*, 867 F.3d 1265, 1274 (D.C. Cir. 2017) ............................................... 8, 9
*United States v. Kortright*, No. 10-CR-937 (KMW), 2011 WL 4406352, at *7 (S.D.N.Y. Sept. 13, 2011) .................................................................................................................................. 9
*United States v. Leon*, 468 U.S. 897, 915 (1984) ............................................................................ 5
*United States v. Martin*, 157 F.3d 46, 54 (2d Cir. 1998) ......................................................... 10, 11
*United States v. Mitchell*, 565 F.3d 1347, 1353 (11th Cir. 2009) ........................................... 11, 12
*United States v. Moore*, 968 F.2d 216, 222 (2d Cir. 1992) ........................................................... 14
*United States v. Raymonda*, 780 F.3d 105, 114 (2d Cir. 2015) .................................................... 9
*United States v. Schultz*, 14 F.3d 1093, 1097 (6th Cir. 1994) ................................................... 5, 7
*United States v. Smith*, 967 F.3d 198, 206 (2d Cir. 2020) ....................................................... 10-12
*United States v. Wagner*, 989 F.2d 69, 75 (2d Cir. 1993) ......................................................... 5, 9
*United States v. Waldrip*, No. 4:18- cr-00613-RGE-CFB-2, 2019 WL 13143479, at *7 (S.D. Iowa Apr. 3, 2019) ............................................................................................................... 12
*United States v. Zemlyansky*, 945 F. Supp. 2d 438, 465 (S.D.N.Y. 2013) ................................. 13

**RULES**

FRCP 41(g) ........................................................................................................................................ 4
FRCP 41(h) ........................................................................................................................................ 3

**CONSTITUTIONAL PROVISIONS**

Fourth Amendment ........................................................................................................................... 3

**INTRODUCTION**

The Constitution guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" and provides that "no Warrants shall issue, but upon probable cause . . . " Both of those rights were violated when the FBI burst into Carlos Watson's hotel room residence and seized two cell phones and a laptop without a warrant and without probable cause. Pursuant to Rule 41(h), Mr. Watson seeks to prevent the introduction at trial of evidence obtained from two cellphones and one laptop seized from his hotel room, without a warrant, at the time of his arrest. The seizure of the devices was a violation of his Fourth Amendment rights, to which no exception applied, and thus, any evidence gained from said devices should be barred by the Exclusionary Rule—a Rule which the government cannot avoid by invoking the good faith exception.

To be clear, (1) the FBI seized Mr. Watson's cell phones and computer with no warrant at all; (2) recognizing the problem after waiting more than three weeks to get a warrant, the government finally did so, but had nothing but stale allegations of alleged conduct that occurred from August 2018 to September 2021—nearly eighteen months prior to the seizure and warrant application; and (3) presented an affidavit to the Magistrate Judge that is far-fetched on its face, including an allegation that the FBI heard the vibration of a cell phone that was sitting on a bed in a hotel room through a closed door while Mr. Watson had a white-noise app playing on his phone. As set forth herein, this lengthy gap between the alleged criminal activity and the issuance of the Warrant quite clearly renders the information in the search warrant Affidavit stale such that it cannot be the basis for probable cause.

Furthermore, the government has refused to allow Mr. Watson to receive back his electronics, even though they have held the phones and laptop for many months. This has deprived

3

Mr. Watson of being able to mount his defense, as exculpatory materials exist on those electronics and the government is not permitting him to use that evidence in his own defense. In addition to suppression, Mr. Watson hereby requests (again) that the government return his electronics to him so that he may adequately prepare for trial.

The arguments set forth in this Motion have largely been briefed before as part of earlier proceedings under FRCP 41(g) for the return of property (*see* ECF Dkt. No. 45), and undersigned counsel gratefully acknowledges the work of Mr. Watson's previous counsel, whose work is freely quoted though substantially amended below. During the pendency of those previous filings, it was yet unclear whether the Government intended to use any of the property in question as evidence in Mr. Watson's trial and whether they had begun searching them. After many weeks passed by, the government obtained a warrant for the search of the devices without any sufficient probable cause. Pursuant to the Court's instructions at the April 21, 2023 conference, Mr. Watson now files this motion to suppress and for the return of his property.

## FACTUAL BACKGROUND

When they came for him, they did so with force. There was none of the customary fair warning that so many defendants in white collar criminal proceedings receive.

