1    UNITED STATES DISTRICT COURT

2    EASTERN DISTRICT OF NEW YORK

3    UNITED STATES OF AMERICA,        Docket No. 1:23-CR-00082-EK

4        Plaintiff,
                                     Brooklyn, New York
5           v.                       Wednesday, March 13, 2024
                                     2:39 p.m.
6    CARLOS WATSON ET AL,

7        Defendants.

8
                     TRANSCRIPT OF STATUS CONFERENCE
9             BEFORE THE HONORABLE ERIC R. KOMITEE
                    UNITED STATES DISTRICT JUDGE
10

     APPEARANCES:
11
     For the Government:        Department of Justice
12                              US Attorney's Office - EDNY
                                DYLAN ALEXANDER STERN, AUSA
13                              271 Cadman Plaza East
                                Brooklyn, New York 11201
14                              718-254-6213

15                              U.S. Attorney's Office
                                Eastern District of New York
16                              JONATHAN SIEGEL, AUSA
                                271-A Cadman Plaza East
17                              Brooklyn, New York 11201
                                718-254-7000
18
     For the Defendant:        Ronald Sullivan Law PLLC
19                              RONALD S. SULLIVAN, ESQ.
                                1300 I Street Northwest
20                              Suite 400 East
                                Washington, DC  20005
21                              202-313-8313

22                              Kenneth J. Montgomery PLLC
     For the Defendant:         KENNETH JAMAL MONTGOMERY, ESQ.
23                              396 Waverly Avenue
                                Brooklyn, New York 11238
24                              718-403-9261

