UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------x

 UNITED STATES OF AMERICA,

                                        **MEMORANDUM & ORDER**
                 -against-                 23-CR-82 (EK)

 CARLOS WATSON, and OZY MEDIA, INC.

                     Defendants.

------------------------------------x
ERIC KOMITEE, United States District Judge:

          Carlos Watson moves to dismiss the indictment in this
case for "failure to state an offense."  Mem. of Law in Supp. of
Mot. to Dismiss the Indictment ("Watson Mem."), ECF 94-1.  He
also moves to dismiss, and for discovery, based on his
contention that the government engaged in selective prosecution
due to his race.  *Id.* at 26.  For the reasons that follow, the
motions are denied in their entirety.

## I.  Discussion

          A grand jury sitting in this district returned a
three-count indictment against Watson and Ozy Media, Inc.  ECF
1.  Counts One and Two are asserted against both Watson and Ozy;
they charge conspiracies to commit securities fraud and wire
fraud, respectively.  Count Three, charging aggravated identify
theft, names Watson alone.  Ozy has not joined in Watson's
motions.

## A.   The Indictment Adequately Alleges Each Offense

In felony cases, "a defendant has a substantial right to be tried only on charges presented in an indictment returned by a grand jury." *United States v. Dupree*, 870 F.3d 62, 70 (2d Cir. 2017); *see United States v. Walsh*, 194 F.3d 37, 44 (2d Cir. 1999).  Pursuant to Federal Rule of Criminal Procedure 7(c)(1), an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." *United States v. Stringer*, 730 F.3d 120, 123–24 (2d Cir. 2013) (quoting Fed. R. Crim. P. 7(c)(1)); see also *United States v. Ji*, No. 21-CR-265, 2022 WL 595259, at *1 (E.D.N.Y. Feb. 28, 2022).  That rule "performs three constitutionally required functions: It fulfills the Sixth Amendment right to be informed of the nature and cause of the accusation; it prevents a person from being subject to double jeopardy as required by the Fifth Amendment; and it serves the Fifth Amendment protection against prosecution for crimes based on evidence not presented to the grand jury." *Walsh*, 194 F.3d at 44.

This is, however, a fairly low bar.  "An indictment is sufficient as long as it (1) contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and (2) enables the defendant to plead an acquittal or conviction in bar of future prosecutions for the same offense." *United States v. Dawkins*, 999 F.3d 767,

779 (2d Cir. 2021).  "To satisfy these requirements, an indictment need do little more than track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime."  *Id.*

"At the indictment stage," courts "do not evaluate the adequacy of the facts to satisfy the elements of the charged offense."  *United States v. Wedd*, 993 F.3d 104, 121 (2d Cir. 2021).  And "when a defense raises a factual dispute that is inextricably intertwined with a defendant's potential culpability, a judge cannot resolve that dispute on a Rule 12(b) motion."  *United States v. Sampson*, 898 F.3d 270, 281 (2d Cir. 2018).  In short, "summary judgment does not exist in federal criminal procedure."  *Wedd*, 993 F.3d at 121.

1.  Counts One and Two

***Securities Fraud Conspiracy.***  Count One charges a conspiracy to commit securities fraud, "contrary to" 15 U.S.C. §§ 78j(b) and 78ff and in violation of 18 U.S.C. § 371.  Count Two charges a conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349.  Watson contends that both should be dismissed because they "fail to allege material misstatements."  Watson Mem. 22.

The securities fraud statute at issue contains a materiality requirement in some, but not all, of its parts.  It incorporates Exchange Act Rule 10b-5, which provides that it

3

"shall be unlawful," in connection with the purchase or sale of securities, for any person:

> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.  Criminal liability for securities fraud subsumes this standard,[1] with the additional requirement that the violation be willful.  *See* 15 U.S.C. § 78ff(a); *United States v. Vilar*, 729 F.3d 62, 75 (2d Cir. 2013).[2]

To establish materiality, the government must prove that "there is a substantial likelihood that a reasonable

---

[1] One might reasonably ask how an SEC rule can affect the contours of federal criminal law.  The Supreme Court and Second Circuit have taken up this question:

> Despite the seemingly "dubious validity of an open-ended delegation to an independent agency to go forth and create regulations criminalizing fraud," *see United States v. O'Hagan*, 521 U.S. 642, 691 (1997) (Thomas, J., concurring in part and dissenting in part), the Supreme Court has blessed this delegation of power, *see, e.g., id.* at 650-51 (majority opinion).  The Supreme Court has also held, however, that criminal liability under SEC regulations for insider trading may not extend beyond the conduct that Congress intended to encompass in § 10(b) of the 1934 Act.  *Id.* at 651.

