

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

HDM:JRS/GK/DAS  *271 Cadman Plaza East*
F. #2021R00900  *Brooklyn, New York 11201*

May 2, 2024

By ECF

The Honorable Eric R. Komitee
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    *United States v. Carlos Watson and Ozy Media, Inc.*
               *Criminal Docket No. 23-82 (EK)*

Dear Judge Komitee:

      The government respectfully submits this letter in opposition to the defendants Carlos Watson and Ozy Media, Inc. ("Ozy")'s motion to dismiss the indictment, disqualify the U.S. Attorney's Office for the Eastern District of New York, or suppress evidence based on the assertion that the government improperly accessed certain materials allegedly subject to attorney-client privilege or work product protections. ECF Dkt. No. 131 (the "Motion"). In the Motion, the defendants identify three categories of materials that they claim the government improperly accessed: (1) materials prepared by members of the Berkeley Research Group (the "BRG Materials"); (2) materials prepared by Joseph Clemente, an accountant at Waxman & Bland CPAs ("Waxman & Bland") (the "Clemente Materials"); and (3) materials prepared by Frank Bland, also an accountant at Waxman & Bland (the "Bland Materials") (collectively, the "Identified Materials"). The defendants' assertion that the government's access to the Identified Materials and its interviews of Clemente and Bland were in any way improper is baseless. Therefore, the Court should deny the Motion in its entirety.

      A.      BRG Group Materials

      The defendants claim that the government "engaged in substantial misconduct" and willfully "invaded [the defendants'] attorney client privilege" when it reviewed materials produced by the Berkeley Research Group, a consulting firm that Ozy retained in October 2021 to review its finances, and interviewed Berkeley Research Group employee David Slayton. Motion at 2, 13. The defendants are wrong.

      In October 2022, the government provided advance notice to Ozy's prior counsel of its intent to interview Slayton and review materials produced by the Berkeley Research Group. In response, Ozy's counsel explicitly stated that they were not asserting any privilege as

to Slayton's interview and the BRG Materials.  Exhibit A (Email from Alexander Shapiro of Ford O'Brien Landy LLP to Dylan Stern, dated October 12, 2022) ("This will confirm that we are not asserting any privilege with regard to Slayton's interview or the documents he is producing to you.").  This defeats any assertion by the defendants now that the BRG Materials are subject to any attorney client privilege or work product protection and fatally undermines the claim that the government acted improperly in interviewing Slayton or reviewing the BRG Materials.

      B.    <u>Clemente Materials</u>

The defendants claim the government's interview of Joseph Clemente and review of materials provided by Clemente were improper because Waxman & Bland was originally hired by Watson's prior counsel at Dechert LLP and therefore Clemente automatically was "covered by attorney-client privilege and . . . off-limits to prosecutors."  Motion at 3.  The defendants are again incorrect.

The defendants' argument misstates Clemente's role at Ozy.  Clemente was not an agent of Watson's defense counsel; rather, he served as Ozy's interim Chief Financial Officer ("CFO") and continued in that role after Dechert LLP stopped representing Watson and until the company closed in 2023 — crucial facts the defendants fail to mention in the Motion.[1]  The Motion does, however, discuss actions by Clemente that clearly do not implicate attorney-client privilege or constitute work product.  For example, the Motion states that Clemente "'started consulting for [Ozy] in August 2022'" because "'[Watson] needed assistance getting [Ozy's] financials organized'" and his focus was "'on budgeting, driving sales, and cash management.'"  Motion at 4 (quoting 3500-JC-2 (March 17, 2023 Clemente Interview)).  In addition, Clemente also "participated in calls or meetings with several Ozy investors."  Motion at 4.  None of these acts fall within the ambit of the attorney client privilege or work product doctrines.  <u>See</u> <u>United States v. Kovel</u>, 296 F.2d 918, 922 (2d Cir. 1961) ("What is vital to the privilege is that the communication be made in confidence for the purpose of obtaining legal advice from the lawyer.  If what is sought is not legal advice but only accounting service . . . or if the advice sought is the accountant's rather than the lawyer's, no privilege exists.").  Moreover, the undisputed disclosure of Clemente's work to third-party investors would constitute a privilege waiver.  <u>Cicel (Beijing) Science & Tech. Co. v. Misonix, Inc.</u>, 331 F.R.D. 218, 227 (E.D.N.Y. 2019) ("It is also well-settled that voluntary disclosure of privileged communications to a third party results in waiver of the attorney-client privilege." (alterations and internal quotation marks omitted)).

