

U.S. Department of Justice

United States Attorney
Eastern District of New York

JRS/GK/DAS  
F. #2021R00900

271 Cadman Plaza East  
Brooklyn, New York 11201

May 7, 2024

By ECF

The Honorable Eric R. Komitee  
United States District Judge  
Eastern District of New York  
225 Cadman Plaza East  
Brooklyn, New York 11201

   Re: United States v. Carlos Watson and Ozy Media, Inc.  
     Criminal Docket No. 23-82 (EK)

Dear Judge Komitee:

   The government respectfully submits this letter to renew its opposition to the testimony of Barry Pincus, the defendants' proposed expert witness on the topic of revenue. On May 1, 2024—two-and-a-half weeks before jury selection—the defendants sent the government a belated summary of Pincus's anticipated testimony, attached hereto as Exhibit A (the "Revenue Expert Disclosure"). The Revenue Expert Disclosure, which references a collection of materials that the defendants have neither clearly identified nor provided to the government, falls far short of the disclosure requirements set out in Federal Rule of Criminal Procedure 16. In addition, the Revenue Expert Disclosure states that Pincus did not conduct a "forensic audit" and instead plans to rely on "estimates provided by Ozy Media, Inc.," which confirms that the defendants intend to call Pincus to admit otherwise inadmissible hearsay under the guise of expert testimony. Because the defendants seek to offer expert testimony for an improper purpose, and because the defendants' failure to adhere to Rule 16 and the Court's schedule has substantially prejudiced the government's ability to engage its own expert to respond to any testimony offered by this expert, Pincus's testimony should be precluded.

   A. <u>Procedural Background</u>

   On January 23, 2024, the Court set a deadline of February 23, 2024 for expert disclosures. <u>See</u> ECF No. 106 (status conference transcript) at 20. The Court informed the defendants that "even if you don't have a specific expert engaged at that point, it might behoove you . . . to say as much as you can about what the testimony you envision eliciting is." <u>Id.</u> The Court further made clear that "everybody has to comply with the rules of discovery in their entirety irrespective of my invitation to make a partial submission" and cautioned that such an

invitation was "not a promise that whatever information [Watson] omits will not be a problem down the line for his request to call that witness." Id. at 23-24.

On February 23, 2024, defendant Carlos Watson filed a letter noting his intent to call three expert witnesses at trial. See ECF No. 117. Rather than provide a robust description of the proposed testimony, or anything approximating the "complete statement of all opinions that the defendant will elicit from the witness," as required by Rule 16(b)(1)(C)(iii), the defendant instead provided one-paragraph partial summaries of potential opinions by each of the three unnamed witnesses. See ECF No. 117 at 1-2.

On April 12, 2024, seven weeks after the Court-ordered expert disclosure deadline, Watson filed a disclosure for one expert, David T. Robinson, Ph.D. See ECF No. 127. Two days later, defense counsel informed the government that it intended to call Pincus—whose firm was retained on an undisclosed date in 2023—as a lay witness rather than an expert witness.

At the April 26, 2024 status conference, defense counsel shifted course again, stating that they intended to call Pincus as an expert witness at trial. After a colloquy on the topic of Pincus's potential testimony, the Court said, "Let's understand what it is this accountant would say, and then we can decide A, is this so late that the Government's been prejudiced? B, is this appropriate subject matter for an expert's testimony to begin with? Right now we're just kind of grasping at straws." Tr. at 57:17-22. Following the conference, the government emailed defense counsel and requested the expert notice for Pincus, as well as the studies and material underlying his and Dr. Robinson's opinions.

On May 1, 2024, defense counsel provided the Revenue Expert Disclosure. That same day, the government responded requesting various documents underlying the Revenue Expert Disclosure—consistent with the defendants' disclosure obligations under Rule 16(b)(1)(C)—and reiterating its request for similar materials as related to Dr. Robinson. The government also sought to confirm that there were not any additional Rule 26.2 materials for these witnesses, as the only email, agreement, invoice or other communication that the defendants produced with regard to either proposed expert witness was Dr. Robinson's engagement letter. As of the date of this letter, the government has not received a response or any supplemental information.

    B.    <u>The Revenue Expert Should Be Precluded</u>

The Revenue Expert Disclosure utterly fails to comply with Rule 16, and to the extent that the government can ascertain the opinions the defendants seek to elicit from Pincus, those opinions are plainly irrelevant and inadmissible. The Court should therefore preclude such testimony.

    1.    <u>The Revenue Expert Disclosure Falls Far Short of the Defendants' Rule 16 Obligations</u>

Rule 16(b)(1)(C)(iii) requires a defendant to disclose, for each expert witness, (1) "a complete statement of all opinions that the defendant will elicit from the witness in the defendant's case-in-chief"; (2) "the bases and reasons for them"; (3) "the witness's qualifications, including a list of all publications authored in the previous 10 years"; and (4) "a

2

list of all other cases in which, during the previous 4 years, the witness has testified as an expert at trial or by deposition." Such disclosures must be made "sufficiently before trial to provide a fair opportunity for the government to meet the defendant's evidence." Fed. R. Crim. P. 16(b)(1)(C)(ii).

