

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

JRS/GK/DAS
F. #2021R00900

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

July 1, 2024

By ECF

The Honorable Eric R. Komitee
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Carlos Watson and Ozy Media, Inc.
               Criminal Docket No. 23-82 (EK)

Dear Judge Komitee:

      The government respectfully submits this letter, as per the Court's instruction, to supplement its request that the Court preclude the testimony of Beverly Watson. The defense productions as to Ms. Watson have brazenly violated both the Court's order to compel and the mutually-agreed upon — and so-ordered — deadline for disclosures under Federal Rule of Criminal Procedure 26.2. For those reasons and the others discussed below, preclusion of Ms. Watson's testimony is warranted.[1]

    I.    Background

        A.    The Grand Jury Subpoenas to Watson and Ozy

      The government first served Carlos Watson and Ozy Media with grand jury subpoenas on or about October 11, 2021, each with a return date of October 21, 2021 (subsequently extended to October 29, 2021).[2] As relevant here, the subpoena issued to Watson

---

[1]     Significant portions of this letter have been pulled from the government's prior filing on this topic, see ECF No. 214. The government includes those portions here for the Court's convenience and to ensure that argument on this matter is contained in one submission.

[2]     On or about July 1, 2022, and July 11, 2022, respectively, the government served Watson and Ozy with new subpoenas that were substantively identical to those served on them in October 2021. The only changes in these revised subpoenas were making explicit that: (1) Watson was being served as a corporate custodian for Ozy, rather than in his personal capacity; and (2) the subpoenas were not seeking any records of "newsgathering activities," as that term was used in 28 C.F.R. § 50.10. On March 6, 2023, the government re-issued the

requested, among other things, "Any and all written, email or text, text messages, encrypted text messages . . . or other instant messaging service . . . correspondence with any officer, principal, owner, employee or consultant/third party representative of OZY Media," as well as "Any and all written, email or text, text messages, encrypted text messages . . . or other instant messaging service . . . correspondence with . . . any investors or potential investors in OZY Media." The subpoena issued to Ozy requested, among other things, "Documents to identify current and past investors in OZY Media, Inc. . . . and size and dates of such investments," and "All presentations to current and prospective investors, including investor solicitation materials and communications with potential investors, including drafts of presentations."

        B.        The Order to Compel

On July 28, 2023, the Court issued an order to compel directing that Watson and Ozy must comply with the previously issued grand jury subpoenas in their entirety within 45 days from the date of the Order. See ECF No. 81.

        C.        The Court-Ordered Deadline for Individually Pre-Marked Exhibits

Consistent with Rule V(E)(1) of the Court's Individual Rules and Practices, the government requested in its motions in limine a mutual exhibit disclosure deadline of May 10, 2024. See ECF No. 119 at 66-69. The defendants did not object to this deadline in their opposition, writing only, "The parties shall propose relevant disclosure dates." ECF No. 123 at 16. At the April 26, 2024 status conference, the government requested a decision on the deadlines of "when exhibits are due from both sides." Apr. 26, 2024 Tr. 93:10-11. The Court responded by asking about its Individual Rules, to which the government responded that they "say 10 days before trial, so we keyed it to May 10th, . . . for both sides." Id. at 9:12-15. The Court ruled simply: "Okay. There you have it." Id. at 93:16.

On May 10, 2024, the government provided to the defense approximately 1,400 exhibits that the government at that time believed it might use during its case-in-chief at trial. See ECF No. 143. The defendants produced nothing to the government on May 10, 2024 and did not provide any pre-marked exhibits until May 29, 2021, the first day of trial. Since that time, continuing through June 30, 2024, the defense has regularly provided new exhibits, most of which bear Bates numbers indicating that they had not previously been produced in discovery.

