## RONALD SULLIVAN LAW, PLLC
Ronald S. Sullivan Jr.

July 2, 2024

By ECF

The Honorable Eric R. Komitee
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

        Re:    United States v. Carlos Watson and Ozy Media, Inc.
                  Criminal Docket No. 23-82 (EK)

Dear Judge Komitee:

     It is with great regret that the defendants submit this objection letter in the present matter on trial, United States v. Carlos Watson and OZY Media, Ind. 23-cr-82. We have not come to this request lightly. But the court's repeated actions both in the lead up to trial and during the trial make this both of immediate necessity to protect the 6th Amendment Rights of our clients and for larger policy reasons in that our system relies on fair administration by judges. What has happened in this trial is anything but fair. One need only sit in this courtroom one day to see and hear much of the behavior and bias complained of in this letter. From the court's pro-government bias to the racial dynamics in this courtroom (including the audience), a reasonable person's confidence in the administration of justice will be shaken.

     **I.**     **The Conduct of the Trial by the Court has Been Prejudicial to the Defendants.**

     The conduct of the trial by the court has led to certain impressions of the defendants' attorneys, witnesses, and evidence that are destructive of a fair trial. In Rivas v. Brattesani, where the trial judge made a series of comments, in apparent exasperation with defense counsel, the Court reasoned that while due process "requires a fair trial rather than a perfect trial," a court must "strive for that atmosphere of perfect impartiality which is so much to be desired in a judicial proceeding." Rivas v. Brattesani, 94 F.3d 802, 807 (2d Cir. 1996) (quoting Ricketts v. City of Hartford, 74 F.3d 1397, 1416 (2d Cir. 1996); Santa Maria v. Metro-North Commuter R.R., 81 F.3d 265, 273 (2d Cir. 1996)).

     The court's entire interaction with the defense team has created an atmosphere where the defense is not perceived as equal participants in the judicial process. The judiciary's role demands not only fairness but also the appearance of fairness. When the judge makes disparaging remarks about defense lawyers or witnesses, it sends a signal to the jury and the courtroom that the defense's arguments and evidence are less worthy of consideration. This can influence the jury's perception and potentially sway their decision-making process.

While a judge is entitled to ask questions during a trial to clarify both legal and factual issues to minimize confusion, those questions, "may not convey the court's view about the merits of a party's claim" (Berkovich v. Hicks, 922 F.2d 1018, 1025 (2d Cir. 1991), because the judge may not impose his own opinions on the jury. Rivas, 94 F.3d at 807 (quoting Care Travel Co., 944 F.2d at 991). The Second Circuit has observed that "while a trial judge may understandably become impatient with counsel's examination of a witness, either because of its ineptness, lack of clarity or organization, or for some other reason, the judge must exercise self-restraint in his interference lest "clarification" only create more confusion or the impression in the jurors' minds that the judge is hostile to one party's position." Anderson v. Great Lakes Dredge & Dock Co., 509 F.2d 1119, 1131 (2d Cir. 1974).

The judge's attitude towards the defense may also impact the demeanor and confidence of defense witnesses. Witnesses, particularly those called by the defense, must feel assured that they can testify without fear of bias or prejudice. Derogatory comments from the bench can intimidate witnesses and undermine their willingness to provide truthful and accurate testimony, thus impeding the search for truth that is central to any trial.

Moreover, the judge's role as a judicial officer requires upholding the highest standards of professionalism and respect. Comments that belittle or demean any party in the courtroom, including defense counsel and witnesses, fall short of these standards and erode public confidence in the judiciary's ability to administer justice fairly and impartially.

Even if the court were to make a curative instruction with regard to its interference, the damage cannot be undone. "No curative instruction, in our view, could undo the cumulative prejudicial effect of the court's various inappropriate comments in the presence of the jury." Rivas, 94 F.3d at 808 (quoting United States v. Filani, 74 F.3d 378, 386 (2d Cir. 1996) ("curative instructions to the jury, to the effect that they can decide what version to believe as sole judges of credibility, do not remove . . . an impression [that the judge believes one version of an event and not another] once it is created").

    A.  <u>The court has assisted the government and acted as a "fourth" prosecutor</u>.

At trial, it has become painfully clear that the court has not treated the parties equally. What was at first, an acknowledgement by the defendants that there may be a prosecutorial affiliation (since the judge served in the same U.S. Attorney's Office) has turned into the actual bias in favor of the prosecutors shown by this court. It is almost as if the court is grooming the prosecutors and coddling them at every turn on every issue. Clearly, the court has a true bias in favor of the prosecution due to personal likes and affection for the individual prosecutors trying the case.