The FBI did not ask him to turn himself in. The government knew that Mr. Watson was represented and that his arrest could have been achieved through a simple summons. Instead, they secured the entrances and came through the door of his hotel room as if he were a violent criminal. They arrested him and told him to leave his things, which they took with absolutely no warrant nor adequate justification. Indeed, the government lacked what the law required for such a seizure: a warrant to seize and search his property or probable cause justifying seizure without one. There

4

were no exigent circumstances. By the time the government applied for a warrant, three weeks had passed.

## ARGUMENT

Mr. Watson's two cellphones and a laptop were seized without a warrant. The warrant that was issued *after* the seizure was facially defective and should not receive deference by this Court. The government delayed so unreasonably in obtaining the warrant that the Court must find that there was no probable cause for the search and seizure. The good-faith exception to the law of search and seizure does not apply in this case. For any and all of these reasons, the Court should find that the seizure and continuing search of Mr. Watson's personal property violates the Fourth Amendment and any evidence found through that search should be suppressed.

**I.     The initial seizure of Mr. Watson's personal property was illegal.**

**A.  The issuance of a warrant is not dispositive.**

The fact that a different judge found probable cause to exist is not dispositive of the issue. "[R]eviewing courts will not defer to a warrant based on an affidavit that does not 'provide the magistrate with a substantial basis for determining the existence of probable cause.'" *United States v. Leon*, 468 U.S. 897, 915 (1984) (quoting *Illinois v. Gates*, 462 U.S. 213, 239)). A "substantial basis" requires, at minimum, a "fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238. Given the staleness of the information and the affiant's over-reliance on his "training and experience," this Court should conclude that Judge Scanlon did not have a substantial basis for finding probable cause. *See United States v. Wagner*, 989 F.2d 69, 75 (2d Cir. 1993) (search warrant issued six weeks after alleged criminal activity lacked probable cause due to staleness; declining to defer to magistrate's probable cause determination); *United States v. Schultz*, 14 F.3d 1093, 1097–98 (warrant "should not have been

5

issued" where officer "did not have anything more than a guess that . . . evidence of a crime would be found").

### B. The Williams Affidavit does not provide a basis for probable cause because it relies on wholly conclusory statements.

The government relies entirely on the affidavit of John Williams, a Special Agent with the Federal Bureau of Investigations ("FBI"), who does not even indicate in his affidavit whether he was present when the arrest and seizure took place. The only specific information related to the particular devices seized in the hotel residence to be found in the Williams Affidavit is the allegation that the FBI called a number "for a phone used by" Mr. Watson and heard a vibrating sound through the door of his hotel room. No specific name is given to indicate who could substantiate this claim, rather the affidavit attributes its information to the FBI as an organization and anonymous "agents" as yet unidentified. Williams Aff. ¶ 7.

Even if such a vibrating noise could be heard, the Williams Affidavit provides no indication that the number (and therefore the associated device) was known by the agents to bear any relation either to Watson's work with Ozy or to the alleged criminal activity. The government later claimed that "at least one of the Devices has evidentiary value . . . because it has the same phone number as the phone number the defendant used to send the incriminating text messages described in the indictment." (Dkt. No. 48 "Sur-Reply," 11-12). Yet there is no indication that the agents knew *at the time* this number to be anything more than "a phone used by" Mr. Watson – the information provided in the Williams Affidavit is entirely consistent with the device being Mr. Watson's personal device (*See, e.g. Golden v. City of New York*, 418 F. Supp. 2d 226, 232 (E.D.N.Y. 2006) noting, "[i]n determining whether an officer had probable cause to arrest an individual, a court must examine the events leading up to the arrest [and] the *actual information the officer had at the time of the arrest"* (emphasis added)).

What "actual information" the government had amounted to essentially nothing. The government has relied on the Williams Affidavit's assertion that a cell phone was heard vibrating in the hotel room when the FBI agents called a number allegedly belonging to Mr. Watson as the key fact that provided probable cause. This assertion cannot and does not support a finding of probable cause. First, the fact that a cell phone may have vibrated makes it no more likely that the laptop seized by the government is meaningfully connected to any alleged criminal activity. Second, the testimony that an FBI agent heard the phone ring is preposterous: as Williams himself states, the phone was behind a locked hotel room door, and was either sitting on a bed (where the soft mattress and bedding would have deadened any vibrating sound) or was the phone being held by Mr. Watson (which also would have deadened the sound). Third, even had the agents heard a cell phone vibrating, there is no evidence that they were able to identify *which* cell phone had vibrated. If the ringing of a phone after an agent dialed Mr. Watson's number is what forges the link between *one* of the phones and probable cause, then the failure of the government to identify *which* of those phones was known to be associated with that phone number before it was seized demonstrates that in point of fact there was not probable cause to seize *either*.