25

```
 1                          Frison Law Firm, P.C.
                            SHANNON FRISON, ESQ.
 2                          75 State Street
                            Suite 100
 3                          Boston, Massachusetts 02109
                            617-706-0724
 4
        Also Appearing:          Jacob Benton, Paralegal Specialist
 5

 6      Transcription Service:    Superior Reporting Services LLC
                                  P.O. Box 5032
 7                                Maryville, TN 37802
                                  865-344-3150
 8

 9      Proceedings recorded by electronic sound recording;
        transcript produced by transcription service.
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1      P R O C E E D I N G S

2              THE COURTROOM DEPUTY:  This is criminal cause for a

3      status conference, docket number 23-CR-00082, United States

4      of America versus Watson et al.

5              Parties please state your appearance for the

6      record, starting with the Government.

7              MR. SIEGEL:  Good afternoon, Your Honor.  Jonathan

8      Siegel and Dylan Stern for the United States.  And if it's

9      all right for Your Honor -- with Your Honor, we also have a

10     paralegal specialist, Jacob Benton (ph.), at Counsel table.

11             THE COURT:  That is indeed all right with me.  Good

12     afternoon, everyone.

13             MR. SIEGEL:  Thank you.

14             MR. SULLIVAN:  And Ronald Sullivan here, on behalf

15     of Carlos Watson, who is present.  We also have attorney

16     Shannon Frison, who has filed a pro hac vice motion before

17     the Court, entered a notice of appearance, and has signed the

18     protective order.

19             THE COURT:  Outstanding.  Welcome to you.

20             MS. FRISON:  Thank you.  Good afternoon.

21             THE COURT:  Good afternoon.

22             MR. MONTGOMERY:  Good afternoon, Your Honor.

23     Kenneth Montgomery.

24             THE COURT:  Good afternoon, Mr. Montgomery, to you,

25     as well.

1        All right.  Why don't we take up the substitution

2    of Counsel in the first instance?  We could've done this over

3    the -- by the papers.  I just wanted to confirm before we

4    make the substitution official that -- Ms. Price, we said?

5        MS. FRISON:  Frison with an F.

6        THE COURT:  Frison.  Thank you.  Is able to meet

7    the existing trial schedule and also that you have the

8    capability to deal with the document review issues that're

9    underway.

10       MS. FRISON:  Yes.  Thank you.  I will be.  I am

11   apprised of the schedule, the trial schedule, starting May

12   29th, jury selection May 20th, and I did sign a protective

13   order and will -- I'll be ready.  We'll be ready.

14       THE COURT:  All right.  The Government, I take it,

15   has no view on this one or the other?

16       MR. SIEGEL:  As long as the trials can proceed, we

17   have no position.

18       THE COURT:  Okay.  The motion for substitution of

19   Counsel is granted.  Mr. Montgomery is relieved.  The pro hac

20   vice motion, I don't think I rule on those myself.  I don't

21   believe I ever have.  Is that directed to the clerk's office?

22   What is the process there?  If anyone knows.

23       MR. SULLIVAN:  My sense is it's a motion.  So based

24   on what you say now, I don't know if mine has ever been

25   approved quite frankly.

1      THE COURT:  Yeah.  I would approve it myself except

2  that I imagine somebody has to check whether a lawyer is duly

3  admitted in some state in good standing and the like.  And

4  whoever's going to do that, it's not me.

5      So everybody who's got a pro hac vice motion

6  pending should make sure that it's addressed one way or the

7  other.

8      MR. SULLIVAN:  I'll call the clerk's office.  In

9  many places I practice, the judge does issue an order after

10  the clerk, I think, affirms that all the requisites are in

11  place.  But I can't be sure in this jurisdiction.

12      THE COURT:  You know anything about this?

13      All right.  Yeah.  It sounds like that will happen

14  in the ordinary course once the clerk's office confirms that

15  the screening has come back showing no issues.  So that's

16  that.

17      We have the Government's requests still pending

18  from the last status conference either to amend the

19  protective order, and/or revoke bail, and maybe also to

20  initiate contempt proceedings in connection with the alleged

21  violation of the protective order.

22      I, following the last conference, asked the

23  Government to submit copies of the actual materials -- the

24  emails that the Government believed to have been disclosed

25  improperly.  The Government did that.

1    Here's where I think we are in that respect.

2  Obviously, I will have the ability to take up contempt issues

3  if we are going to take those up after the trial here if the

4  point is to address a past violation.  There's no necessary

5  reason we can't do that after trial.

6    Obviously, I understand the Government's impulse to

7  want to make sure that there are no further violations if

8  indeed one has occurred before that would otherwise happen.

9    The two risks I'm balancing there are on the one

10  hand, the risk that there will be some further violation of a

11  protective order if indeed one has already occurred against

12  the risk that if Mr. Watson were to be either incarcerated or

13  even unable to review documents outside the presence of his

14  attorney, that would have a meaningful and negative impact on

15  his ability to participate in his own defense.

16    And as between those two things, my position for

17  the moment, which could obviously change if the facts change,

18  is that I should leave the status quo in place for now.

19    Obviously, if there were to be any further

20  allegation that materials were disclosed in violation of a

21  protective order or that any other existing order or

22  condition of Mr. Watson's release were violated, we would be

23  having a much more immediate and a significantly different

24  conversation.  But that's my impulse at this point.

25    Is there anything the Government thinks I'm missing

1    in what I just said apart from the fact that you may disagree

2    with it?

3          MR. SIEGEL:  No, Your Honor.  I think it all makes

4    very good sense to us.

5          THE COURT:  Okay.  Well, we'll say that the motion

6    to the extent it appears on the docket as a motion is held in

7    abeyance pending further proceedings in this case.

8          I know we have motions to dismiss from Mr. Watson.

9    Everybody should expect that this trial will be going forward

10   on schedule.  Notwithstanding those motions, I will endeavor

11   to get something out in the first half of April.