*United States v. Gansman*, 657 F.3d 85, 90 n.5 (2d Cir. 2011).

[2] "As for the element of willfulness in criminal cases, it comes directly from Section 32 of the Securities Exchange Act of 1934, which permits criminal liability to attach to a violation of Section 10(b) only when the violation is willful." *Vilar*, 729 F.3d at 75.  Section 32 is codified at 15 U.S.C. § 78ff(a).

investor would find the omission or misrepresentation important in making an investment decision." *Vilar*, 729 F.3d at 88; *accord United States v. Litvak*, 808 F.3d 160, 175-76 (2d Cir. 2015).

Conspiracy liability under Section 371 is established when two or more persons agree to commit an offense against the United States, and one or more of them commits an overt act in furtherance of that object.  18 U.S.C. § 371.

Count One clearly *alleges* materiality.  It states that the defendants:

> knowingly and willfully conspire[d] to use and employ manipulative and deceptive devices and contrivances, contrary to Rule 10b-5 of the Rules and Regulations of the United States Securities and Exchange Commission, Title 17, Code of Federal Regulations, Section 240.10b-5, by: (i) employing one or more devices, schemes and artifices to defraud; (ii) making one or more untrue statements of ***material*** fact and omitting to state one or more ***material*** facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (iii) engaging in one or more acts, practices and courses of business which would and did operate as a fraud and deceit upon one or more investors and potential investors in OZY MEDIA,INC., in connection with the purchase and sale of investments in OZY MEDIA, INC., directly and indirectly, by use of means and instrumentalities of interstate commerce and the mails, contrary to Title 15, United States Code, Sections 78j(b) and 78ff.

Indictment ¶ 98, ECF No. 1 (emphases added).

***Wire Fraud Conspiracy.***  A person commits wire fraud conspiracy when:

> having devised or intending to devise any scheme or
> artifice to defraud, or for obtaining money or property by
> means of false or fraudulent pretenses, representations, or
> promises, [he] transmits or causes to be transmitted by
> means of wire, radio, or television communication in
> interstate or foreign commerce, any writings, signs,
> signals, pictures, or sounds for the purpose of executing
> such scheme or artifice.

18 U.S.C. § 1343.  Though the "materiality" modifier does not appear in the text, the Supreme Court has held that materiality "is an element of" the federal wire fraud statute.  *Neder v. United States*, 527 U.S. 1, 4 (1999); *see also United States v. Calderon*, 944 F.3d 72, 85 (2d Cir. 2019) (government must "prove the *materiality* of a defendant's false statements or misrepresentations").  For a statement to be "material," in this context, means that "the misinformation or omission would naturally tend to lead or is capable of leading a reasonable person to change his conduct."  *United States v. Weaver*, 860 F.3d 90, 94 (2d Cir. 2017).

A conspiracy to commit wire fraud is subject to the same penalties as the underlying offense.  18 U.S.C. § 1349. Unlike under Section 371, "proof of an overt act is not a required element for a conspiracy conviction under 18 U.S.C. § 1349."  *United States v. Roy*, 783 F.3d 418, 421 (2d Cir. 2015).

Count Two alleges that:

> the defendants CARLOS WATSON and OZY MEDIA, INC., together
> with others, did knowingly and intentionally conspire to

> devise a scheme and artifice to defraud one or more
> investors, and potential investors in and lenders and
> potential lenders to, OZY MEDIA, INC., and to obtain money
> and property from them by means of one or more **materially**
> false and fraudulent pretenses, representations and
> promises, all affecting financial institutions and others,
> and for the purpose of executing such scheme and artifice,
> to transmit and cause to be transmitted by means of wire
> communication in interstate and foreign commerce writings,
> signs, signals, pictures and sounds, contrary to Title 18,
> United States Code, Section 1343.