Even though these facts show no privileged relationship between the defendants and Clemente, the government acted in an abundance of caution and in good faith.  Specifically, the government explicitly asked Clemente's counsel whether they had reviewed documents for privilege prior to producing them to the government.  In response, Clemente's counsel represented, "We are not aware of any arrangement by which Waxman and Bland would be

---

[1]    Ozy has identified Clemente as the company's interim CFO in its own public court filings.  <u>See, e.g.</u>, Exhibit B (<u>Samir Rao v. Ozy Media, Inc.</u>, No. 2022-0264 (Del. Ch. October 17, 2022), Affidavit of Joseph J. Clemente In Support of Defendant's Opposition to Motion for Contempt).

2

within a privilege with Ozy Media, so our assessment was that any privilege regarding these documents had been waived by their being shared with Waxman and Bland." See Exhibit C. Clemente's counsel also made clear that, to the extent any materials touched on privileged issues, they were redacting those portions of the materials prior to production to the government. See Exhibit D ("The documents contain a handful of redactions for attorney-client privileged communications regarding or seeking legal advice from Ozy's outside counsel.").

Furthermore, to the extent that the defendants had any colorable privilege claim as to any of the Clemente Materials, the defendants waived such protections by failing to assert that privilege. The government produced the Clemente Materials to the defendants in discovery in April and July 2023, accompanied by an index specifically identifying them as having been produced by Clemente. See ECF Nos. 58, 77. Between those productions almost a year ago and the filing of the Motion last week, the defendants made no effort to assert privilege over those documents. That failure to assert privilege constitutes a clear waiver. See United States v. Schulte, No. 17-CR-548 (JMF), 2022 WL 1284549, at *3 (S.D.N.Y. Apr. 29, 2022) (privilege waived where defendant "failed to assert that the document was privileged for more than six months after becoming aware that the Government had the document" and where defendant took no steps to secure document's return from the government).

In addition, eight months ago, in August 2023, the government specifically raised the issue to defense counsel and explained that it believed the financial services Clemente provided to Ozy did not fall within the attorney client privilege. See Ex. E (Email from Jonathan Siegel to Ronald Sullivan, Kyle Skinner and Kenneth Montgomery dated August 28, 2023). Although defense counsel asserted in a conclusory manner that a privileged relationship existed, defense counsel refused to provide a copy of Waxman & Bland's retention letter and failed to offer any basis for the assertion of privilege as to either defendant. Accordingly, the government notified defense counsel by email that the government would proceed as if "there is no privilege with Waxman & Bland" and stated that if the defendants wanted to prevent the government from reviewing materials produced by Waxman & Bland employees or "from treating Waxman & Bland as non-privileged," the defendants could raise the matter with the Court. See id. Defense counsel never responded to the government's email and did not raise the matter with the Court until the filing of the instant Motion. That conduct is not consistent with any good faith effort to protect a privilege and therefore constitutes waiver. See de Espana v. Am. Bureau of Shipping, No. 03-CV-3573 (LTS) (RLE), 2005 WL 3455782, at *4 (S.D.N.Y. Dec. 14, 2005) ("The privilege is waived if the disclosing party failed to take reasonable steps to maintain the confidentiality of the assertedly privileged documents.").

    C.    Bland Materials

The defendants likewise claim that the government's interview of Bland and review of the Bland Materials was improper because of the formal retention arrangement with Waxman & Bland. Motion at 3. For the same reasons discussed above as to Clemente, the defendants' argument also fails as to Bland.