As a threshold matter, the Revenue Expert Disclosure does not include any information about Pincus's qualifications, publications or history testifying as an expert witness. Without knowing anything about Pincus's background, it is unclear whether he is properly considered an expert at all—and at a minimum, the government does not have any basis to challenge or even begin to understand his qualifications. The Revenue Expert Disclosure is fatally deficient on this basis alone.

Moreover, the Revenue Expert Disclosure fails to identify the documents, records and other bases for Pincus's opinions. For example, Section A of the Revenue Expert Disclosure discusses a comparison of defendant Ozy Media, Inc.'s "pro forma financial statements" against the company's "books of record," and also mentions an analysis of "insertion orders" and "emails" between Ozy and third parties. See Ex. A ¶ A. The defendants did not disclose any of these materials—the pro forma financial statements, the books of record, the insertion orders or the emails. When the Revenue Expert Disclosure purports to delve into a greater level of specificity, it references various contracts and insertion orders "with several blue chip companies," as well as the review of "documentation for other OZY Media, Inc. clients." Id. ¶ C(a)-(b). These documents were not disclosed to the government. Nor were the unrecorded "signed contracts" that Pincus "encountered" during his review, or the "several contracts [that] were canceled with key clients." Id. ¶ C(d), (h). Pincus also purportedly "used several estimates provided by OZY Media, Inc. including discount levels, barter arrangement, revenue booking and the classification of the various components of revenue" to form his opinions. Id. ¶ C(f). The defendants have not supplied these "estimates" either.[1]

With trial mere weeks away—and the Court-ordered expert disclosure deadline more than two months in the past—the defendants' failure to identify the bases for Pincus's testimony puts the government in the position of being severely prejudiced and "unable to meet the defendant's evidence." Fed. R. Crim. P. 16(b)(1)(C)(ii). The defendants' approach of "asserting that [an expert] will provide [an] opinion based on some unspecified method . . . based on data from unspecified sources, does not suffice"—in part because the government at this late stage will be unable to engage an expert to complete any meaningful analysis to rebut Pincus's anticipated testimony. United States v. Ulbricht, No. 14-CR-68 (KBF), 2015 WL 413318, at *6 (S.D.N.Y. Feb. 1, 2015), aff'd, 858 F.3d 71 (2d Cir. 2017); see United States v. Mahaffy, No. 05-CR-613 (ILG), 2007 WL 1213738, at *2 (E.D.N.Y. Apr. 24, 2007) ("The purpose of Rule 16(b)(1)(C) is to 'minimize surprise that often results from unexpected expert testimony,

---

[1] To the extent any of the information or materials relied upon by Pincus should have been produced in response to the subpoenas issued to either defendant or in response to the Court's order to compel (see ECF No. 81) but were not, any testimony based on such information or materials should be barred. As noted in the government's motions in limine, the defendants should not be permitted to gain a tactical advantage by ignoring compulsory process and flouting the Court's order. See ECF No. 119 at 69 n.13.

3

reduce the need for continuances, and to provide the opponent with a fair opportunity to test the merit of the expert's testimony through focused cross-examination.'" (quoting United States v. Wilson, 493 F. Supp. 2d 484, 487 (E.D.N.Y. 2006))). The defendants' obvious noncompliance with Rule 16 requires their revenue expert be precluded. See, e.g., United States v. Dzionara-Norsen, 2024 WL 191803, at *3-4 (2d Cir. Jan. 18, 2024) (affirming preclusion of defense expert where notice provided "a brief summary of the proposed testimony, but failed to provide a full statement of [the expert's] opinions and reasons for them"); United States v. Vaccarelli, 2021 WL 4805218, at *1 (2d Cir. Oct. 15, 2021) (affirming preclusion of defense expert where notice "failed to specify the basis for his opinion"); Ulbricht, 858 F.3d at 115 (affirming preclusion of defense experts where disclosures "were plainly inadequate" in that they "merely listed general and in some cases extremely broad topics on which the experts might opine" and did not "describe the bases for the experts' opinions").

>        2.    The Revenue Expert Disclosure Confirms that the Defendants Intend to Call Pincus to Provide Impermissible Testimony

Although the testimony the defendants plan to elicit from Pincus is not entirely clear from the Revenue Expert Disclosure,[2] the contents of the disclosure strongly suggest that the defendants primarily seek to call him to launder inadmissible hearsay through an expert witness. The Court should bar testimony offered for this improper purpose.

"Under [Federal Rule of Evidence] 703, experts can testify to opinions based on inadmissible evidence, including hearsay, if experts in the field reasonably rely on such evidence in forming their opinions." United States v. Mejia, 545 F.3d 179, 197 (2d Cir. 2008). "The expert may not, however, simply transmit that hearsay to the jury." Id.; see also United States v. Ray, 583 F. Supp. 3d 518, 533 (S.D.N.Y. 2022). The Second Circuit has advised that an expert is not permitted to simply "repeat[] hearsay evidence without applying any expertise," which would allow the offering party "to circumvent the rules prohibiting hearsay." Mejia, 545 F.3d at 197; accord United States v. Dukagjini, 326 F.3d 45, 58-59 (2d Cir. 2003).