        D.        The Agreed-Upon Deadline for Rule 26.2 Disclosures

On April 11, 2024, the government informed the Court that "the parties ha[d] conferred and agreed upon the mutual, simultaneous exchange of now-existing" witness statements on April 12, 2024, and had "further agreed to produce any future [witness statements] on a rolling basis." ECF No. 125. The parties jointly requested that the Court "so-order" the

---

Watson subpoena with an updated return date of April 5, 2023; it otherwise identical to the prior Watson subpoenas and was re-issued to provide newly retained counsel with more time to respond and to extend the date range for documents sought.

April 12, 2024 deadline (see id.), which the Court did on April 12, 2024 (see ECF Order dated Apr. 12, 2024).

On April 12, 2024, the government disclosed over 1,200 separately marked witness statements for 60 potential witnesses, along with an index describing each document and providing an approximate date. That same day, the defendants disclosed materials for proposed experts David Robinson and Barry Pincus, but did not disclose any materials for any fact witnesses, including Ms. Watson.

E.   The Defendants' Failure to Disclose Ms. Watson's Materials

On May 29, 2024, the defense disclosed a witness list of 40 individuals, which the defense subsequently narrowed to 30 individuals on May 31, 2024, and then expanded to 35 individuals on June 9, 2024. See ECF Nos. 177, 182. Ms. Watson was on each of these lists. See id. No witness statements were provided for any of the witnesses except Dr. Robinson.

On June 9, 2024, the government moved to preclude from testifying any witness for whom witness statements had not been produced. See ECF No. 184. In that motion, the government specifically identified Ms. Watson, among others, as a witnesses for whom no materials had been produced but for whom materials plainly existed. See id. at 2. The following day, on June 10, 2024, the government reiterated its motion in court. See Tr. 1405:25-1409:5. The Court declined to rule on the motion at that time but admonished defense counsel, "Don't assume the Government already has this stuff. Figure out what exists, confirm, or deny that the Government has it, comply with your undertakings, or risk the consequences." Tr. 1409:1-4. Defense counsel responded, "Understood." Tr. 1409:5.

On June 14, 2024, the government informed the Court that it had still not received witness statements for any defense witnesses except Dr. Robinson and renewed its motion to preclude additional witnesses from testifying. See Tr. 1963:5-13, 1965:23-1966:9. The Court stated, "That request is taken under advisement. And obviously, the extent to which the defense complies with court orders, complies with its own agreements, and complies with federal statutes and rules, like, that will all go into the analysis when we make it, and you know, it's up to them whether they want to adjust their behavior accordingly." Tr. 1966:4-9.

On the morning of June 26, 2024, the day the government had previously indicated it intended to rest, the defense disclosed approximately 25 witness statements for Ms. Watson, all of which were from prior to the April 12, 2024 disclosure deadline. None of those documents appear to have been produced by either defendant in response to the subpoenas or the Court's order to compel,[3] nor have any been included in the defendants' running list of defense exhibits, the first set of which was provided on May 26, 2024 (in unmarked form) and which have been continually updated through June 30, 2024. Between June 26, 2024 and July 1, 2024, the defense also provided several thousand witness statements for other potential witnesses, most of which had never been produced before.

---

[3]   Each of the documents bore Bates numbers that were not covered in any range previously produced by either defendant in response to the subpoenas or order to compel.

3

The vast majority of the 25 documents in the defense's Rule 26.2 disclosures are from the week following Watson's arrest, and they concern mostly administrative and organizational matters that Ms. Watson was apparently handling for Ozy and her brother. There are two documents from 2019: one is an email exchange between Ms. Watson and another individual about a job offer that other individual received (not at Ozy), and the second is her acceptance of an invitation regarding one of Watson's fundraising trips to the Middle East. The other three documents are a June 14, 2022 letter Ms. Watson wrote about why she decided to work at Ozy; a June 26, 2023 LinkedIn post in which she publicizes Watson's selective prosecution arguments that have since been rejected by the Court; and what appears to be a text thread, with numerous unexplained and likely improper redactions, between Ms. Watson and Ms. Rudy that terminates on February 26, 2024 (despite the government's understanding that there were more recent communications between them).