For example, on May 31, 2024 (3rd day of trial) the court assisted the prosecutors by helping question Samir Rao to "clarify" for them that without advertisement revenue, The Carlos Watson Show made $0 (a theory and point of the prosecution). Tr. at 724, ln 14 – 23.

RONALD SULLIVAN LAW, PLLC
Ronald S. Sullivan Jr.

B. <u>The court "sustains" objections that are not made by the prosecutors</u>.

Beginning with the government's first witness, Janeen Poutre, the court sustained 3 or more of his own objections during the defense's cross examination of Ms. Poutre. Weighing in on the evidence, the court repeatedly exclaimed "sustained" without any objections being put forward by the government. It is absolutely imperative that the court allow the *lawyers* on both sides to fairly try the case. The court should not assist the prosecutors in trying the case because of their youth or inexperience. The roles in the courtroom are strict for a reason, especially in a criminal case. It does not take much for the judge, the leader of the courtroom, to affect the jury's attention, attitudes, and beliefs. The court must be much more reserved so as not to weigh in on the defendants' guilt or innocence.

A fair criminal trial is one in which the defendants have a full opportunity to challenge the government's evidence and confront the witnesses against them. That cannot happen when the court objects primarily to the questions put forth by the defense. The court has made more than 30 such objections on behalf of the prosecutors despite repeated respectful requests by defense counsel and a formal objection made by Attorney Ronald Sullivan that the court not aid prosecutors in such a biased and blatant way. This pattern has existed on cross examination of every government witness and the direct examination of 2 of the defense witnesses so far including:

1. Janeen Poutre, Tr. at 133, ln 23; 138, ln 21 – 22; 146, ln 14; 153, ln 22.

2. Samir Rao, Tr. at 985, ln 2; 1015, ln 14, ln 18; 1019, ln 14; 1029, ln 22; 1214, ln 24; 1215, ln 1; 1223, ln 6; 1232, ln 13; 1278, ln 15 – 16.

3. Allison Berardo, Tr. at 1522, ln 20; 1523, ln 16; 1525, ln 16; 1528, ln 17; 1529, ln 6, ln 8.

4. Tripti Thakur, Tr. at 1623, ln 13.

5. Alex Piper, Tr. at 1718, ln 8, ln 18; 1727, ln 22.

6. Hillel Moerman, Tr. at 1775, ln 24; 1776, ln 3; 1859, ln 3.

7. Suzee Han, Tr. at 2144, ln 12; 2315, ln 20.

8. Renata Erlikhman, Tr. at 2513, ln 8.

9. Dr. David Robinson, Tr. at 2732, ln 4.

C. <u>The court has repeatedly asked questions of witnesses to help meaningfully bolster and advance the prosecution's case -- doing so multiple times with multiple witnesses more than a dozen times so far</u>.

In addition to interrupting testimony with a slew of sua sponte and immediately sustained objections, the court continually interrupts the lawyers on both sides of the v in order to ask questions of the witnesses that completely serve to aid the government's theory of the case. The language, tone, and subject matters on which the court interrupts all signal to the jury what evidence

(202) 313-8313
rsullivan@ronaldsullivanlaw.com

1300 I Street NW, Suite 400E
Washington, DC 20005

they should pay attention to and how they should feel about that evidence. This does more than put a thumb on the scales, the court is standing on the scales in this case.

In <u>Anderson v. Great Lakes Dredge Dock Co.</u>, where the trial judge engaged in extensive questioning of witnesses, the Court reasoned that the judge's behavior "might be construed as protective rather than as merely investigative in nature." <u>Anderson v. Great Lakes Dredge Dock Co.</u>, 509 F.2d at 1132. The Court concluded that the cumulative impact of a judge's behavior is an essential factor in determining prejudice against a defendant. <u>Id</u>. The Court stressed "it is essential, at least where appellant's brief (as here) raises a substantial issue as to the trial judge's fairness in conducting the trial, to make a close scrutiny of each tile in the mosaic. <u>Id</u>. (quoting <u>United States v. Weiss</u>, 491 F.2d 460, 468 (2d Cir. 1974) (footnote omitted)"). Here, there are more than 100 instances where the court has interrupted the examination of a witness to ask his own questions. However well-intended, the cumulative effect of his interjections has been prejudicial to the defense.