Since the government cannot show that it had any *actual information* that would link Mr. Watson to the devices and those devices to criminal activity, the Williams Affidavit relies instead of conclusory statements by Williams concerning his "training and experience."

But the words "training and experience" contain no special magic. Training and experience may be relevant to the probable cause determination, but it cannot substitute for specific facts connecting the devices to evidence of the alleged crimes. *See United States v. Schultz*, 14 F.3d 1093, 1097 (6th Cir. 1994) ("[A]n officer's 'training and experience' . . . cannot substitute for [a] lack of evidentiary nexus . . . between the [item to be searched] and any criminal activity"); *United*

7

*States v. Gomez*, 652 F. Supp. 461, 463 (E.D.N.Y. 1987) (affiant's "expert opinion" could be considered and credited by the magistrate, but "does not alone provide probable cause to search").

Indeed, courts do not treat the words "based on my training and experience" as a talisman to avoid the Fourth Amendment, particularly when the item to be searched is not contraband. *Cf. United States v. Babilonia*, 854 F.3d 163, 180 (2d Cir. 2017) ("[W]e are mindful that the presence alone of a cell phone, or even several cell phones, in a home is not inherently incriminating."); *United States v. Griffith*, 867 F.3d 1265, 1274 (D.C. Cir. 2017) ("Because a cell phone, unlike drugs or other contraband, is not inherently illegal, there must be reason to believe that a phone may contain evidence of the crime."). Indeed, courts should be wary of relying on mere "training and experience" when the item seized is an electronic device that contains far more information than could be obtained by searching a house, especially since "[i]t would be a particularly inexperienced or unimaginative law enforcement officer who could not come up with several reasons to suppose evidence of just about any crime could be found on a cell phone." *Riley v. California*, 573 U.S. 373, 399 (2014). Permitting the government to search through practically the entirety of a person's life based solely on an agent's "training and experience" is exactly the kind of "too permeating police surveillance" that the Fourth Amendment forbids. *Carpenter v. United States*, 138 S. Ct. 2206, 2214 (2018).

**C. Further, the Williams Affidavit relies on the stale accusations of the affidavit.**

What little the Affidavit contains that is not wholly conclusory is simply pointed reference to the Indictment. The few specific allegations in the Williams Affidavit—all taken from the Indictment—fail to establish probable cause for the seized devices because the conduct alleged in the Indictment is nearly eighteen months old. It is well established that "the facts in an affidavit supporting a search warrant must be sufficiently close in time to the issuance of the warrant and

8

the subsequent search conducted so that probable cause can be said to exist at the time of the search and not simply as of some time in the past." *United States v. Wagner*, 989 F.2d 69, 75 (2d Cir.1993). Though there is "no bright-line rule for staleness," the "two critical factors in determining staleness are the age of the facts alleged and the nature of the conduct alleged to have violated the law." *United States v. Raymonda*, 780 F.3d 105, 114 (2d Cir. 2015) (internal quotation marks omitted).

Besides the wholly conclusory allegations in the Williams Affidavit, its specific allegations—on which the government relies exclusively to support probable cause—are based on the Indictment. Williams Aff. ¶¶ 13–16. Specifically, Special Agent Williams cites paragraphs in the Indictment describing Mr. Watson's use of emails (¶ 13), text messages (¶ 14), electronic calendars (¶ 15) and documents (¶ 16) in connection with the alleged fraudulent scheme. All of these allegations, however, describe conduct that occurred from August 2018 to September 2021—nearly eighteen months prior to the seizure and warrant application. This lengthy gap between the alleged criminal activity and the issuance of the Warrant renders the information in the Williams Affidavit stale such that it cannot be the basis for probable cause. *See, e.g.*, *Griffith*, 867 F.3d at 1274 (information connecting use of cellphone to criminal activity stale where, by the time warrant was sought, more than a year had elapsed since crime); *United States v. Kortright*, No. 10-CR-937 (KMW), 2011 WL 4406352, at *7 (S.D.N.Y. Sept. 13, 2011) (year-old stale information of alleged criminal activity coupled with agent's expert opinion that evidence of crime was likely to be found in place to be searched was insufficient to establish probable cause).