12         In response to those motions, I know the Government

13   has filed its motions in limine, and there are more papers to

14   come on that score with all that by way of preliminaries.

15   From the Government's perspective, what is the status update

16   here?

17         MR. SIEGEL:  Your Honor, I think you've addressed

18   all the pending motions that we have.  Discovery.  You know,

19   as we're getting new things we're pushing it out but that the

20   flow of that has slowed down quite a bit.

21         You know, I think it makes sense to set some kind

22   of hearing date or argument date on the motions in limine.

23   There are a number of issues to address that I think it would

24   be in all of our interests and in the interest of the

25   official trial to get that resolved quickly.

1        But other than that, I think the Government is

2   moving very swiftly towards trial as is, I assume, everyone.

3        THE COURT:  Okay.  Yes.  We will set a date for

4   argument on motions in limine today.

5        On the subject of discovery, given that you brought

6   it up, A, you should endeavor seriously to make sure that

7   whatever discovery remains to be produced, it gets produced

8   as quickly as possible so as not to even raise the specter of

9   interference with the trial date.

10       B, and I'm saying this in all of my more complex

11  cases these days, I don't know how many agencies were

12  involved in the investigation of the conduct at issue here.

13       You know, you knew this already, but I'll just

14  reiterate that it is incumbent on the Government to think

15  long and hard about where any material that might be either

16  Rule 16 material, or Brady, or Giglio material might be

17  located.

18       I have another case in which the Government

19  disclosed certain material at sentencing that the Defense has

20  taken the position should have been disclosed under those

21  rubrics before trial.

22       Those kinds of situations are to be avoided at all

23  costs, and I know that it can be very complicated even to

24  think comprehensively about where discovery materials, or

25  Brady, or Giglio materials might be found.

1          But I just want the Government to be sure that

2   that's a topic that is at or near the top of your to-do list

3   as we go forward.  In terms of a date for argument on the

4   motion in limine, we get the replies in the first third of

5   April, right?

6          MR. SIEGEL:  April 12th, Your Honor.

7          THE COURT:  What about oral argument the -- what

8   about oral argument at 11 a.m. on Friday, April 26th?

9   Actually, let's say 10 a.m. that Friday.

10         MR. SIEGEL:  That works for the Government.

11         MR. SULLIVAN:  Brief indulgence, Your Honor.

12         THE COURT:  Yes.

13         MR. SULLIVAN:  Yes, Your Honor.  It's good for

14  Mr. Watson, and Ms. Shannon informs it's good for Ozy Media,

15  as well.

16         THE COURT:  Ms. Who?

17         MR. SULLIVAN:  Ms. Frison.  What did I say?

18         THE COURT:  I think you said Shannon.

19         MR. SULLIVAN:  Oh.  That's her first name.  I'm

20  sorry.  Ms. Frison.

21         THE COURT:  Not at all.  I just want to make sure I

22  have it right.

23         MR. SULLIVAN:  Right.

24         THE COURT:  Okay.  So we'll see everybody at 10:00

25  on the 26th of April.  What else from the Defense

1 perspective, if anything, should we be taking up today?

2         MR. SULLIVAN: We have nothing, Your Honor. I'll

3 endeavor to reach out to the Government on outstanding -- any

4 outstanding discovery issues, and hopefully we can resolve

5 that without the Court intervening.

6         THE COURT: Okay. Ms. Frison?

7         MS. FRISON: Nothing at this time.

8         THE COURT: All right.

9         MR. SIEGEL: Your Honor, just like as a logistics

10 question, we're starting to get our witness order and plan

11 travel for our witnesses, some of whom who have to fly in.

12 Does Your Honor know if you're going to be sitting on Fridays

13 and if there are any days that we're not going to be sitting?

14         I think the judicial conference is going to be

15 towards the beginning of this trial. So to the extent we can

16 know that there are days where we won't be sitting, I just

17 want to see if we could figure that out.

18         THE COURT: Yeah. I'm uncertain for a certain

19 committee in respect of this judicial conference. So I do

20 have to be there. When is that? That is going to be the

21 4th, 5th, and 6th, I believe, of June. And I may not be able

22 to sit on Tuesday -- sorry -- on the afternoon of Tuesday the

23 11th and/or Wednesday the 12th.

24         MR. SIEGEL: Is that just the afternoon of the 12th

25 or all day on the 12th?

1    THE COURT:  The full day on the 12th.  Beyond that,

2  I may not sit the morning of June 26th, assuming we're still

3  going at that point.  And I think that's all we have.

4    MR. SIEGEL:  And does the Court plan to sit on

5  Fridays?

6    THE COURT:  The answer is that I will know as we

7  get closer.  It depends on whether -- among other things, it

8  depends on whether trials I have on either side of this trial

9  actually occur or don't.

10    You know, given that I'm out a couple days -- the

11  week -- three days the week of the 2nd, of June 3rd, and one

12  and half days the week of June 10th, my preference is going

13  to be to sit on Fridays to get the jury to hear the case as

14  quickly as possible from start to end.  But we're going to

15  have to play that a little bit by ear.

16    MR. SIEGEL:  Your Honor, just from the Government's

17  perspective, sitting on Fridays and moving the case along is

18  always our preference.  But ultimately whatever works for the

19  Court.

20    THE COURT:  Indeed.  All right.  Is time excluded

21  through jury selection?  Do we have a motion to exclude time?

22  I know we have motions pending, so it may be academic at this

23  point.  But what's the --

24    MR. SIEGEL:  Time's excluded either through the

25  20th or the -- May 20th or May 29th.  I forget which it is

1   exactly, but it's certainly excluded through trial.

2           THE COURT:  Okay.

3           MR. SULLIVAN:  That's correct.

4           THE COURT:  All right.  Thank you all.  With that,

5   we will be adjourned.

6           MR. SULLIVAN:  Thank you, Your Honor.

7           MR. SIEGEL:  Thank you, Your Honor.

8       (Proceedings adjourned at 2:56 p.m.)

9

10                   TRANSCRIBER'S CERTIFICATE

11          I certify that the foregoing is a correct

12   transcript from the electronic sound recording of the

13   proceedings in the above-entitled matter.

14

15                                   April 1, 2024

16

17   _____     _____

18   Sherman Rivers                DATE

19   Legal Transcriber

20

21

22

23

24

25