Indictment ¶ 101.

*Application.*  Clearly, the language in both counts "track[s] the language of the statute charged and state[s] the time and place (in approximate terms) of the alleged crime." *Dawkins*, 999 F.3d at 779.  As such, these counts satisfy the requirements of the Fifth and Sixth Amendments.  *See United States v. Bankman-Fried*, No. 22-CR-0673, 2023 WL 4194773 (S.D.N.Y. June 27, 2023) (denying motion to dismiss similarly worded wire-fraud counts).

Watson does not dispute that the indictment recites the correct elements of both offenses or claim that he would be unable to assert a double-jeopardy claim in the future.  Rather, he argues — notwithstanding the italicized text above — that Counts One and Two "fail to allege material misstatements." Watson Mem. 22.

Watson reaches this conclusion via his consideration of the "speaking" portions of the indictment, in which the government recites some alleged misstatements.  Most

prominently, he challenges the "allegations that Mr. Watson and other Ozy executives misrepresented that other sophisticated firms were interested in or had committed to investing in the company."  Watson Mem. 24.

Though Watson does not actually cite the indictment, this appears to be a reference to Paragraph 27, which alleges as follows: a given investor "asked how much other investors had invested in the purported first Series C closing."  Watson's alleged co-conspirator "responded, copying WATSON, and provided a list of investors who had purportedly invested in the first Series C closing and the purported amounts of their investments."  In truth, however, many of the listed investors "had not yet invested in the Series C and would not invest for months."  Indictment ¶ 27.

Watson says this is the "most clearly non-criminal" allegation — i.e., the least material, as a matter of law — because it relates to the relative "bargaining power" of Ozy and its potential investors, and not to the intrinsic value of Ozy's equity.  Watson Mem. 24.  This argument fails for at least two reasons.

First, materiality is a mixed question of law and fact that the Second Circuit has repeatedly held is properly reserved for jury determination.  *United States v. Bilzerian*, 926 F.2d 1285, 1298 (2d Cir. 1991); *Litvak*, 808 F.3d at 175-76.  This is

a challenge to the sufficiency of the government's evidence, not to the contours of the indictment under Rule 7 or Rule 12, and as such it falls short.  *See United States v. Alshahhi*, No. 21-CR-371, 2022 WL 2239624, at *4 (E.D.N.Y. June 22, 2022).

Second, Watson's argument may not even make sense on its own terms.  Watson points to a survey conducted in the venture capital industry.  The study showed (according to Watson) that "current enterprise value" was a less important factor in early-stage investment decisions than, for example, a company's "business model" and the "identity of the founders."  Watson Mem. 5-6.  Watson then cites the Second Circuit's opinion in *United States v. Litvak*, and attempts to (a) distinguish that case's facts and (b) leverage some of its language.  The upshot of this effort, according to Watson, is that the alleged misrepresentations about other investors' identities and commitments are immaterial as a matter of law.

The logic of this argument is subject to some question.[3]  Regardless, Watson can make his materiality arguments

---

[3] It may turn out, for example, that — all else equal — a company is worth more by definition immediately after an infusion of cash than before?  Perhaps this is why investments in private securities are commonly valued on a "pre-money" *and* post-money" basis.  *See, e.g.*, *Pre-Money vs. Post-Money: What's the Difference?*, Investopedia, (April 22, 2024, 2:46 PM), https://www.investopedia.com/ask/answers/difference-between-premoney-and-postmoney/#:~:text=Pre%2Dmoney%20and%20post%2Dmoney%20are%20both%20ways%20of%20valuing,or%20the%20latest%20capital%20injection.

Beyond that, it may be a selling point that so-called "smart money" investors — those with well-regarded investment and due-diligence processes —

to the jury.[4]  But as noted above, materiality is a mixed question of law and fact, and the facts are (of course) still to come.