As an initial matter, Bland, like Clemente, did not act as an agent of defense counsel; instead, he provided direct financial services to Ozy. Such services fall squarely outside the attorney client privilege and work product protections. Kovel, 296 F.2d at 922; see also

Motion at 5 ("[Watson] wanted to replace 'gross revenue' with 'net revenue' on [Ozy's] profit and loss statement. [Bland] was hired for this project.").

In addition, as with Clemente, the defendants waived any privilege with respect to the interview of Bland and review of the Bland Materials. As discussed above, the defendants waived any colorable privilege claim when they took no action in August 2023 after the government explicitly informed the defendants that, absent additional information to support the defendants' privilege claim, it would proceed as if "there is no privilege with Waxman & Bland." See Exhibit E.

Even following that waiver, however, the government proceeded cautiously, restricting the prosecution team's access to any documents produced by Bland and the notes and reports of any interviews with Bland so that they could be reviewed by a filter team for any potential privilege. The filter team reviewed the documents and interviewed Bland and concluded that the Bland Materials and interview notes and report did not "contain any information that is protected by any applicable privileges." Exhibit F (January 30, 2024 Letter to Ronald Sullivan and Kenneth Montgomery, docketed as ECF No. 110). As a second check, the filter team provided all of the relevant materials to defense counsel on January 30, 2024; informed defense counsel that the filter team intended to "to release the documents, notes, and interview report to the prosecution team on February 19, 2024"; and requested that the defendants advise them "prior to that date if [they] intend[ed] to assert any privileges over any of the information contained in the contents of [the] production." See id. The defendants did not respond to the letter, seek the return of the materials, or otherwise object to the government's review of the materials, thereby confirming their waiver of any applicable privilege.

D.  Issues Relating to Gross Revenue, Net Revenue and Barter Revenue

The defendants additionally argue that the government's interviews of Bland and Clemente regarding the Identified Materials alerted the government of "Watson's revenue defense," including issues relating to "barter revenue" and the "analytical distinction between gross revenue and net revenue," which the defendants maintain are "privileged topics" brought to the government's attention in a "corrupt manner." See Motion at 4, 7, 9, 13. Once again, these serious accusations are contradicted by the record.

The government was first alerted of the defendants' positions with respect to the analytical distinction between gross revenue and net revenue and the relevance of barter revenue by the defendants' own counsel in February 2023, when prior counsel sent the government an updated Operational Profit and Loss statement for the years 2019 though 2021 that explicitly differentiated between gross and net revenue and accounted for "barter revenue." See Exhibit G (email from Michael Scavelli of Steptoe & Johnson LLP to Jonathan Siegel, Dylan Stern and Gillian Kassner dated February 3, 2023 attaching "Ozy Pro Forma – Operational Profit and Loss – Jan. 2023"). Those same concepts are also detailed in materials produced by current defense counsel to the government pursuant to Fed. R. Crim. P. 26.2 on April 12, 2024. Accordingly, the Court should reject the defendants' suggestions that the repeatedly-disclosed financial concepts identified by the defendants are protected by any privilege. See In re Vitamin C Antitrust Litig., No. MD 06-1738 (BMC) (JO), 2011 WL 197583, at *2 (E.D.N.Y. Jan. 20, 2011) ("Generally, a voluntary breach of the zone of privacy protected by the work product

4

doctrine — sharing, for instance, theories and strategies with an adversary — destroys the privilege."); In re Steinhardt Partners, L.P., 9 F.3d 230, 235 (2d Cir. 1993) ("Once a party allows an adversary to share the otherwise privileged thought processes of counsel, the need for the privilege disappears.").

E. Conclusion

Because the defendants have not established that any of the communications disclosed to the government are privileged or that any applicable privilege has not been waived, the Court should deny the defendants' Motion in its entirety.

Respectfully submitted,

BREON PEACE
United States Attorney

By: /s/
Jonathan Siegel
Gillian Kassner
Dylan A. Stern
Assistant U.S. Attorneys
(718) 254-6293/6224/6213

cc: Clerk of the Court (EK) (by ECF)
Counsel of Record (by ECF and Email)