Based on the Revenue Expert Disclosure, it appears that a significant portion of Pincus's testimony is based on information provided to him by Watson. According to the Revenue Expert Disclosure, Pincus did not conduct an independent forensic audit or verify all of the revenue in the "books of record." Ex. A ¶ A, C(e). Rather, he "used several estimates provided by OZY Media, Inc. including discount levels, barter arrangements, revenue bookings and the classification of the various components of revenue." Ex. A ¶ C(f). It is the government's understanding that since the Indictment, Ozy has consisted of one person: Carlos

---

[2] The Revenue Expert Disclosure suffers from other deficiencies that undermine any attempt to comprehend both Pincus's conclusions and the bases and reasons for them. See Rule 16(b)(1)(C)(iii). By way of example, the Revenue Expert Disclosure contains a chart with mismatched columns that includes an entry under 2017 EBITDA which reads "$(9,000,000) should be $12,500,000." The chart provides no explanation for the source of either figure or the meaning behind the "should be" language.

4

Watson. So when the Revenue Expert Disclosure states that it received estimates from Ozy, they are coming from Watson himself.

Watson's statements to Pincus about Ozy's business financials are out-of-court statements being offered for their truth—textbook hearsay. See Fed. R. Evid. 801(c). And it is clear from the Revenue Expert Disclosure that the expert here did not apply his expertise to these statements to generate his opinions; rather, as the defendants' Rule 26.2 disclosures demonstrate, Pincus simply multiplied revenues by the discount rates Watson provided, and added barter and other revenue based on Watson's representations alone. See Ex. B (various references to "management estimates").[3] This is precisely the circumvention of hearsay rules that the Federal Rules of Evidence and Second Circuit precedent caution against. If Watson would like to testify about these matters, he is certainly free to do so, but it is inappropriate for him to attempt to admit his hearsay statements about unaccounted-for revenue through an expert witness.

In addition, as anticipated in the government's motions in limine, the defendants seek to admit through Pincus an irrelevant post hoc analysis that would risk serious confusion of the issues before the jury. See Fed. R. Evid. 401, 403; see also ECF No. 118 at 22-24. According to the Revenue Expert Disclosure, the defendants intend to elicit testimony from Pincus "that OZY Media, Inc.'s revenue supported the revenue disclosed in the pro-forma statements." Ex. A ¶ D. But this conclusion—the bases of which are inadequately explained, as noted above—is irrelevant; Watson is charged with conspiracies to commit fraud, not the substantive offenses, and he may be guilty of conspiracy even where the statements he believed were false at the time were in fact true. See United States v. Williams, 553 U.S. 285, 300 (2008) (for "inchoate crimes" such as "conspiracy . . . impossibility of completing the crime because the facts were not as the defendant believed is not a defense"). The relevant question is Watson's contemporaneous state of mind, and because Pincus was not an Ozy employee at the time of the charged offenses, his post hoc analysis cannot offer any insight on this point and would in fact invite jury confusion. See, e.g., United States v. Martoma, 993 F. Supp. 2d 452, 455-57 (S.D.N.Y. 2014) (precluding an after-the-fact analysis from an expert because it would not be relevant to the defendant's state of mind and would risk confusing the jury). Therefore, Pincus's testimony should be precluded as irrelevant and overly prejudicial under Rules 401 and 403.[4]

---

[3] Because Exhibit B is a Microsoft Excel spreadsheet, it has been converted to a .pdf for filing on the public docket. The government will provide the Court with a native version via email, which includes the formulas used for certain revenue calculations.

[4] Although this letter focuses on Pincus, the defendants' disclosures with regard to Dr. Robinson have also been insufficient. The government has repeatedly requested the studies and materials underlying Dr. Robinson's opinions, as well as additional Rule 26.2 disclosures, and has received nothing. See Ex. B. With trial approaching, the government has not been able to prepare Dr. Robinson's cross-examination or properly prepare a rebuttal expert because of this nondisclosure. See United States v. Tuzman, No. 15-CR-536 (PGG), 2017 WL 6527261, at *11 (S.D.N.Y. Dec. 18, 2017) ("If proposed expert testimony is based on a 'review and analysis of scientific, medical and other peer reviewed literature,' the defendant must supply the literature upon which the expert will rely."). The government therefore renews its motion to preclude Dr. Robinson's expert testimony.

C.  Conclusion

For the foregoing reasons, the Court should preclude Pincus's expert testimony in its entirety.

Respectfully submitted,

BREON PEACE
United States Attorney

By:   /s/ _____
Jonathan Siegel
Gillian Kassner
Dylan A. Stern
Assistant U.S. Attorneys
(718) 254-6293/6224/6213

cc:   Clerk of the Court (EK) (by ECF)
      Counsel of Record (by ECF and email)