On July 1, 2024, the defense indicated that it intended to produce additional Rule 26.2 material as to Ms. Watson. As of the time of filing (occurring at approximately 10:15 p.m.), the government has not received any additional materials.

II.     Legal Standard

"The adversary process could not function effectively without adherence to rules of procedure that govern the orderly presentation of facts and arguments to provide each party with a fair opportunity to assemble and submit evidence to contradict or explain the opponent's case." Taylor v. Illinois, 484 U.S. 400, 410-11 (1988). The "interest in the orderly conduct of a criminal trial is sufficient to justify the imposition and enforcement of firm, though not always inflexible, rules relating to the identification and presentation of evidence." Id. at 411. In particular, federal courts have "inherent power" to require both the government and the defense to disclose recorded statements of their respective witnesses so that the opposing party "may get the full benefit of cross-examination and the truth-finding process may be enhanced." United States v. Nobles, 422 U.S. 225, 231-32, 241 (1975).[4]

If a defendant violates a court's discovery order relating to a defense witness, the court may, in its discretion, preclude the witness from testifying. See id. at 241. Specifically, where "a discovery violation amount[s] to 'willful misconduct' and was designed to obtain 'a tactical advantage,'" preclusion will be appropriate "'regardless of whether prejudice to the prosecution could have been avoided' by a lesser penalty." Michigan v. Lucas, 500 U.S. 145, 153 (1991) (quoting Taylor, 484 U.S. at 417). Indeed, where a violation is "both willful and blatant," more "is at stake than possible prejudice to the prosecution" — such conduct threatens "the integrity of the judicial process itself." Taylor, 484 U.S. at 416-17.

---

[4] In the case of government witnesses, whose safety may be imperiled by too early disclosure, courts' discretion as to the timing of disclosure is circumscribed by 18 U.S.C. § 3500(a). See Nobles, 422 U.S. at 231 n.5. That statutory limitation does not apply to defense witnesses.

4

III. Discussion

    A. Ms. Watson's Testimony Should Be Precluded Based on the Repeated Violations of Court-Ordered Disclosure Deadlines

As the Court itself observed, "it is hard . . . to understand that [the defense's conduct regarding witness statements] is anything but a tactical choice and a purposeful violation of the defense's agreement." Tr. 2642. Further, as the Court is well aware, the violation of the order to disclose witness statements comes as part of a long pattern of the defense violating nearly every disclosure deadline set by the Court throughout this case. In light of the full picture of the defense's conduct and the repeated reminders by the government and the Court regarding the defendants' disclosure obligations, the record of willful misconduct committed to obtain a tactical advantage could not be more clear.[5]

Under those facts, the government respectfully submits that the only appropriate course is preclusion of defense witnesses not yet on the witness stand for whom witness statements were provided late — and to date, continue to be incomplete — including Ms. Watson. It is unfortunate that the defense has created a situation where the Court must weigh such a sanction. But if that sanction is not imposed under these facts, then in future cases, no party could ever feel confident than an agreement or an order for early disclosure would be followed or enforced, and the incentive to enter into such agreements or to comply with such orders would be severely reduced. That outcome would undermine the near-universal practice in this District of early disclosure of witness statements, to the great detriment of future trials. The Court should not sacrifice that critical practice to save the defense from their own willful failings.