The court has asked its own questions of the following witnesses in assistance to the prosecution:

1. Janeen Poutre, Tr. at 82, ln 15; 110, ln 8; 112, ln 22; 119, ln 14; 123, ln 1 – 24; 129, ln 14; 146, ln 2, ln 6; 147, ln 16.

2. Samir Rao, Tr. at 321, ln 2 – 16; 399, ln 5 – 17; 405, ln 16; 476, ln 6 – 22; 543, ln 7; 549, ln 112; 559, ln 9; 579, ln 19; 593, ln 10 - 18; 606, ln 8; 608, ln 21; 639, ln 22; 668; ln 15 – 23; 734, ln 14 – 22; 980, ln 23; 992, ln 25.

3. Abbas Maniar, Tr. at 1416, ln 16; 1422, ln 8 – 20; 1461, ln 8 – 12; 1473, ln 11.

4. Allison Berardo, Tr. at 1516, ln 17.

5. Tripti Thakur, Tr. at 1609, ln 1; 1610, ln 10; 1615, ln 13; 1711, ln 19 – 25; 1712, ln 13 – 23; 1724, ln 23.

6. Suzee Han, Tr. at 1870, ln 13; 1924, ln 20; 2144, ln 9; 2160, ln 17.

7. Maurice Werdegar, Tr. at 2250, ln 19 – 24.

8. Joseph O'Hara, Tr. at 2408, ln 2; 2411, ln 14; 2412, ln 7.

9. Renata Erlikhman, Tr. at 2513, ln 11.

10. Chetan Bansal, Tr. at 2585, ln 19; 2589, ln 15; 2609, ln 14 – 19.

11. Dr. David Robinson, Tr. at 2700, ln 17, ln 20, ln 23; 2713, ln 10, ln 23; 2738, ln 5; 2750, ln 19; 2754, ln 10; 2755, ln 11; 2763, ln 16; 2770, ln 17; 2772, ln 2; 2775, ln 9, ln 16; 2776, ln 14.

12. Claire Lightfoot, Tr. at 2801, ln 5; 2802, ln 8, ln 17.

RONALD SULLIVAN LAW, PLLC
Ronald S. Sullivan Jr.

Persistent questioning of witnesses may be perceived as belief in the defendant's guilt or innocence. In United States v. Guglielmini, where the judge frequently participated in the trial, by questions and comments, the Court concluded that his behavior "gave the jury the impression that he credited the prosecution and disbelieved the defense." United States v. Guglielmini, 384 F.2d 602, 605 (2d Cir. 1967) ("While the trial judge may, and indeed should, take an active part in the trial where necessary to clarify evidence and assist the jury, the persistent questioning the trial judge conducted in this case, together with his comments to defense counsel, conveyed to the jury far too strong an impression of his belief in the defendants' guilt"). This is exactly the impression the court in the trial at bar is giving the sitting jury.

D. The court rules are transparently biased in favor of the prosecution in its evidentiary rulings.

While quickly addressing and/or ruling in favor of the prosecution almost any time they raise an issue (even specious and irrelevant ones), the court has repeatedly and seemingly intentionally dragged its feet on ruling on critical defense motions throughout the last year including multiple Motions to Dismiss including with regard to racial bias, violation of attorney client privilege and improper venue. Even when the court has finally ruled on defense motions, it has done so in the most modest and lenient way.

The court has repeatedly flouted settled law to rule in favor of the prosecution in its evidentiary rulings, allowing the government to wrongfully prevail on matters of hearsay, impeachment, document admission, and expert witnesses threatening yet more bias.

On May 31, 2024 (the 3rd day of trial), the prosecution offered a resignation email of Tripti Thakur, in which she accuses Samir Rao of committing fraud and recruiting her to commit fraud. Because this is a communication from a nonlawyer on the ultimate issue of the case, the defense requested that it be excluded or redacted. The court denied both motions and refused to even give a limiting instruction *before* the email was read and shown to the jury in full. After allowing the jury to fully take in this highly prejudicial communication, the court gave a shallow (and likely pointless by then) limiting instruction. Tr. at 587, ln 8 – 25; 588, ln 1 – 3. The ruling and the timing of the limiting instruction essentially allowed the jury to make inappropriate inferences and conclusions that the limiting instruction is designed to prevent.