The Williams Affidavit's attempt to cure the staleness problem by generally proclaiming that data "can be stored on electronic devices for several years," Williams Aff. ¶ 13, is unavailing. *First*, as noted, the Affidavit contains no allegation to link the electronic devices to the alleged

9

criminal conduct, other than through the person of Mr. Watson. *But see Gomez*, 652 F. Supp. at 462 (noting "that the existence of probable cause to arrest will not necessarily establish probable cause to search"); *accord Riley*, 573 U.S. at 386. Second, at least one of the phones, an iPhone 13, was not available for purchase until September 24, 2021, after the conduct cited in the Affidavit. *Third*, the agent's observation, based on his training and experience, that data may be transferred from one phone to another amounts to mere speculation that evidence might still be found on the particular devices seized. *See United States v. Grant*, 682 F.3d 827, 835 (9th Cir. 2012) (holding that facts, rather than inferences, "must show that the property to be seized was known to be at the place to be searched so recently as to justify the belief that the property is still there at the time of the issuance" of the warrant). *Fourth*, the affidavit's allegation that Mr. Watson may still be raising money for Ozy merely suggests that if he is committing a crime, there could be evidence of it on his devices. That is not probable cause. The affidavit fails to present *current* probable cause to believe the devices will contain evidence of a crime.

## II. Even had the initial seizure been legal, the government's unreasonable delay in obtaining a warrant necessitates suppression.

The seizure of Mr. Watson's devices suffers from an additional constitutional deficiency, in that the government unreasonably delayed obtaining a warrant. *See United States v. Martin*, 157 F.3d 46, 54 (2d Cir. 1998) ("[E]ven a seizure based on probable cause is unconstitutional if the police act with unreasonable delay in securing a warrant."). Four factors are relevant to whether the delay was unreasonable: (1) the length of the delay; (2) the importance of the seized devices to Mr. Watson; (3) whether Mr. Watson had a reduced property interest in the devices; and (4) the strength of the government's justification for the delay. *See United States v. Smith*, 967 F.3d 198, 206 (2d Cir. 2020). Each factor weighs in favor of finding that the government's delay here was unreasonable.

10

*First*, the length of delay weighs in favor of Mr. Watson. The devices were seized on February 23, 2023 and the warrant was not signed until March 14—nearly three weeks later. *See Martin*, 157 F.3d at 53–54 (calculating time between date police effected the seizure and date warrant was secured and stating, "[i]n some circumstances eleven days might well constitute an unreasonable delay"); *Smith*, 967 F.3d at 202 (month delay unreasonable); *United States v. Mitchell*, 565 F.3d 1347, 1353 (11th Cir. 2009) (21-day delay unreasonable); *United States v. Dass*, 849 F.2d 414, 415 (9th Cir. 1988) (delay of between 7 to 23 days to seek search warrants unreasonable).

The government has previously argued that the Court should excuse the delay because it was caused in part because the warrant was subject to review and approval by the Department of Justice ("DOJ"). This argument is unavailing. The Bill of Rights is not abrogated by a red tape exception. If a DOJ policy results in an unreasonable delay between the time of seizure and the application for a warrant, then DOJ should seriously consider amending their policy. But it is ludicrous and Kafkaesque to suggest that Mr. Watson's constitutional rights should be limited as a result of bureaucratic delay that is wholly of the government's own invention.

*Second*, the seized property—two cell phones and a laptop—were undoubtedly important to Mr. Watson. Indeed, the devices were important enough to him that he traveled nearly 3,000 miles with them while visiting New York. The nature of this property is such that, given the sheer volume of data, there is a "significant likelihood" that much of the information on the seized devices will have "nothing to do with the investigation of criminal activity." *Smith*, 967 F.3d at 207 (recognizing "the special concerns that apply when law enforcement seize and search . . . electronic data and communication devices").

*Third*, Mr. Watson plainly had a strong property interest in the devices, given the kind of highly personal information routinely stored on phones and laptops. *See Mitchell*, 565 F.3d at 1351 (given the capacity of electronic devices to store items of a personal nature, seizure of such devices before a warrant is sought constitutes a "significant interference with [the owner's] possessory interest"); *United States v. Waldrip*, No. 4:18- cr-00613-RGE-CFB-2, 2019 WL 13143479, at *7 (S.D. Iowa Apr. 3, 2019) (defendant "had a strong interest in possessing his cell phone—an interest that only got stronger over five days as officers kept the cell phone without seeking a warrant" (internal quotation marks omitted)). Even assuming *arguendo* that there is a diminished property interest in items that the government has probable cause to seize, such diminished interest lasts "for only so long as it was reasonable for the police to wait before obtaining a warrant to search its contents." *Smith*, 967 F.3d at 209. Additionally, there is nothing in the record to suggest that Mr. Watson "reduce[d] his property interest by means of consent or voluntarily relinquishing control" of his devices. *Id*. at 208. To the contrary, his counsel requested the return of the devices at his presentment on the same day they were seized.