Watson cites only one binding case, *United States v. Pirro*, 212 F.3d 86 (2d Cir. 2000), in which a charge was dismissed prior to trial due to a failure to allege sufficient facts.  *Pirro* is inapposite: that indictment alleged only the omission of information that, under the relevant statute, the defendant had no duty to disclose.  *Id.* at 93.  The other cases Watson cites assessed materiality after a trial on the merits. *See* Watson Mem. 16–24.

Thus, Watson's arguments are not properly resolved at this stage.

    2.   Count Three

Count Three charges aggravated identity theft. Specifically, it alleges:

> CARLOS WATSON, together with others, during and in relation
> to the [wire fraud conspiracy] charged in Count Two, did
> knowingly and intentionally transfer, possess and use,
> without lawful authority, one or more means of
> identification of one or more persons, knowing that the
> means of identification belonged to other persons.

---

have committed at a given valuation, leading other investors to be willing to commit there too.  Or it may simply be that the amount of cash on hand is an important metric for companies whose operations are not yet cash-flow positive.   Questions like these — and more — are not for the court's resolution (or even consideration, really) at this stage.

    [4] He may or may not be able to call an expert in support of that argument, as he has indicated a desire to do.  Any Rule 702 issues will be briefed and decided separately.

Indictment ¶ 103.  As with Counts One and Two, Watson does not dispute that this count properly recites the elements of the offense.  Rather, he argues that the facts alleged — including the submission of forged contracts, creation of fake emails, and impersonation of outside executives — do not constitute the crime charged.  Watson Mem. 16.

Watson's argument is predicated primarily on the Supreme Court's recent ruling in *Dubin v. United States*, 599 U.S. 110 (2023).  *Dubin* clarified the requirements for a conviction under the aggravated identity theft statute that Watson is charged with violating — 18 U.S.C. § 1028A(a)(1).  Section 1028A(a)(1) criminalizes certain uses of another person's identification "in relation to" a predicate felony offense.  Adopting a narrower construction of this language than the government had urged, the *Dubin* majority held:

> A defendant "uses" another person's means of identification "in relation to" a predicate offense *when this use is at the crux of what makes the conduct criminal*.  To be clear, being at the crux of the criminality requires more than a causal relationship, such as "facilitation" of the offense or being a but-for cause of its "success."  Instead, with fraud or deceit crimes like the one in this case, the means of identification specifically must be used in a manner that is fraudulent or deceptive.  Such fraud or deceit going to identity can often be succinctly summarized as going to "who" is involved.

599 U.S. at 131-32 (emphasis added).

Watson argues that the facts set out in the indictment do not meet this standard.  He also contends that the indictment alleges no circumstances that could elevate the charge to "aggravated" identity theft, as generally "an aggravated offense is one made worse or more serious by circumstances such as violence, the presence of a deadly weapon, or the intent to commit another crime."  Watson Mem. 20 (quoting *Dubin*, 599 U.S. at 123-24).  Again, however, these assertions speak to the sufficiency of the government's proof, which is properly reserved for a trial jury.  *See, e.g.*, *Wedd*, 993 F.3d at 121. In *Wedd*, the Second Circuit invoked the familiar rule that "sufficiency of the evidence is not appropriately addressed on a pretrial motion to dismiss an indictment" and, on that basis, rejected a convicted defendant's argument that the prosecution had "improperly pled aggravated identity theft" in the operative indictment.  *Id.* at 120.

There is, as the government acknowledges, one "extraordinarily narrow" exception to this rule: if the government makes a "detailed presentation of the entirety of the evidence" in the indictment, a district court may be able to dismiss on sufficiency grounds.  *Sampson*, 898 F.3d at 282; *see also Wedd*, 993 F.3d at 121 ("In this case, the Government never purported to make a full proffer of the evidence it intended to present at trial.") (citing *United States v. Alfonso*, 143 F.3d

12

772, 776 (2d Cir. 1998)).  Here — as in *Sampson*, *Wedd*, and
innumerable other cases — Watson has not shown that anything
like a "full proffer" has actually been made.  Therefore, the
motion to dismiss the indictment for failure to state an offense
is denied.