Although the Court need not consider prejudice to the government in this decision, the prejudice to the government is plain. The government has had to operate in the dark after being presented with a list of more than thirty potential defense witnesses without any information regarding the nature of their anticipated testimony or its relevance to the case. The delayed disclosures have precluded the government from relevant legal challenges to the testimony in advance or from developing testimony in its own case to address the defense witnesses' anticipated testimony. Further, rather than having weeks to review materials and consider appropriate cross-examination — as the defendants had — the government has been forced to scramble to review the materials and prepare cross-examinations on a short timeline, all at the expense of time government had previously planned to use to prepare the cross-examination of the defendant and closing arguments. The delayed disclosures also make it virtually impossible for the government to determine if the disclosures are complete. Where deficiencies are identified, the government must waste its time (and the Court's and the jury's

---

[5] In court today, the defense claimed that its failures were the result of issues with Ozy's insurer. Notably, while there had been a stay on insurance payments to Watson, that stay expired on February 16, 2024, and there has been no substantive activity in the insurance litigation since that date. See Clear Blue Specialty Ins. Co. v. Ozy Media, Inc., No. 21-CV-8764 (EJD) (N.D. Cal.).

5

time) raising the issue to the Court and examining witnesses to help crystalize what those deficiencies are.

For Ms. Watson in particular, the deficiencies appear vast, further undermining the government's ability to prepare a cross-examination and further wasting time with needless litigation that could have been avoided or addressed weeks ago if the defendants had simply complied with their agreed-upon discovery deadlines.  The 25 documents described above are the extent of the defendants' Rule 26.2 production for Ms. Watson.  There are no text messages in the disclosures between Ms. Watson and her brother or any other member of the defense team or defense witness, nor are there any emails about substantive topics — even though Ms. Watson worked at Ozy for almost a year from 2022 to 2023 and likely sent thousands of emails in that period.  In addition, Ms. Watson appears multiple times in the documentary that was produced and then disseminated — both online and at in-person screenings — in support of Watson's defense.  The defense has not disclosed the complete, unedited portions of Ms. Watson's interview(s), which should also be produced pursuant to Rule 26.2.  Also not included are any agreements or documentation concerning Ms. Watson's investments in or loans to Ozy, the most recent of which the government believes occurred in 2022.  And the defense has also failed to produce the notes that Ms. Watson has been observed taking while she attended nearly every day of trial in this matter.

### B. Ms. Watson's Testimony Should Be Precluded Under Rules 401 and 403

Today, the defense proffered three potential topics for Ms. Watson's testimony: (1) the formation of Ozy; (2) her employment at Ozy; and (3) her role as an investor in Ozy.  Separate and apart from the repeated and flagrant disclosure violations described above, based on this proffer, Ms. Watson's testimony should be precluded as irrelevant, cumulative and misleading under Rules 401 and 403.

First, any testimony about the formation of Ozy would be irrelevant and cumulative.  Testimony about the founding of the company is marginally relevant at best, and Watson has already testified at length about that topic (as did Samir Rao) — and those facts are not in dispute.  Any additional testimony on such matters should be precluded.

Second, any testimony about Ms. Watson's employment at Ozy is irrelevant, as well as runs the risk of misleading the jury and confusing the issues, because Ms. Watson did not begin working at the company until after the charged conduct.  Ms. Watson should therefore be precluded from testifying about her employment at Ozy.

Third, Ms. Watson should not be permitted to testify about her role as an investor in and lender to Ozy, including what was material to her investment.  While the government's victim-investor witnesses were clearly well "within the parameters of the thinking of reasonable investors in the particular market at issue," Ms. Watson is an "indisputably idiosyncratic" investor based on her being Watson's sister.  United States v. Litvak, 889 F.3d 56, 65, 69 (2d Cir. 2018) (district court abused discretion by permitting testimony from "indisputably idiosyncratic" about his view of materiality).  Her testimony about materiality should therefore be precluded as well.

6

III.   Conclusion

For the reasons set forth herein, the government respectfully submits that the Court should preclude all further defense witnesses other than the defendant, including the testimony of Beverly Watson.

                                      Respectfully submitted,

                                      BREON PEACE
                                      United States Attorney

By:   /s/
                                      Jonathan Siegel
                                      Gillian Kassner
                                      Dylan A. Stern
                                      Assistant U.S. Attorneys
                                      (718) 254-6293/6224/6213

cc:   Clerk of the Court (EK) (by ECF)
      Counsel of Record (by ECF and email)