On June 7, 2024 (5th day of trial) with the government's star witness on the stand, the court refused to allow proper impeachment by prior inconsistent statements of the cooperator. The court conducted an extensive sidebar conference on how impeachment works, taking the word of the prosecutors over the analysis of a Professor of Evidence. Tr. 1005 – 1011. The court told Attorney Sullivan that he *cannot* read from the documents. This ruling governed the entire trial, and all witnesses the defense attempted to impeach with their own FBI interviews or other documents they authored. This scripting of the testimony in this way effectively prevented the defense from impeaching *any* witness unless the witness himself *agreed* that he had lied. It has operated as a

(202) 313-8313
rsullivan@ronaldsullivanlaw.com

1300 I Street NW, Suite 400E
Washington, DC 20005

RONALD SULLIVAN LAW, PLLC
Ronald S. Sullivan Jr.

sweeping violation of the defendants' rights to confront their accusers per the 5th Amendment of the United States Constitution.

> E. <u>The court continuously disparages defense witnesses in front of the jury and outside the presence of the jury but in open court</u>.

<u>Webb v. Texas</u> instructs against badgering or embarrassing witnesses at trial. In <u>Webb</u>, a defense witness, prior to testifying, was admonished at length by the trial judge and threatened with jail time if the witness lied. <u>Webb v. Texas</u>, 409 U.S. 95 (1972). The witness, who had previously elected to testify on the defendant's behalf, refused to do so after the judge's comments. <u>Id</u>. at 97. The Court ruled that "...the judge's threatening remarks, directed only at the single witness for the defense, effectively drove that witness off the stand, and thus deprived the petitioner of due process of law under the Fourteenth Amendment." <u>Id</u>. at 98 ("Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law").

<u>Minor v. Harris</u> is also instructive on this issue. In <u>Minor</u>, the Court opined that close questioning of witnesses is "particularly improper where a defendant's guilt or innocence rests almost exclusively on the jury's evaluation of the witnesses' demeanor and credibility." <u>Minor v. Harris</u>, 556 F. Supp. 1371, 1384 (S.D.N.Y. 1983). "[B]y coming quickly to the aid of prosecution witnesses during cross-examination, and by indicating that he credited their testimony and that defense counsel was trying to prevent the jury from hearing the truth, clearly risked leading the jury to believe that the judge favored the government's witness[es] and [their] version of the facts. His close questioning of petitioner clearly indicated disbelief in the defendant's testimony." <u>Id</u>. at 1384 (quoting <u>United States v. Nazzaro</u>, 472 F.2d at 308-10). This case on trial is one in which the credibility of the witnesses is of supreme importance and will be weighed heavily by the jurors.

On June 27, 2024 (12th day of trial) during the cross examination of defense expert Duke Professor David Robinson, the judge goaded the professor about his answers and gave the impression that he was not answering the questions truthfully by his tone and demeanor in questioning this witness on top of the prosecutor's questions on the very same topic. Professor Robinson was effectively driven off the stand by the court in this case.

> F. <u>The court has drenched this trial in insulting comments to the defense lawyers in front of the jury, their students, the public, and the press</u>.

Since day one of the trial, the court has been particularly disparaging the defense team. Its comments have been purposely embarrassing to defense counsel and clearly meant to make anyone in the room think that the defense is incompetent.

On May 29, 2024 (the 1st day of trial), the court said to the defense team, ""I don't know where you've tried cases before…this is federal district court!"

(202) 313-8313
rsullivan@ronaldsullivanlaw.com

1300 I Street NW, Suite 400E
Washington, DC 20005

# RONALD SULLIVAN LAW, PLLC
### Ronald S. Sullivan Jr.

On May 30, 2024 (the 2nd day of trial), the court continues what will be a consistent and almost daily verbal assault on the defense team. Regarding contracts that the government were in possession of, the court said to the defense team, "I am not getting a coherent explanation of what happened, what the services were […] Mr. Sullivan, this is a document case. I need you to know the documents better so that we don't have to stop and have you look for things every time we ask a question about what is where […] "I need you to stay on subject".  After a period of interrupting defense counsel and both parties growing frustrated, the court directed to Attorney Ronald Sullivan: "First of all, Mr. Sullivan, I want you to lower your voice. […] I want you to lower your voice. Understood? […] Is that understood?"

Also, on May 30, 2024 (the 2nd day of trial), the court announced that it had "tried to guide the defense as best [it] could to comply, even in piecemeal, even in half-baked fashion with their obligations. But we are where we are."