*Fourth*, the government has no strong justification for this delay. While courts have upheld delays of longer than the nineteen days here, the government must demonstrate that it proceeded diligently or provide an overriding reason to justify the delay. The government proffers no justification, except to note that it submitted an application for a warrant to search the devices to the Department of Justice "[s]oon" after the seizure.

Mr. Watson has learned that this submission was made on February 28—five days after the seizure. Even if the delay is calculated using this date (which Mr. Watson does not concede is the correct calculation), a five-day delay is still unreasonable where the government fails to provide any justification for that delay. *See Waldrip*, 2019 WL 13143479, at *8 (granting motion to

12

suppress evidence derived from seizure of cell phone upon finding that five-day delay in obtaining a search warrant for the phone's contents was unreasonable). Here, as in *Waldrip*, "nothing in the record before the Court suggests officers diligently pursued their investigation" in this five-day period. *Id.* at *7 (internal quotation marks and alterations omitted). The record contains only the government's silence on this point.

The government presents no compelling reason why it could not have done what the Fourth Amendment plainly requires—get a warrant prior to seizing his devices. And it has no excuse for its dilatory efforts to secure a warrant following the unlawful seizure. Consequently, the devices' continued seizure violated the Fourth Amendment.

### III. The good faith exception does not apply.

The government contends that, despite the myriad issues with its seizure of Mr. Watson's devices, the good faith exception to the exclusionary rule applies. But the good faith exception "should not be read so as to swallow the exclusionary rule." *United States v. Zemlyansky*, 945 F. Supp. 2d 438, 465 (S.D.N.Y. 2013) (internal quotation marks omitted). It is premised on officers' "objectively reasonable reliance" on a warrant, even if it was subsequently found defective. *See, e.g.*, *Herring v. United States*, 555 U.S. 135, 142 (2009). But where, as here, the government (i) did not bother to get a warrant in advance of the seizure, despite having all the facts it later put into its warrant application, (ii) was advised of the illegality of the seizure prior to applying for the warrant, and (iii) applied for the warrant while plainly lacking probable cause, the good faith exception does not apply.

There are four situations where the good faith exception does not apply: "(1) where the issuing magistrate has been knowingly misled; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3) where the application is so lacking in indicia of probable cause as to

13

render reliance upon it unreasonable; and (4) where the warrant is so facially deficient that reliance upon it is unreasonable." *United States v. Moore*, 968 F.2d 216, 222 (2d Cir. 1992). Here, at least three of these four conditions exist. First, the warrant application distorts in material respects the facts supporting the seizure: the agents could not have heard one of the phones buzzing because Mr. Watson had a white noise app going at the time of the arrest; Mr. Watson was not sitting at the desk nor holding one of the phones when the agents entered the room; the government did not "promptly" seek the warrant following the arrest, Williams Aff. ¶ 21 n.1; and the agent omitted facts that demonstrated that whatever probable cause could be asserted was stale. Second, as discussed above, the warrant application is so lacking in probable cause that reliance is unreasonable. Third, although it makes little sense to consider the facial sufficiency *vel non* in a post-hoc context in which the agents did not have the warrant at the time they seized the devices, the warrant is in fact facially deficient. For example, it permits a search of the entirety of the devices while providing, at most, probable cause to search only emails, text messages, calendar entries, and documents. *See Matter of Black iPhone 4*, 27 F. Supp. 3d 74, 78 (D.D.C. 2014). The agents therefore lacked good faith in their warrantless seizure of the devices and similarly lack good faith for in their subsequent search.

## CONCLUSION

For the foregoing reasons, any evidence obtained by the government from the seized devices would be acquired in violation of Mr. Watson's Fourth Amendment rights against unlawful search and seizure, and exclusion is therefore required. As such, Mr. Watson respectfully requests that this Court grant this Rule 41(h) motion and suppress any such evidence.  Mr. Watson also hereby makes demand for the immediate return of his electronics so that he may use the exculpatory materials in his defense.

Dated: June 20, 2023                                  Respectfully submitted,

                                                                      **RONALD SULLIVAN LAW, PLLC**

                                                                      /s/ Ronald S. Sullivan Jr.
                                                                      Ronald S. Sullivan Jr.
                                                                      (admitted *pro hac vice*)
                                                                      1300 I Street, N.W., Suite 400 E
                                                                      Washington, D.C. 20005

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing using the CM/ECF system, which sent a notification of such filing to all required parties.

**RONALD SULLIVAN LAW, PLLC**

<u>/s/ Ronald S. Sullivan Jr.</u>
Ronald S. Sullivan Jr.
(admitted *pro hac vice*)
1300 I Street, N.W., Suite 400 E
Washington, D.C. 20005