**B.   Selective Prosecution**

Watson also moves to dismiss on the basis that the
government is prosecuting him "arbitrarily and selectively."
Watson Mem. 26.  In the alternative, he asks the court to order
discovery on this issue.  *Id.* at 28-30.

While federal prosecutors have "broad discretion" in
enforcing the criminal law, *United States v. Armstrong*, 517 U.S.
456, 464 (1996), that discretion is of course subject to
constitutional constraints, including that the decision to
prosecute may not be based on "an unjustifiable standard such as
race, religion, or other arbitrary classification."  *Oyler v.
Boles,* 368 U.S. 448, 456 (1962).

The legal standard for selective prosecution, however,
is exacting.  Prosecutors are generally accorded a "presumption
of regularity," and "in the absence of clear evidence to the
contrary, courts presume that they have properly discharged
their official duties."  *Armstrong*, 517 U.S. at 464.  This
presumption is motivated in part by separation of powers
concerns.  Such concerns are implicated because, on a selective

prosecution motion, "the power of a federal court is invoked to challenge an exercise of one of the core powers of the Executive Branch of the Federal Government, the power to prosecute." *Id.* at 467.

The "clear evidence" required to overcome this presumption must demonstrate both that the prosecutorial decision had a "discriminatory effect" and that it was "motivated by a discriminatory purpose." *Id.* at 465*; United States v. Alameh*, 341 F.3d 167, 173 (2d Cir. 2003). The Second Circuit has described this standard as "rigorous," *id.*, and stated that the "standard for discovery is correspondingly rigorous" — requiring the defendant to point to at least "some evidence" of both discriminatory effect and purpose before discovery will be had. *Alameh*, 341 F.3d at 173.

    1.  <u>Discriminatory Effect</u>

To demonstrate a discriminatory effect, Watson must show that "similarly situated individuals of a different race were not prosecuted." *Armstrong*, 517 U.S. at 465, *accord United States v. Fares*, 978 F.2d 52, 59 (2d Cir. 1992) (requiring a showing that the defendant has been "singled out" among others not prosecuted for the same type of conduct). To make this comparison, the moving party must present more than a small, anecdotal sample of ostensibly similarly situated individuals. *See Fares*, 978 F.2d at 60 (rejecting a selective prosecution

motion in part because the defendant "did not counter with evidence as to large numbers of similarly situated persons known to the government who had not been prosecuted"); *United States v. Hommosany*, 208 F.3d 204 (2d Cir. 2000) (upholding district court decision that, "[i]n the absence of evidence demonstrating how many individuals the . . . prosecutor knowingly failed to prosecute" the defendant "did not present 'some evidence' of having been singled out").

In support of his argument regarding discriminatory effect, Watson names five individuals who are not black and, according to him, engaged in similar conduct but were not prosecuted.  Watson Mem. 28.  The anecdotal selection of these individuals, among the millions in the Eastern District of New York, is not sufficient to demonstrate a discriminatory effect.

Watson also cites public reporting that these individuals engaged in conspiracies to commit securities fraud and wire fraud.  Watson Mem. 28.  But the Supreme Court has stated that "recounted hearsay and reported personal conclusions based on anecdotal evidence" will not ordinarily suffice to demonstrate discriminatory effect.  *Armstrong*, 517 U.S. at 470; *see also Fares*, 978 F.2d at 59 ("Mere assertions and generalized proffers on information and belief are insufficient.").[5]

---

[5] The Second Circuit has indicated — albeit in dicta — that particularized and persuasive *affidavits* can "provide some evidence" of

Perhaps more importantly, the news articles that Watson relies on do not clearly describe criminal activity that is sufficiently similar to what the indictment in this case alleges.  Instead they report, for example, that Buzzfeed "failed to properly instruct [its employees] on how to trade their shares immediately" following the company's initial public offering.[6]  Or that Vice Media made forward-looking revenue predictions that it failed to achieve: revenue "grew, but was $100 million lower than Vice's internal $805 million target."[7]  Or, in a similar vein, that Buzzfeed's founder presented a slide deck to potential investors containing "business projections" that "proved wrong — way wrong."[8]  But U.S. securities law has long recognized the distinction between forward-looking

---

selective prosecution.  *Alameh*, 341 F.3d at 174.  But Watson has not produced evidence of that quality or caliber.  Moreover, none of the cases cited in Watson's brief actually *found* the proffered evidence sufficient to support a claim of selective prosecution.  The closest case is *United States v. Berrios*, 501 F.2d 1207 (2d Cir. 1974), in which the Circuit held that requiring the production of a government memorandum under a selective prosecution theory was not an abuse of the district court's discretion, while simultaneously explaining why the appellate court would not itself have ordered the memorandum produced.