On June 7, 2024 (the 5th day of trial), the court interrupted cross examination of Samir Rao to ask defense counsel, "Did you hear his answer?" indicating to the jury that Attorney Sullivan was not listening to the testimony.  The court then stated, "asked and answered sustained because the previous question had 99% overlap" without objection from the prosecution. This meticulous micromanagement of the evidence the defense is allowed to elicit from witnesses is unwarranted, one-sided, and prejudicial to the defendants.

Also, on June 7, 2024 (the 5th day of trial) the court continued to signal to the jury that the defense is unprepared because they did not have multiple physical copies of exhibits that have been presented electronically for the entire trial.

Further on June 7, 2024 (the 5th day of trial), in front of the jury, the court stated "How much longer of this? I guess I'm just struggling to understand the relevance of this" then sat in silence as the jury and witness digested exactly what the court meant to imply – this is evidence is not important.  This is very prejudicial to the defendants as the jury prepares to deliberate on this matter.

On June 26, 2024, the court addressed the defense counsel's mentorship to their law clerks, two of whom are still in law school. The court stated "Point two, which I have made before during this trial, and I will make again just because we have law students and young lawyers with us and some interns coming in and out, is, and I speak personally here, I was fortunate, as a young lawyer, to have mentors who impressed on me in no uncertain terms as a very young lawyer the absolutely critical nature of every word in every representation that we made to the Court." Tr. at 2628, ln 19 – 25. The court added, "And that principle has at times during the course of this litigation been observed again in a breach. I hope -- I wish for every law student and young lawyer that that message gets to them somehow, and I'm not entirely convinced that watching this trial has been the best way for young lawyers to absorb that lesson. I will leave it at that." Tr. at 2629, ln 1 – 9.

RONALD SULLIVAN LAW, PLLC
Ronald S. Sullivan Jr.

Also on June 27, 2024, at sidebar conference about the court blocking Attorney Sullivan's questioning of expert witness Professor David Robinson, the court said to Attorney Sullivan in a hostile tone that the jury was likely to hear, "Are you crazy!?"

These comments continue to jeopardize Mr. Watson's enjoyment of a fair trial. In <u>Guglielmini</u>, the Court observed "numerous instances of repartee between the judge and defense counsel," most of which were "wholly unnecessary" and only served to "demean counsel and case an unfavorable light on the defense." <u>Guglielmini</u>, 384 F.2d at 604. The Court found that "the cumulative effect of these errors was such as to render it highly doubtful that the appellants enjoyed the fair trial to which they were entitled." <u>Id</u>.

In <u>United States v. Ah Kee Eng</u>, the judge continuously "exhibited an attitude of impatience, and an annoyance at proper objections and interruptions" as well as "gratuitous comments disparaging the defense counsel and the defense." <u>United States v. Ah Kee Eng</u>, 241 F.2d 157 (2d Cir. 1957). The Court concluded that "repeated indications of impatience and displeasure of such nature to indicate that the judge to indicate that the judge thinks little of counsel's intelligence and what he is doing are most damaging to a fair presentation of the defense." <u>Id</u>. at 161.

The court has created an incredibly hostile environment and repeatedly aggressively insulted defense counsel including implying criminal and/or sanctionable behavior on the part of distinguished Harvard Law Professor Ronald Sullivan, veteran New York City Assistant District Attorney Janine Gilbert, and recently retired Massachusetts Superior Court Justice Shannon Frison.

While these comments are often made while the jury is dismissed, the court should be mindful that media reporters frequently attend trial and are present during these disputes. Consequently, several statements made by the court have been reported in various articles. While the court may instruct jurors not to seek case-related information, it cannot prevent inadvertent exposure to such media coverage – nor can it predict whether each juror will follow its instruction. Therefore, any statements made in open court should be presumed as having been made in front of the jury.

> G. <u>The court simply will not allow any examination or discussion of race in this trial, even where it is plainly relevant</u>.

Despite the obvious and often troubling role that race plays in our society and most of our cases, the court has repeatedly and improperly denied the very obvious role of race in this case going so far as to block the impeachment of a witness (Allison Berardo) whose own racist statements had been put in evidence by the prosecution ("No white man has a voice that sounds like that"). The court flat out refused to allow the witnessed to be cross examined about her statement, and even asked Mr. Sullivan what is racist about the statement she made.