[6] Katie Robertson, *Dozens of BuzzFeed Employees Claim They Were Illegally Shortchanged in I.P.O.*, N.Y. Times, Mar. 15, 2022, *available at* https://www.nytimes.com/2022/03/15/business/media/buzzfeed-ipo-arbitration.html.

[7] Reeves Wiedeman, *Vice Media Was Built on a Bluff. What Happens When It Gets Called?*, New York, June 10, 2018, *available at* https://nymag.com/intelligencer/2018/06/inside-vice-media-shane-smith.html.

[8] Jason Del Rey, *BuzzFeed's 2008 Investor Pitch: See Jonah Peretti's Predictions, Right and Wrong*, AdAge, April 12, 2013, *available at* https://adage.com/article/media/buzzfeed-s-2008-investor-pitch-jonah-peretti-s-predictions/240861.

statements that do not pan out, on the one hand, and misstatements about past — and therefore eminently knowable — performance, on the other. *See, e.g.*, *Iowa Pub. Employees' Ret. Sys. v. MF Glob., Ltd.*, 620 F.3d 137, 143 (2d Cir. 2010) ("A forward-looking statement (accompanied by cautionary language) expresses the issuer's inherently contingent prediction of risk or future cash flow; a non-forward-looking statement provides an ascertainable or verifiable basis for the investor to make his own prediction.").

Finally, claims of discriminatory effect are weaker where, as here, the claiming parties' co-defendants do not belong to the allegedly disfavored racial classification.  For example, the Second Circuit denied a selective prosecution claim because "[the defendant] cannot show that other similarly situated individuals were not prosecuted — indeed, the prosecution of his co-conspirators proves otherwise." *United States v. Murph*, 452 F. App'x 31, 33 (2d Cir. 2011).  Here, the government charged two of Watson's former Ozy Media colleagues, neither of whom is African American.

2.  Discriminatory Purpose

Similarly, Watson has not adduced adequate evidence to support a finding of discriminatory intent.  In an effort to make such a showing, Watson says he collected data from PACER for all criminal prosecutions in the Eastern District of New

17

York in which the Assistant United States Attorneys prosecuting this case have appeared.  Watson Mem. 29.  He then categorized each defendant by race to calculate a purportedly disproportionate ratio of black defendants to white defendants.

This analysis suffers from at least two fatal deficiencies.  First, many — if not most — of the individuals in the sample are not similarly situated, in that they were not accused of white-collar or corporate crimes.  *See Alameh*, 341 F.3d at 174 (holding statistical evidence that "suffer[ed] from serious methodological difficulties" insufficient to sustain a selective prosecution claim).  And second, Watson compares the ratio he calculated to the wrong benchmark: instead of the universe of "similarly situated persons known to the government who had not been prosecuted," *Fares*, 978 F.2d at 60, he looks to the racial makeup of the district as a whole.  *Cf. Armstrong*, 517 U.S. at 465 (study was insufficient to demonstrate discriminatory effect — not purpose — because it "failed to identify individuals who were not black and could have been prosecuted for the offenses for which respondents were charged, but were not so prosecuted").

Thus, Watson has failed to meet the "rigorous standard" required to demonstrate discriminatory intent, and the "correspondingly rigorous" standard for discovery.  The

selective prosecution motion is denied, as is the motion for discovery on this point.

## II.  Conclusion

For the foregoing reasons, the motion to dismiss the indictment is DENIED.


SO ORDERED.


_/s/ Eric Komitee_____
ERIC KOMITEE
United States District Judge


Dated:   April 29, 2024
         Brooklyn, New York