Other examples have included an improper ruling to completely preventing an expert witness on the very subject of how the race of founders affects fundraising for start-up companies (Duke University Professor David Robinson) to comment on the role of race in this case and the

(202) 313-8313
rsullivan@ronaldsullivanlaw.com

1300 I Street NW, Suite 400E
Washington, DC 20005


**RONALD SULLIVAN LAW, PLLC**
Ronald S. Sullivan Jr.

casual dismissal of the Motion to Dismiss based on the prosecutors' demonstrated record of prosecuting black and brown people 90% of the time in a predominantly white district (EDNY).

H. <u>The court has repeatedly accused defense counsel and the defense team of illegal and/or unethical conduct.</u>

The court has allowed the prosecution wide lenience in getting things wrong (case law, facts, timing) and not being fully prepared to finish their case on June 18, 2024. Indeed, none of the government's missteps have been assumed to be for unethical or dilatory tactics, nor has a single prosecutor been accused of any misconduct. It has been obvious to anyone watching this case that the court has not extended the same goodwill to the defense -- indeed the opposite. The court has offered daily hostility towards the defense both in front of the jury and the public on similar matters. There are clearly two sets of rules being applied. Just two instances are discussed below.

On June 13, 2024 (the 7th day of trial), after the court shut down impeachment of witness Allison Berardo on her racist text messages, the court went to a recess. Upon resuming, prosecutor Jonathan Siegel reported to court that Mr. Watson had "shouted" in the hallway "Good thing this has nothing to do with race!" implying that he was within earshot of the jury. Without even *asking* Attorney Sullivan or any member of the defense team about this alleged incident (which absolutely did not occur the way Mr. Siegel alleged), the court automatically assumed government's account was true and threatened to revoke bail or otherwise change Mr. Watson's conditions of release because of it.

On June 14, 2024 (8th day of trial) the court inexplicably accused Attorney Gilbert of submitting a falsely modified version of a document into evidence. The court accused the defense attorney of purposely stapling an additional page to the top of DX629. When counsel expressed her indignation at the unwarranted accusation, the court responded, "Your outrage is noted." The court also announced in open court that compliance with production rules have been so spotty from defense and that it was a "sizeable coincidence" that this one page did not appear in the government's version of the same document. In reality, it was the *government's* use of and admission into evidence an early and incomplete version of the same document that caused the confusion the jury may now have about the document.

Therefore, the defendants respectfully urge the court to reflect on the impact of its comments on the proceedings of this trial. Specifically, the defense requests that the court not only refrain from making insulting comments towards counsel, but also from interrupting our remaining witnesses. As ongoing evidentiary disputes make it possible that many defense exhibits will be precluded and several defense witnesses will not be permitted to testify, the credibility of our remaining witnesses is crucial. Again, the Court in <u>Minor v. Harris</u> stresses that close questioning of witnesses is "particularly improper where a defendant's guilt or innocence rests almost exclusively on the jury's evaluation of the witnesses' demeanor and credibility." <u>Minor v. Harris</u>, 556 F. Supp. 1371, 1384 (S.D.N.Y. 1983). Having interrupted each of the defense witnesses so far, the court risks prejudicing the jury and undermining the ability of the defense to present a complete and effective case. Fairness dictates that all parties be afforded equal opportunity to present their arguments and

# RONALD SULLIVAN LAW, PLLC
Ronald S. Sullivan Jr.

evidence without undue interference. Therefore, we urge the court to exercise restraint and impartiality in its conduct throughout the remainder of these proceedings.

Upholding the principles of fairness and impartiality requires vigilance and adherence to the highest standards of judicial conduct. By refraining from derogatory remarks and maintaining a demeanor of neutrality, as well as allowing for a robust and thorough defense by way of witness testimony and exhibits - the court can ensure that justice is not only done but is seen to be done in this courtroom.

Respectfully submitted,

| **RONALD SULLIVAN LAW PLLC** | **FRISON LAW FIRM P.C.** |
|---|---|
| _____/s/_____ | _____/s/_____ |
| Ronald S. Sullivan Jr., Esq. | Shannon Frison, Esq. USM |
| Admitted *Pro Hac Vice* | 75 State Street, Suite 100 |
| Janine Gilbert, Esq. | Boston, MA 02109 |
| 1300 I Street NW | shannon@frisonlawfirm.com |
| Suite 400 E | (617) 706-0724 |
| Washington D.C. 20005 | *Counsel for OZY Media, Inc* |
| Telephone: 202-313-8131 | |
| Email: rsullivan@ronaldsullivanlaw.com | |
| Email: janine.gilbert.esq@gmail.com | |
| *Counsel for Carlos Watson* | |