RONALD SULLIVAN LAW, PLLC

Ronald S. Sullivan Jr.

July 2, 2024

<u>By ECF</u>

The Honorable Eric R. Komitee
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

>    Re:    United States v. Carlos Watson and Ozy Media, Inc.
>           <u>Criminal Docket No. 23-82 (EK)</u>

Dear Judge Komitee:

Mr. Watson and OZY Media, Inc. submit this letter in response to the government's renewed motion to preclude defendants from offering exhibits or witness testimony at trial for failure to comply with the Court's Individual Rules and Practices, Order dated April 12, 2024, and Federal Rule of Criminal Procedure §§16(b) and 26.2.  The government contends that such violations have been done willfully and for an unfair tactical advantage at trial. Mr. Watson and OZY Media, Inc. deny these allegations in their entirety.

While the Court possesses the authority to determine whether such delayed production was intentional, it has thus far only considered the government's representations regarding the defense's delay, without affording the defense an opportunity to explain the circumstances. Given the Court's broad discretion in how to remedy the matter, the defense respectfully submits this explanation to provide crucial context surrounding the alleged non-compliance with the Court's orders.

**<u>Defense Witnesses Should Be Permitted to Testify Despite Late Disclosure of Witness Statements</u>**

Given the government's multiple motions to preclude all defense exhibits and their claims of unfair surprise and trial by ambush, it is crucial for the Court to have a comprehensive understanding of Mr. Watson and OZY Media's legal representation history and the discovery process between the parties. This context is essential for a fair assessment of the situation and will shed light on the challenges that have affected the defense's compliance with deadlines.

(202) 313-8313
rsullivan@ronaldsullivanlaw.co
m

1300 I Street NW, Suite 400E
Washington, DC 20005

RONALD SULLIVAN LAW, PLLC

Ronald S. Sullivan Jr.

## I. Defense Counsels' Conduct Was Neither Willful Misconduct nor Done for Tactical Advantage

### a. History of Legal Representation

As the Court is aware, the case's progression has been marked by numerous counsel substitutions for both parties, spanning from the investigative phase through trial. Mr. Watson's legal representation has undergone several transitions:

1. Late September - October 2021: King & Spaulding
2. October 2021: Zuckerman Spaeder (brief representation)
3. October 2021 - October 2022: Dechert LLP
4. October 2022 - February 2023: Covington & Burlington and Steptoe & Johnson (for subpoena response)
5. March - May 2023: Sher Tremonte
6. May 2023 - Present: Harvard Law Professor Ronald S. Sullivan, Jr.

The Court permitted Professor Sullivan's substitution as counsel on the condition that the trial commence on May 29, 2024, without delay. On May 10, 2024, merely ten days before jury selection began, Janine Gilbert joined Mr. Sullivan to assist with the trial.

OZY Media, Inc.'s representation has also seen multiple changes:

1. October 2021 - October 2022: Ford O'Brien
2. October 2022 - February 2023: Steptoe & Johnson (representing both OZY and Mr. Watson)
3. March 2023 - February 22, 2024: Kenneth Montgomery (solo practitioner)
4. March 13, 2024 - Present: Retired Judge Shannon Frison

Notably, when retired Judge Frison replaced Mr. Montgomery, she was informed that her substitution was contingent on the trial commencing on May 29, 2024, without delay, as per the Court's minute entry for proceedings held on March 13, 2024. See ECF Min. Entry for Proceedings held before Judge Eric R. Komitee: Status Conf. held on March 13, 2024.

This complex history of legal representation for both defendants underscores the challenges faced in maintaining continuity and may provide context for any perceived issues with compliance or timeliness.

RONALD SULLIVAN LAW, PLLC

Ronald S. Sullivan Jr.

As stated, beginning in October 2021, Carlos Watson was represented for approximately the next year by Dechert and OZY Media was represented by Ford O'Brien. In the fall 2022, Dechert provided thousands of non-privileged responsive documents to the Government via access to FTP sites containing Bates-stamped documents.  After seven productions, on October 7, 2022, Dechert made one last production which was anticipated to be the *final* production in response to the subpoena, while reserving the right to supplement or amend the production should additional documents or information be identified.  See Exh. B, Dechert Cover Letters dated August 5, 2022, August 19, 2022, September 2, 2022, September 17, 2022, September 29, 2022, October 7, 2022, October 17, 17, 2022.

In the fall of 2022, Ford O'Brien resigned and sued Mr. Watson, pursuing a portion of Mr. Watson's personal D+O insurance proceeds.  That unexpected event dramatically halted and slowed Mr. Watson's defense for approximately six months from the fall of 2023 to roughly April 2024. Over the last six months, the Ford team has repeatedly refused to cooperate with current Watson and OZY counsel including sharing previous productions.  Mr. Sullivan has reached out to the Ford team multiple times including by phone, text and email.

As current counsel has repeatedly attempted to convey to the Court, though regrettably without being fully heard or given due credence, it has been difficult for current counsel to assess the status and timeline of document production to the government. This difficulty is due to the number of substitutions of counsel and the lack of communication and cooperation of some prior counsel with subsequent counsel. The undersigned recently uncovered a letter dated May 23, 2023, written by Noame Biale of Sher Tremonte and Kenneth J. Montgomery of Kenneth J. Montgomery, PLLC, attached hereto as Exhibit B and incorporated by reference herein, which provides insight on the document production completed by Ford O'Brien and Dechert LLP, and Sher Tremonte and OZY Media counsel's ongoing efforts to comply with the Government subpoenas.  The letter further addresses the Government's conduct, which has been marked by dismissive and disparaging remarks, a notable absence of cooperation, and what appears to be a bad faith filing of their motion to compel compliance with the subpoena without providing any substantive guidance regarding what material was missing despite repeated requests just days after providing substituted counsel with prior counsel's production of 50,000 documents.[1] See Exh. B at p. 2-4. Not surprisingly, similar behavior has continued throughout the pendency of this case.

---

[1] See Exh. B at p. 2 ("When asked what materials were missing from Mr. Watson's production [by substituted counsel], the government replied, "the incriminating ones."); See Exh. B at p. 4 ("The next day, May 5, 2023, the government filed its motion to compel. It did so a mere four days after producing prior counsel's productions (which, again, total nearly

RONALD SULLIVAN LAW, PLLC

Ronald S. Sullivan Jr.

Finally, due to lack of resources and staffing, the undersigned counsel have had to rely on an outside e-discovery vendor to maintain all documents, bates stamp, mark all exhibits, and produce them. That vendor has on various occasions had delayed processing, outages, and holidays which have prevented the undersigned from complying with all of the Court's orders with respect to the production of documents. Furthermore, due to this third-party vendor not being paid on time due to the lack of financial resources previously explained, during extended periods of time the defense was unable to run searches to properly and timely review the documents in their power.

### b. The Discovery Process

While the undersigned counsel, due to the foregoing reasons, cannot provide a fully comprehensive account of the discovery furnished to the Government, we can more readily outline the extensive materials provided by the Government. It is crucial to bring to the Court's attention the sheer magnitude of the Government's production: a staggering **2,495,721** documents. This enormous volume becomes particularly significant when considering the extremely condensed timeframe between the Government's substantial document production on April 11, 2024, and the commencement of jury selection on May 20, 2024, followed swiftly by the trial's start on May 29, 2024. We respectfully submit that this timeline presents extraordinary challenges for the defense in thoroughly reviewing and effectively utilizing these materials in preparation for trial. See Exh. C (Chart of Government Production Volumes). Given the sheer volume of documents in this case alone, the Court should have designated this case a complex case and granted counsel additional time to prepare in order to ensure a fair trial. See U.S. v. Astra Motor Cars, 352 F.Supp.2d 367, 369 (E.D.N.Y. 2005)(citing U.S. v. Beech-Nut Nutrition Corp., 871 F.2d 1181[, 1197] (2d Cir. 1989)).

To further elucidate the Government's document production schedule, the Court should be aware that between April 28, 2023, and June 20, 2023, the Government produced **982,004+** documents.[2]  Between October 25, 2023 (seven months before trial was scheduled to begin) and April 13, 2024, the Government

---

50,000 documents), without ever having provided any indication of what, beyond one category of emails, it believed was missing from the productions, and demanding that Mr. Watson respond, despite creating a self-incriminatory trap for him by alleging that gaps in his previous productions indicated an intent to obstruct justice.").

[2] Prior to April 28, 2023, there were **29** documents produced on two different dates.  On April 28, 2023, the Government produced **76,632** documents.  On May 5, 2023, the Government produced 119,077 documents.  On June 14, 2023, the Government produced documents, but the e-discovery vendor was unable to extract them, so the exact number is unknown, hence the **+** sign.  On June 30, 2023, the Government produced **786,295** documents.  Between June 30, 2023, and October 35.  For specific numbers of documents produced, see Exhibit B.

(202) 313-8313
rsullivan@ronaldsullivanlaw.co
m

1300 I Street NW, Suite 400E
Washington, DC 20005

RONALD SULLIVAN LAW, PLLC

Ronald S. Sullivan Jr.

produced **1,510,848** documents on defense counsel, **411,371** of which were produced in three productions – one on April 11th and two on April 13th, *just five weeks* prior to the scheduled trial date and *one month* prior to the May 10, 2023, deadline for providing pre-marked trial exhibits to opposing counsel.[3]  Significantly, *also* on April 11, 2024, the Government filed a previously agreed upon letter indicating that the parties had agreed upon the mutual exchange of "now-existing material pursuant to Federal Rule of Criminal Procedure 26.2 on April 12, 2024," and on a *rolling basis* thereafter, which was later "so ordered" by this Court.  At the time that the undersigned agreed to have that timeline so ordered, we were unaware of who our witnesses would be for trial, and the volume of documents we would receive that *same day* which we would be required to go through in order to provide 26.2 material for our witnesses and pre-marked exhibits for trial.  Furthermore, given the volume of documents provided by the Government in the preceding seven months and *on that day*, the undersigned did not know what, if any, Fed. R. Crim. P. R. 26.2 documents we possessed pertaining to any *potential* witnesses that *may* be called to testify at trial.

The money constraints and such voluminous productions by the government so close to the trial date made it virtually impossible for Mr. Watson and OZY Media, Inc. to be able to meaningfully review and reflect upon the discovery materials provided to be able to determine which documents both within and outside of said materials we would want to introduce in our case in chief.  The delay in providing defense exhibits and 26.2 material was purely the result of this lack of resources and the sheer impossibility of reviewing nearly 2.5 million documents in the span of a year, 1.5 million of which were provided in the last seven months.

### c.  Defense Counsels' Conduct Was Not Willful Misconduct Nor Was It Done for Tactical Advantage

Mr. Watson and OZY Media, Inc., made every effort to comply with the Court's discovery orders under the circumstances.  On May 16, 2023, just six days after the May 10 deadline, and approximately one month after the receipt **411,371** documents from the prosecution, the defense produced two rounds of exhibits lists to the government (first one without bates stamps and the second version with bates stamps) that we reasonably believed may be used at trial on cross-examination or in our case in chief.  The Government complained that our initial list was untimely because it was six days late and overbroad because we provided 6,000 documents in our list.  Your honor ordered us to provide a culled production and list to the Government.  Our second production and list included approximately 3,000

---

[3] On April 11, 2024, the Government produced **410,067** documents on defense counsel.  On April 13, 2024, the Government produced **1290** documents in one production and **14** documents in another production.

RONALD SULLIVAN LAW, PLLC

Ronald S. Sullivan Jr.

documents.  The Government again complained, even though the vast majority of both productions included documents that had been in the Government's possession, either because they had been produced by the Government or previously produced to the Government by prior defense counsel.[4]  Unfortunately, due to the history of this case related to the multiple substitution of counsel and the documents produced by prior counsel, it is difficult for us to determine which documents were previously provided to the Government unless they produced the documents back with a Government bates stamp number on them.[5]  Again, the undersigned counsel made a good faith effort to provide relevant exhibits that we reasonably believed were relevant and we would use at trial, within the time constraints given.

Still unsatisfied with the defense production and with the assumption that defense counsel was attempting to ignore the Court's order to provide a culled list of exhibits, on May 24, 2024, the Court ordered Mr. Watson and OZY Media, Inc. to provide 250 pre-marked documents and an exhibit list by 5:00 pm, Sunday, May 26, 2024.  The defense acknowledges that the production was four hours and thirteen minutes late due to monthly maintenance, which we were initially told was an outage, at our e-discovery vendor.  The undersigned made a good faith effort to comply with the Court's order to produce the documents by 5:00 pm, however, we are constrained by our resources.  The undersigned counsel sent the materials to the e-discovery vendor so they would bates stamp the documents, mark the exhibits, and provide and FTP transfer link that could be sent to the Government.  Unfortunately, the e-discovery vendor had monthly maintenance causing our production to delayed by four hours and fifteen minutes.  The Court denied our request for leave to file our exhibits four hours and 15 minutes late.

Finally, Mr. Watson and OZY Media, Inc. made every effort to comply with the Court's standing rules (Rule V.E.2.) requiring all parties to provide a binder with pre-marked exhibits, an exhibit list, and a witness list on the first day of trial.[6]  The undersigned were surprised to learn that the Government was not required to provide a witness list, nor binders with pre-marked exhibits for the Court or Defense counsel, pursuant to the Court's rules; rather, the undersigned were instead mocked

---

[4] This was demonstrated in Court with respect to nine contracts and task orders the Government claimed that they did not possess.  The Court asked about them and accused the defense of providing documents that they Government had never seen, so the undersigned counsel provided Bates stamp numbers for each of the nine contracts task orders demonstrating that they had all been possessed by the Government.  Subsequently, the Court ordered the defense to provide an exhibit list with the previous bates stamp numbers and dates of production listed in order to determine whether the Government had the document in it's possession.

[5] It is our contention that nearly, if not all the defense exhibits are documents that the Government has in their possession.

[6] Judge Eric R. Komitee, Individual Rules And Practices, at 13 ("No later than the first day of trial, all parties are to provide the Court with tabbed binders containing copies of all exhibits.  The binder should also include an exhibit list and a witness list….").

RONALD SULLIVAN LAW, PLLC

Ronald S. Sullivan Jr.

and told that we should have been able to figure out their witness list from the 3500 material Index the government provided which included some 60 plus names, despite the fact that the government called at least one witness for which there was no 3500 material provided and did not call more than three-quarters of the witnesses for which they provided that material.

For each ordered production, the undersigned had to find materials in the pool of 2.5 million documents and identify them for the e-discovery vendor, who then processed them. Their process roughly includes searching for the documents, putting them into different spaces within the system, imaging them, bates stamping them, and producing them. Due to the volume of documents, this process can take anywhere from several hours to one day to several days, depending on how large the request is. The undersigned are unable to predict the volume of documents, how difficult the search will be, or how long it will take for the vendor to process the request, not to mention any unforeseen issues such as outages, and are at the whim of the e-discovery vendor with respect to timing of production. Under all of these circumstances, the undersigned counsel made a good faith effort to comply with all of the Court's discovery orders in as timely a fashion as possible. The delay in providing exhibits and 26.2 material was not the result of willful misconduct; rather, it was the result of multiple substitutions of counsel, a voluminous document-based case consisting of 2.5 million documents, a short timetable for discovery and trial, sparce resources of the trial team, and a slow e-discovery process vendor.

**II.** **<u>Defendant Has a Sixth Amendment Right to Present a Defense Despite Delayed Disclosure of Defense Exhibits and Fed. R. Crim. P. R. 26.2 Material</u>**

    **a.** **<u>Defendant Has a Sixth Amendment Right to Present a Defense</u>**

        **i.** **<u>Legal Standard</u>**

The Government has requested that the Court preclude Mr. Watson and OZY Media, Inc., from presenting any witnesses or evidence aside from the testimony of Mr. Watson. It is well-settled that in our system of justice all individuals accused of a crime have the right to present a defense. In <u>Washington v. Texas</u>, 388 U.S. 14, 19 (1967), the Court held that Sixth Amendment of the Constitution guarantees every defendant the right under any circumstances to put witnesses on the stand as well as to compel their attendance in court. The <u>Washington</u> Court further stated in relevant part that:

RONALD SULLIVAN LAW, PLLC

Ronald S. Sullivan Jr.

> "The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law."

Id. at 19. The Court clearly upheld the rights guaranteed a defendant under the Sixth Amendment to have compulsory process for obtaining and compelling witnesses in their favor and presenting evidence in their defense. Id. The Court reasoned that the "truth is more likely to be arrived at by hearing the testimony of all persons of competent understanding who may seem to have knowledge of the facts involved in a case, leaving the credit and weight of such testimony to be determined by the jury or by the court." Id. at 22. In fact, "few rights are more fundamental than that of an accused to present witnesses in his own defense." See Taylor v. Illinois

"The interests of society and the accused in obtaining a fair and accurate resolution of the question of guilt or innocence demand that adequate safeguards assure the thorough preparation and presentation of each side of the case." U.S. v. Nobles, 422 U.S. 225, 238 (1975). This does not mean that defense evidence goes unchecked. Furthermore, "[t]he Sixth Amendment does not confer the right to present testimony free from the legitimate demands of the adversarial system; one cannot invoke the Sixth Amendment as a justification for presenting what might have been a half-truth." Id. at 241. Therefore, the Nobles Court recognized that the Sixth Amendment right to present a defense can be abridged in certain circumstances, such as preventing perjured testimony and ensuring the integrity of the adversary process, including identifying witnesses in advance of trial, and complying with discovery disclosure. Id.

There is no doubt that "the Sixth Amendment does not confer the right to present testimony free from legitimate demands of the adversarial system." Michigan v. Lucas 500 U.S. 145, 152 (1991). However, in most cases alternative sanctions to preclusion are adequate and appropriate absent a finding of willful misconduct designed to obtain a tactical litigation advantage. Id. Absent such a finding, less drastic sanctions such as a brief continuance for further investigation are

RONALD SULLIVAN LAW, PLLC

Ronald S. Sullivan Jr.

always more favorable than preclusion. Taylor v. Illinois 484 U.S. 400, 413 (1988); Michigan v, Lucas, 500 U.S. at 152. In fact, alternative sanctions are adequate and appropriate in *most* cases, except in certain circumstances where there is a risk that fabricated testimony is to be believed which are not present here. Taylor v. Illinois, 484 U.S. at 413 (finding *willful* misconduct where attorney intentionally violated discovery rule by making misrepresentations to the court and belatedly adding a witness who gave perjured testimony to gain a tactical advantage)(emphasis added); Michigan v. Lucas 500 U.S. at 152 (quoting Lucas, and remanding to the lower court for a determination about whether preclusion was appropriate in that case); see also Wade v. Kelly, 391 F.3d 135 (2d Cir. 2004); Noble v. Kelly, 246 F.3d 93, 100 (2d Cir. 2001). Here, it is clear, that any delay in complying with the Rule 16 discovery deadlines and the 26.2 disclosure deadlines has not been willful on the part of Mr. Watson, OZY Media, Inc., nor any members of the legal team.

## ii. The Defense Witnesses and Evidence Should Not be Precluded

The Government has accused the defense of willful misconduct. Dkt. 214 at 1, 3, 5. That is not the case. The defense has over two million documents that it has collected for this case. As this Court is aware, Mr. Watson's insurance was delayed. As a result, the defense has been working with a small team. Any omissions in productions have been the result of this, not any willful conduct or desire to gain any tactical advantage. See United States v. Morgan, 493 F. Supp. 3d 171, 211 (W.D.N.Y. 2020) ("However, electronic discovery is challenging even under the best of circumstances. In other words, the facts and circumstances cannot be appropriately evaluated without considering the volume of discovery and the enormous efforts needed to manage an electronic production of this nature.").

As was explained in court and above, Mr. Sullivan has been working on this complex case containing 2.5 million documents on his own until May 10, 2024. He has been relying on his research assistants to assist with document review and production. Judge Frison joined this 2.5 million document case in March 2024, and is a solo practitioner. Ms. Gilbert joined the team May 10, 2024, ten days before jury selection commenced. Moreover, the Government dumped 450,000 documents since April 11, 2024, making it nearly impossible for Mr. Watson and OZY Media to fulfill their discovery obligations and prepare for trial. Additionally, as was mentioned in court yesterday, Mr. Watson and OZY Media, Inc. did not who which witnesses they were going to call and had very few substantive conversations about the case with any witnesses, therefore, the undersigned were in no position to identify which witnesses were going to be called at trial.

RONALD SULLIVAN LAW, PLLC

Ronald S. Sullivan Jr.

### iii.        The Government is Not Substantially Prejudiced

The Government attempts to argue that "the prejudice to [it] is plain" because it "has had to operate in the dark after being presented with a list of more than thirty potential defense witnesses without any information regarding the nature of their anticipated testimony or its relevance to the case." *Id.* at 4.  The Government's argument is unavailing for several reasons.  *First*, the Government omits to mention that they are already in possession of almost all of those witnesses' recently disclosed 26.2 materials, and have been for a while, because they collected almost all of OZY's documents during their three-year investigation of the Company. Insofar as the Government has already seen almost all of these documents, there is no unfair surprise to the Government in disclosing them now.  See Duval v. U.S. Xpress Enters., Inc., 2005 WL 6021864, *3 (N.D.N.Y. 2005) (finding that defendants suffered no prejudice because they were on notice of, and had previously reviewed, the document that Plaintiff sought to disclose after the deadline for disclosure had passed); Gene Pool Techs., Inc. v. Coastal Harvest, LLC, 2023 WL 5941757, *7 (C.D. Cal. 2023) ("[Defendant]'s . . . [documents produced after the deadline for disclosure] do not appear to have contained any 'surprise' elements that would prejudice [Plaintiff]s by greatly expanding the scope of the case.").  Furthermore, the Government has been in possession of the defense witness list since May 29, 2024 and is just now raising the 26.2 violations.  Noble v. Kelly, 246 F.3d 93, 100-01 (2d Cir. 2001).  Moreover, these issues could have been brought to the attention of the defense earlier, rather than having moved to preclude based on Rule 16 violations. Additionally, the Government has had ample time and abundant resources, such as the Federal Bureau of Investigation, to investigate the witnesses provided on the witness list, particularly since they originally anticipated that their case would take twenty trial days and last through the end of July.

*Second*, and relatedly, the Government makes a claim of "unfair prejudice," but fails to specify *why* they will be prejudiced or what form the prejudice will take.  See Stacy v. PPC Transp., Co., 2013 WL 12171860, *1 (W.D. Ark. 2013) ("Plaintiff makes a general claim of unfair prejudice for the late production of this evidence but fails to identify any specific harm that he would suffer if the evidence is admitted.").  Defendants have established that all of these documents are familiar to the Government, so it is not clear what prejudice the Government is invoking.

*Third*, because this testimony is critical to the defense's case, it should not be excluded.  "[P]reclusion of evidence is a harsh remedy, [and] it should be imposed only in rare situations."  Coene v. 3M Co., 303 F.R.D. 32, 45 (W.D.N.Y. 2014) (citation omitted); *see also id.* at 45 ("Although Coene failed without substantial justification to comply with his discovery obligations, consideration of the above four

RONALD SULLIVAN LAW, PLLC

Ronald S. Sullivan Jr.

factors leads me to conclude that preclusion is too harsh a sanction for his conduct."); see also Wade v. Kelly, 391 F.3d 135 (2d Cir. 2004); Noble v. Kelly, 246 F.3d 93, 100 (2d Cir. 2001) (holding that "the trial court could, under the circumstances, could have used less onerous sanctions (such as an adjournment) to minimize any prejudice to the prosecution, and that a finding of willfulness was therefore required to justify the exclusion of [witness'] testimony.").

For the foregoing reasons, the undersigned respectfully submits that the defense witnesses should be permitted to testify and defense exhibits should be permitted in evidence.

Respectfully submitted,

**RONALD SULLIVAN LAW PLLC**

_____ /s/ _____
Ronald S. Sullivan Jr., Esq.
Admitted *Pro Hac Vice*
Janine Gilbert, Esq.
202-313-8131
rsullivan@ronaldsullivanlaw.com
*Counsel for Carlos Watson*

**FRISON LAW FIRM P.C.**

_____ /s/ _____
Shannon Frison, Esq. USM
75 State Street, Suite 100
Boston, MA 02109
(617) 706-0724
shannon@frisonlawfirm.com
*Counsel for OZY Media, Inc*

# EXHIBIT A



160 Queen Victoria Street
London, UK EC4V 4QQ
+44 20 7184 7000  Main
+44 20 7184 7001  Fax
www.dechert.com

**ROGER A. BURLINGAME**

roger.burlingame@dechert.com
+44 20 7184 7333  Direct
+44 20 7184 7001  Fax

August 5, 2022

**VIA EMAIL**

David Pitluck
Chief of the Business and Securities Fraud Section
United States Attorney's Office
Eastern District of New York
271 Cadman Plaza East
Brooklyn, NY 11201
david.pitluck@usdoj.gov

   Re:  <u>Grand Jury Subpoena for Corporate Records – Ozy Media, Inc.</u>

Dear Counsel:

As you know, Dechert LLP represents Carlos Watson in connection with his response to the Grand Jury Subpoena dated July 1, 2022 (the "Subpoena"). In response to the Subpoena, we are providing you with access to an FTP site containing non-privileged responsive documents Bates-stamped OZY-Watson_0000001 – OZY-Watson_0008502 (the "Production"). The password for the Production will be sent in a separate email.

The documents in the Production and this letter have been marked "Confidential Treatment Requested Pursuant to FOIA and Fed. R. Crim. P. 6(e)." The Production contains confidential information and may reflect competitively sensitive information as well as information of a personal nature. Mr. Watson hereby asserts that the Production is entitled to confidential treatment. In particular, but not to the exclusion of any other grounds, because the Production is being made in response to a Grand Jury Subpoena, Mr. Watson respectfully requests that the Production be afforded protection under Rule 6(e) of the Federal Rules of Criminal Procedure.

Moreover, the Production is exempt from disclosure under Exemptions 4, 6, and 7 of the Freedom of Information Act ("FOIA"). *See* 5 U.S.C. §§ 552(b)(4), (6), (7). Should the government receive any request for these materials, either pursuant to FOIA or otherwise, we request that we promptly receive notice pursuant to 28 C.F.R. § 16.7(c), using the following contact information, and an opportunity to object to such disclosure:

Confidential Treatment Requested Pursuant to FOIA and Fed. R. Crim. P. 6(e).



David Pitluck, Esq.
August 5, 2022
Page 2

Roger A. Burlingame
Dechert LLP
160 Queen Victoria Street
London, UK EC4V 4QQ
roger.burlingame@dechert.com
+44 20 7184 7333

Should the government be inclined to disclose any portion of the Production to any third party, we request that we be given ten (10) business days advance notice of any such decision to enable us to pursue any remedies that may be available to us.  In such event, we request that you telephone us rather than rely on mail or facsimile transmission to provide such notice.

The production of any document or information by Mr. Watson to you should not be considered a waiver of any privilege, work product protection, or other right or protection available to Mr. Watson or any other person or entity.  Mr. Watson reserves all rights to assert any applicable privilege, protection, or objection.

If you have any questions, please contact me at the above telephone number.

Sincerely,

*/s/ Roger A. Burlingame*

Roger A. Burlingame

cc: Jonathan Siegel
    Dylan Stern

Confidential Treatment Requested Pursuant to FOIA and Fed. R. Crim. P. 6(e).



160 Queen Victoria Street
London, UK EC4V 4QQ
+44 20 7184 7000  Main
+44 20 7184 7001  Fax
www.dechert.com

**ROGER A. BURLINGAME**

roger.burlingame@dechert.com
+44 20 7184 7333  Direct
+44 20 7184 7001  Fax

August 19, 2022

**VIA EMAIL**

David Pitluck
Chief of the Business and Securities Fraud Section
United States Attorney's Office
Eastern District of New York
271 Cadman Plaza East
Brooklyn, NY 11201
david.pitluck@usdoj.gov

      Re:      <u>Grand Jury Subpoena for Corporate Records – Ozy Media, Inc.</u>

Dear Counsel:

As you know, Dechert LLP represents Carlos Watson in connection with his response to the Grand Jury Subpoena dated July 1, 2022 (the "Subpoena"). In response to the Subpoena, we are providing you with access to an FTP site containing non-privileged responsive documents Bates-stamped OZY-Watson_0008503 – OZY-Watson_0018538 (the "Production"). The password for the Production will be sent in a separate email.

The documents in the Production and this letter have been marked "Confidential Treatment Requested Pursuant to FOIA and Fed. R. Crim. P. 6(e)." The Production contains confidential information and may reflect competitively sensitive information as well as information of a personal nature. Mr. Watson hereby asserts that the Production is entitled to confidential treatment. In particular, but not to the exclusion of any other grounds, because the Production is being made in response to a Grand Jury Subpoena, Mr. Watson respectfully requests that the Production be afforded protection under Rule 6(e) of the Federal Rules of Criminal Procedure.

Moreover, the Production is exempt from disclosure under Exemptions 4, 6, and 7 of the Freedom of Information Act ("FOIA"). *See* 5 U.S.C. §§ 552(b)(4), (6), (7). Should the government receive any request for these materials, either pursuant to FOIA or otherwise, we request that we promptly receive notice pursuant to 28 C.F.R. § 16.7(c), using the following contact information, and an opportunity to object to such disclosure:

Confidential Treatment Requested Pursuant to FOIA and Fed. R. Crim. P. 6(e).



David Pitluck, Esq.
August 19, 2022
Page 2

Roger A. Burlingame
Dechert LLP
160 Queen Victoria Street
London, UK EC4V 4QQ
roger.burlingame@dechert.com
+44 20 7184 7333

Should the government be inclined to disclose any portion of the Production to any third party, we request that we be given ten (10) business days advance notice of any such decision to enable us to pursue any remedies that may be available to us.  In such event, we request that you telephone us rather than rely on mail or facsimile transmission to provide such notice.

The production of any document or information by Mr. Watson to you should not be considered a waiver of any privilege, work product protection, or other right or protection available to Mr. Watson or any other person or entity.  Mr. Watson reserves all rights to assert any applicable privilege, protection, or objection.

If you have any questions, please contact me at the above telephone number.

Sincerely,

*/s/ Roger A. Burlingame*

Roger A. Burlingame

cc: Jonathan Siegel
     Dylan Stern

Confidential Treatment Requested Pursuant to FOIA and Fed. R. Crim. P. 6(e).



160 Queen Victoria Street
London, UK EC4V 4QQ
+44 20 7184 7000  Main
+44 20 7184 7001  Fax
www.dechert.com

**ROGER A. BURLINGAME**

roger.burlingame@dechert.com
+44 20 7184 7333  Direct
+44 20 7184 7001  Fax

September 2, 2022

**VIA EMAIL**

David Pitluck
Chief of the Business and Securities Fraud Section
United States Attorney's Office
Eastern District of New York
271 Cadman Plaza East
Brooklyn, NY 11201
david.pitluck@usdoj.gov

      Re:      <u>Grand Jury Subpoena for Corporate Records – Ozy Media, Inc.</u>

Dear Counsel:

As you know, Dechert LLP represents Carlos Watson in connection with his response to the Grand Jury Subpoena dated July 1, 2022 (the "Subpoena"). In response to the Subpoena, we are providing you with access to an FTP site containing non-privileged responsive documents Bates-stamped OZY-Watson_0018539 – OZY-Watson_0025388 (the "Production"). The password for the Production will be sent in a separate email.

The documents in the Production and this letter have been marked "Confidential Treatment Requested Pursuant to FOIA and Fed. R. Crim. P. 6(e)." The Production contains confidential information and may reflect competitively sensitive information as well as information of a personal nature. Mr. Watson hereby asserts that the Production is entitled to confidential treatment. In particular, but not to the exclusion of any other grounds, because the Production is being made in response to a Grand Jury Subpoena, Mr. Watson respectfully requests that the Production be afforded protection under Rule 6(e) of the Federal Rules of Criminal Procedure.

Moreover, the Production is exempt from disclosure under Exemptions 4, 6, and 7 of the Freedom of Information Act ("FOIA"). *See* 5 U.S.C. §§ 552(b)(4), (6), (7). Should the government receive any request for these materials, either pursuant to FOIA or otherwise, we request that we promptly receive notice pursuant to 28 C.F.R. § 16.7(c), using the following contact information, and an opportunity to object to such disclosure:

Confidential Treatment Requested Pursuant to FOIA and Fed. R. Crim. P. 6(e).



David Pitluck, Esq.
September 2, 2022
Page 2

Roger A. Burlingame
Dechert LLP
160 Queen Victoria Street
London, UK EC4V 4QQ
roger.burlingame@dechert.com
+44 20 7184 7333

Should the government be inclined to disclose any portion of the Production to any third party, we request that we be given ten (10) business days advance notice of any such decision to enable us to pursue any remedies that may be available to us.  In such event, we request that you telephone us rather than rely on mail or facsimile transmission to provide such notice.

The production of any document or information by Mr. Watson to you should not be considered a waiver of any privilege, work product protection, or other right or protection available to Mr. Watson or any other person or entity.  Mr. Watson reserves all rights to assert any applicable privilege, protection, or objection.

If you have any questions, please contact me at the above telephone number.

Sincerely,

*/s/ Roger A. Burlingame*

Roger A. Burlingame

cc: Jonathan Siegel
     Dylan Stern

Confidential Treatment Requested Pursuant to FOIA and Fed. R. Crim. P. 6(e).



160 Queen Victoria Street
London, UK EC4V 4QQ
+44 20 7184 7000  Main
+44 20 7184 7001  Fax
www.dechert.com

**ROGER A. BURLINGAME**

roger.burlingame@dechert.com
+44 20 7184 7333  Direct
+44 20 7184 7001  Fax

September 17, 2022

**VIA EMAIL**

David Pitluck
Chief of the Business and Securities Fraud Section
United States Attorney's Office
Eastern District of New York
271 Cadman Plaza East
Brooklyn, NY 11201
david.pitluck@usdoj.gov

   Re:  <u>Grand Jury Subpoena for Corporate Records – Ozy Media, Inc.</u>

Dear Counsel:

As you know, Dechert LLP represents Carlos Watson in connection with his response to the Grand Jury Subpoena dated July 1, 2022 (the "Subpoena"). In response to the Subpoena, we are providing you with access to an FTP site containing non-privileged responsive documents Bates-stamped OZY-Watson_0025389 - OZY-Watson_0033169 (the "Production"). The password for the Production will be sent in a separate email.

The documents in the Production and this letter have been marked "Confidential Treatment Requested Pursuant to FOIA and Fed. R. Crim. P. 6(e)." The Production contains confidential information and may reflect competitively sensitive information as well as information of a personal nature. Mr. Watson hereby asserts that the Production is entitled to confidential treatment. In particular, but not to the exclusion of any other grounds, because the Production is being made in response to a Grand Jury Subpoena, Mr. Watson respectfully requests that the Production be afforded protection under Rule 6(e) of the Federal Rules of Criminal Procedure.

Moreover, the Production is exempt from disclosure under Exemptions 4, 6, and 7 of the Freedom of Information Act ("FOIA"). *See* 5 U.S.C. §§ 552(b)(4), (6), (7). Should the government receive any request for these materials, either pursuant to FOIA or otherwise, we request that we promptly receive notice pursuant to 28 C.F.R. § 16.7(c), using the following contact information, and an opportunity to object to such disclosure:

Confidential Treatment Requested Pursuant to FOIA and Fed. R. Crim. P. 6(e).



David Pitluck, Esq.
September 17, 2022
Page 2

Roger A. Burlingame
Dechert LLP
160 Queen Victoria Street
London, UK EC4V 4QQ
roger.burlingame@dechert.com
+44 20 7184 7333

Should the government be inclined to disclose any portion of the Production to any third party, we request that we be given ten (10) business days advance notice of any such decision to enable us to pursue any remedies that may be available to us.  In such event, we request that you telephone us rather than rely on mail or facsimile transmission to provide such notice.

The production of any document or information by Mr. Watson to you should not be considered a waiver of any privilege, work product protection, or other right or protection available to Mr. Watson or any other person or entity.  Mr. Watson reserves all rights to assert any applicable privilege, protection, or objection.

If you have any questions, please contact me at the above telephone number.

Sincerely,

*/s/ Roger A. Burlingame*

Roger A. Burlingame

cc: Jonathan Siegel
    Dylan Stern

Confidential Treatment Requested Pursuant to FOIA and Fed. R. Crim. P. 6(e).



160 Queen Victoria Street
London, UK EC4V 4QQ
+44 20 7184 7000  Main
+44 20 7184 7001  Fax
www.dechert.com

**ROGER A. BURLINGAME**

roger.burlingame@dechert.com
+44 20 7184 7333  Direct
+44 20 7184 7001  Fax

September 29, 2022

**VIA EMAIL**

David Pitluck
Chief of the Business and Securities Fraud Section
United States Attorney's Office
Eastern District of New York
271 Cadman Plaza East
Brooklyn, NY 11201
david.pitluck@usdoj.gov

      Re:      <u>Grand Jury Subpoena for Corporate Records – Ozy Media, Inc.</u>

Dear Counsel:

As you know, Dechert LLP represents Carlos Watson in connection with his response to the Grand Jury Subpoena dated July 1, 2022 (the "Subpoena"). In response to the Subpoena, we are providing you with access to an FTP site containing non-privileged responsive documents Bates-stamped OZY-Watson_0033170 - OZY-Watson_0044265 (the "Production"). The password for the Production will be sent in a separate email.

The documents in the Production and this letter have been marked "Confidential Treatment Requested Pursuant to FOIA and Fed. R. Crim. P. 6(e)." The Production contains confidential information and may reflect competitively sensitive information as well as information of a personal nature. Mr. Watson hereby asserts that the Production is entitled to confidential treatment. In particular, but not to the exclusion of any other grounds, because the Production is being made in response to a Grand Jury Subpoena, Mr. Watson respectfully requests that the Production be afforded protection under Rule 6(e) of the Federal Rules of Criminal Procedure.

Moreover, the Production is exempt from disclosure under Exemptions 4, 6, and 7 of the Freedom of Information Act ("FOIA"). *See* 5 U.S.C. §§ 552(b)(4), (6), (7). Should the government receive any request for these materials, either pursuant to FOIA or otherwise, we request that we promptly receive notice pursuant to 28 C.F.R. § 16.7(c), using the following contact information, and an opportunity to object to such disclosure:

Confidential Treatment Requested Pursuant to FOIA and Fed. R. Crim. P. 6(e).



David Pitluck, Esq.
September 29, 2022
Page 2

Roger A. Burlingame
Dechert LLP
160 Queen Victoria Street
London, UK EC4V 4QQ
roger.burlingame@dechert.com
+44 20 7184 7333

Should the government be inclined to disclose any portion of the Production to any third party, we request that we be given ten (10) business days advance notice of any such decision to enable us to pursue any remedies that may be available to us.  In such event, we request that you telephone us rather than rely on mail or facsimile transmission to provide such notice.

The production of any document or information by Mr. Watson to you should not be considered a waiver of any privilege, work product protection, or other right or protection available to Mr. Watson or any other person or entity.  Mr. Watson reserves all rights to assert any applicable privilege, protection, or objection.

If you have any questions, please contact me at the above telephone number.

Sincerely,

*/s/ Roger A. Burlingame*

Roger A. Burlingame

cc: Jonathan Siegel
    Dylan Stern



160 Queen Victoria Street
London, UK EC4V 4QQ
+44 20 7184 7000  Main
+44 20 7184 7001  Fax
www.dechert.com

**ROGER A. BURLINGAME**

roger.burlingame@dechert.com
+44 20 7184 7333  Direct
+44 20 7184 7001  Fax

October 7, 2022

**VIA EMAIL**

David Pitluck
Chief of the Business and Securities Fraud Section
United States Attorney's Office
Eastern District of New York
271 Cadman Plaza East
Brooklyn, NY 11201
david.pitluck@usdoj.gov

      Re:      <u>Grand Jury Subpoena for Corporate Records – Ozy Media, Inc.</u>

Dear Counsel:

As you know, Dechert LLP represents Carlos Watson in connection with his response to the Grand Jury Subpoena dated July 1, 2022 (the "Subpoena"). In response to the Subpoena, we are providing you with access to an FTP site containing non-privileged responsive documents Bates-stamped OZY-Watson_0044266 - OZY-Watson_0047612 (the "Production"). The password for the Production will be sent in a separate email. Mr. Watson anticipates that this will be his final production in response to the Subpoena, but he reserves the right to amend or supplement the Production to the extent that he identifies additional documents or information.

The documents in the Production and this letter have been marked "Confidential Treatment Requested Pursuant to FOIA and Fed. R. Crim. P. 6(e)." The Production contains confidential information and may reflect competitively sensitive information as well as information of a personal nature. Mr. Watson hereby asserts that the Production is entitled to confidential treatment. In particular, but not to the exclusion of any other grounds, because the Production is being made in response to a Grand Jury Subpoena, Mr. Watson respectfully requests that the Production be afforded protection under Rule 6(e) of the Federal Rules of Criminal Procedure.

Moreover, the Production is exempt from disclosure under Exemptions 4, 6, and 7 of the Freedom of Information Act ("FOIA"). *See* 5 U.S.C. §§ 552(b)(4), (6), (7). Should the government receive any request for these materials, either pursuant to FOIA or otherwise, we request that we promptly receive notice pursuant to 28 C.F.R. § 16.7(c), using the following contact information, and an opportunity to object to such disclosure:

Confidential Treatment Requested Pursuant to FOIA and Fed. R. Crim. P. 6(e).



David Pitluck, Esq.
October 7, 2022
Page 2

Roger A. Burlingame
Dechert LLP
160 Queen Victoria Street
London, UK EC4V 4QQ
roger.burlingame@dechert.com
+44 20 7184 7333

Should the government be inclined to disclose any portion of the Production to any third party, we request that we be given ten (10) business days advance notice of any such decision to enable us to pursue any remedies that may be available to us. In such event, we request that you telephone us rather than rely on mail or facsimile transmission to provide such notice.

The production of any document or information by Mr. Watson to you should not be considered a waiver of any privilege, work product protection, or other right or protection available to Mr. Watson or any other person or entity. Mr. Watson reserves all rights to assert any applicable privilege, protection, or objection.

If you have any questions, please contact me at the above telephone number.

Sincerely,

*/s/ Roger A. Burlingame*

Roger A. Burlingame

cc: Jonathan Siegel
     Dylan Stern

Confidential Treatment Requested Pursuant to FOIA and Fed. R. Crim. P. 6(e).



160 Queen Victoria Street
London, UK EC4V 4QQ
+44 20 7184 7000  Main
+44 20 7184 7001  Fax
www.dechert.com

**ROGER A. BURLINGAME**

roger.burlingame@dechert.com
+44 20 7184 7333  Direct
+44 20 7184 7001  Fax

October 17, 2022

**VIA EMAIL**

Christine D. Ely
Division of Enforcement
U.S. Securities and Exchange Commission
New York Regional Office
100 Pearl Street, Suite 20-100
New York, NY  10004-2616
(212) 336-5464
elyc@sec.gov

   Re: <u>Ozy Media, Inc. (NY-10493)</u>

Dear Counsel:

As you know, Dechert LLP represents Carlos Watson in response to the above-referenced matter and the subpoenas issued pursuant thereto.  On behalf of our client, we are providing a production of documents through the Commission's Secure File Transfer. The documents are Bates-stamped OZY-Watson-SEC_0000001- OZY-Watson-SEC_0047612 (the "Production") and marked "FOIA CONFIDENTIAL TREATMENT REQUESTED BY DECHERT LLP ON BEHALF OF CARLOS WATSON."

As discussed in our correspondence dated January 21, 2022, Mr. Watson asserts his act of production privilege with regards to his personal documents responsive to the subpoenas. As a result, the Production includes only those documents that Mr. Watson possesses as a corporate custodian on Ozy Media, Inc.'s behalf.

This letter and the documents produced herewith contain confidential information.  The Production is made with the understanding that the documents are for use as part of this investigation.  We designate as confidential this letter, the information enclosed, and any and all additional documents or information provided at any time by, on behalf of, or with regard to our client (hereinafter, the "Confidential Information").  Pursuant to the Commission rules relating to Confidential Information and other applicable laws and regulations, we are hereby requesting that the Confidential Information be maintained in confidence, not be made part of any public record, and not be disclosed to any person.

Confidential Treatment Requested Pursuant to FOIA



Christine D. Ely
October 17, 2022
Page 2

In addition, we request, pursuant to 17 C.F.R. § 200.83, that the Confidential Information be treated as confidential and exempt from disclosure under Exemptions 4, 6, and 7 of the Freedom of Information Act ("FOIA").  *See* 5 U.S.C. §§ 552(b)(4), (6), (7).  Should the government receive any request for these materials, either pursuant to FOIA or otherwise, we request that we be given notice pursuant to 28 C.F.R. § 16.7(c), using the following contact information, and an opportunity to object to such disclosure:

> Roger A. Burlingame
> Dechert LLP
> 160 Queen Victoria Street
> London, UK EC4V 4QQ
> roger.burlingame@dechert.com
> +44 20 7184 7333

Should the Commission be inclined to disclose any portion of the Production to any third party, we request that we be given ten (10) business days advance notice of any such decision to enable us to pursue any remedies that may be available to us.  In such event, we request that you telephone us rather than rely on mail or facsimile transmission to provide such notice.

The production of any document or information by Mr. Watson to you should not be considered a waiver of any privilege, work product protection, or other right or protection available to Mr. Watson or any other person or entity.  Mr. Watson reserves all rights to assert any applicable privilege, protection, or objection.

If you have any questions, please contact me at the above telephone number.

Sincerely,

*/s/ Roger A. Burlingame*

Roger A. Burlingame

cc: pollocks@sec.gob
    levineali@sec.gov
    Office of Freedom of Information and Privacy Act Operations (without enclosures)

Confidential Treatment Requested Pursuant to FOIA

# EXHIBIT B

# SHER TREMONTE LLP

May 23, 2023

**BY ECF AND EMAIL**

The Honorable Eric R. Komitee
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

  Re: *United States v. Carlos Watson et al.*, 23-CR-82 (EK)

Dear Judge Komitee:

  We write jointly on behalf of Carlos Watson and Ozy Media, Inc. ("Ozy") in response to the government's motion to compel Mr. Watson and Ozy to produce documents responsive to two outstanding grand jury subpoenas, and request to hold Mr. Watson and Ozy in contempt if they fail to do the same. *See* Dkt. # 59.

  Compliance with the grand jury subpoenas would be unreasonable or oppressive. Accordingly, Mr. Watson and Ozy jointly move to quash the subpoenas or, in the alternative, respectfully request that the Court modify the subpoenas to make compliance therewith reasonable.

**Mr. Watson's and Ozy's Diligent Efforts to Comply with the Subpoenas**

  As noted in the government's motion, subpoenas were served in October 2021 on Ozy and Mr. Watson in his personal capacity. The government subsequently amended the subpoena to Mr. Watson to request documents from him in his capacity as a corporate custodian, rather than personally, presumably as a method of side-stepping any Fifth Amendment argument Mr. Watson would have based on the act of production privilege (though, at the time of service of the amended subpoena, there were multiple other Ozy employees who could have acted as corporate custodian). In response to the subpoenas, Ozy's counsel, Ford O'Brien, produced approximately 28,700 documents. Mr. Watson's counsel, Dechert LLP, produced approximately 20,000 documents that were in his personal possession but that were not duplicative of materials that Ozy produced. Emails from Mr. Watson's Ozy email account were produced by Ozy, while Mr. Watson supplemented such production with emails that were in his personal possession but were not held by Ozy.

  On October 7, 2022, Dechert advised the government by letter that it believed it had made its final production on behalf of Mr. Watson, though it reserved the right to amend or supplement the production as needed. According to the government, Ford O'Brien indicated that it had not completed its production when, in November 2022, both Ozy and Mr. Watson retained new counsel, respectively, Steptoe & Johnson LLP and Covington & Burling LLP. The government re-produced to new counsel the prior productions and, we understand, new counsel was in the process of reviewing that material

Hon. Eric R. Komitee
May 23, 2023
Page 2 of 14

in order to determine what additional productions were necessary when the government short-circuited that process by arresting Mr. Watson and charging the company criminally.

Following the indictment and arrest, Mr. Watson retained Sher Tremonte LLP and Ozy subsequently retained Kenneth J. Montgomery. The government reissued the subpoena Mr. Watson, notwithstanding that he was now an indicted defendant, and provided the prior Ozy subpoena to current counsel, even though the company was forced to cease operations as a result of the criminal charges. Mr. Watson directed counsel to preserve Ozy's data to ensure that it would be available even though Ozy was no longer able to pay the substantial cloud storage fees associated with such a large volume of data—over 250 terabytes. Counsel also engaged in extensive discussions with various data vendors to determine a practical and cost-efficient way to export that data and review it for responsiveness to the subpoenas. Those conversations made clear that simply exporting the data—*i.e.*, removing it from its non-searchable storage and placing it in a format in which it could be reviewed—would take weeks at a minimum and cost tens of thousands of dollars.[1]

On March 24, 2023, counsel for Mr. Watson had a meet-and-confer with the government. During this conference, *inter alia*, the undersigned raised concerns about the practicality of complying with the subpoena by the government's deadline and the Fifth Amendment concerns for Mr. Watson, especially given that the government had cited the incomplete productions as evidence of supposed obstruction of justice by *Mr. Watson*, even though the specific emails the government identified as having been omitted from production were Ozy emails that would have been produced by company counsel. When asked what materials were missing from Mr. Watson's production, the government replied, "the incriminating ones."

Following up on this phone conversation, on April 17, 2023, the undersigned sent the government a lengthy email detailing our understanding of how the prior productions were completed, communications with prior counsel regarding the productions (we also advised that Ford O'Brien had declined to provide any information), and the difficulty in exporting the volume of data held by Ozy in any format that would be reviewable. We advised the government that we planned to appoint a third-party custodian who could respond to the subpoena to Mr. Watson without impinging on his Fifth Amendment rights. And we asked the government to specify what material was missing from the prior productions so that we could attempt to fill any gaps. *See* Apr. 17, 2023 Email, attached hereto as **Exhibit A**. In response to this request, the government noted unhelpfully, "To the extent you are unsure what is missing, I would direct you to the subpoena itself, which requires production of, among other things, all written communications with certain enumerated categories of people, such as Ozy employees, investors and potential investors." Apr. 18, 2023 Email, attached hereto as **Exhibit B**.

---

[1] Ozy's live email data alone, for example, is nearly 1.2 terabytes. This does not account for the total volume of emails retained by the company.

Hon. Eric R. Komitee
May 23, 2023
Page 3 of 14

On April 21, 2023, the parties appeared in court for a status conference. Following the conference, counsel spoke with the government and attempted to clarify the government's position. It was our understanding that this conversation yielded an agreement that the government was not seeking to have Mr. Watson produce duplicative versions of Ozy emails, and that Mr. Watson could simply designate counsel for the company to respond to both subpoenas.

On April 29, 2023, counsel for Ozy wrote to the government to confirm, based on our understanding of discussions with the government, that his firm would serve as custodian to respond to both subpoenas. *See* Email Exchange, attached hereto as **Exhibit C**. Corporate counsel noted that he could not begin the process of de-duping to narrow down the materials for production until the government re-produced the material Ford O'Brien had previously produced. *Id.* Finally, counsel raised concerns about the subpoenas' breadth, and suggested a meet-and-confer to narrow the scope of the subpoenas. *Id.* On May 1, the government responded, stating that the Ford O'Brien production had been produced and the defendants would be receiving it that day. *Id.* The government rejected counsel's request to confer about narrowing the subpoenas and instead stated that it intended to move forward with a motion to compel. *Id.* The government also asked whether a *Curcio* hearing was necessary given Ozy's counsel's "representation of Watson for purposes of the subpoena response." *Id.*

Counsel for Mr. Watson responded the same day and requested a meet-and-confer to clarify some confusion that was apparent in the government's email. *Id.* The following day, the government rejected this request to meet-and-confer and demanded that any issues be raised in writing. *Id.* Counsel for Mr. Watson responded that moving to compel just days after providing the voluminous Ford O'Brien production was premature, and clarified that counsel for Ozy was not acting as counsel for Mr. Watson, but that we were instead simply attempting to avoid the formality of appointing a separate third-party custodian, as we had understood the parties to have agreed at the status conference. *Id.* On May 4, 2023, the government responded that it would respond to our points in its motion to compel and that, in its view, Mr. Watson was required to respond to the subpoena. *Id.*

The next day, May 5, 2023, the government filed its motion to compel. It did so a mere *four days* after producing prior counsel's productions (which, again, total nearly 50,000 documents), without ever having provided any indication of what, beyond one category of emails, it believed was missing from the productions, and demanding that Mr. Watson respond, despite creating a self-incriminatory trap for him by alleging that gaps in his previous productions indicated an intent to obstruct justice.

## The Subpoenas are Unreasonable and Oppressive and Should be Quashed

Although the scope of the grand jury's power to investigate whether a crime has been committed and whether criminal proceedings should be instituted is broad, "a grand jury subpoena is not a 'talisman that dissolves all constitutional protections.'" *United States v. Meregildo*, 876 F. Supp. 2d 445, 450 (S.D.N.Y. 2012) (quoting *United States v.*

Hon. Eric R. Komitee
May 23, 2023
Page 4 of 14

*Dionisio*, 410 U.S. 1, 11 (1973)); *see also United States v. R. Enterprises, Inc.*, 498 U.S. 292, 299 (1991) ("Grand juries are not licensed to engage in arbitrary fishing expeditions, nor may they select targets of investigation out of malice or an intent to harass."); *United States v. Calandra*, 414 U.S. 338, 346 (1974) ("[T]he grand jury's subpoena power is not unlimited . . . it may not itself violate a valid privilege, whether estimated by the Constitution, statutes, or the common law."). Where a grand jury subpoena would itself violate the interests protected by the Constitution, "[j]udicial supervision is properly exercised . . . to prevent the wrong before it occurs." *Calandra*, 414 U.S. at 346.

"A grand jury's subpoena duces tecum will be disallowed if it is 'far too sweeping in its terms to be regarded as reasonable' under the Fourth Amendment." *Id.* at 346 (quoting *Hale v. Henkel*, 201 U.S. 43, 76 (1906)). An unreasonably overbroad subpoena is analogous to a general warrant—the very evil the Fourth Amendment was drafted to foreclose. In crafting grand jury subpoenas, the government "must make a reasonable effort to request only those documents that are relevant and non-privileged, consistent with the extent of its knowledge about the matter under investigation." *In re Grand Jury Subpoena, JK-15-029*, 828 F.3d 1083, 1088 (9th Cir. 2016) (internal quotation marks omitted). Failure to tailor the subpoena in such way is "equally indefensible as a search warrant would be if couched in similar terms." *Id.* (quoting *Hale*, 201 U.S. at 77).

In addition to the limits imposed by the Constitution, Federal Rule of Criminal Procedure 17(c)(2) permits courts to quash or modify grand jury subpoenas "if compliance would be unreasonable or oppressive." Rule 17(c)(2) does not define what makes a subpoena "unreasonable or oppressive," and the Supreme Court has emphasized that this analysis is context dependent. *See R. Enterprises*, 498 U.S. at 299. Courts in this District employ a tripartite test to determine whether a subpoena is reasonable: (1) the requested materials must be relevant to the subject matter of a legitimate grand jury investigation; (2) the subpoena must describe the materials to be produced with reasonable particularity; and (3) the requested documents must be reasonably limited in time. *United States v. Mermelstein*, No. 05 CR 37 (ARR), 2005 WL 8159981, at *3 (E.D.N.Y. July 14, 2005) (citing *In re Grand Jury Subpoena Duces Tecum Served upon Rabbinical Seminary Netzach Israel Ramailis*, 450 F. Supp. 1078, 1084 (E.D.N.Y. 1978)).

As detailed below, the grand jury subpoenas issued to Mr. Watson and Ozy are unreasonable, oppressive and exceed the permissible bounds of the grand jury's investigatory powers. Accordingly, the Court should quash the subpoenas in their entirety or, in the alternative, modify the subpoenas to satisfy the limitations imposed by the Constitution and Rule 17(c).

I.    <u>The Subpoenas Are Unreasonable Insofar as They Seek Irrelevant Materials, Lack Particularity and are Overbroad in Scope</u>

Hon. Eric R. Komitee
May 23, 2023
Page 5 of 14

      a.    <u>The Subpoenas Seek Information Irrelevant to the Matters Under
Investigation</u>

In rationalizing the scope afforded to grand jury subpoenas, the Supreme Court in
*R. Enterprises* explained that such subpoenas are "much different from subpoena[s] issued
in the context of a prospective criminal trial, where a specific offense has been identified
and a particular defendant charged." 498 U.S. at 297 ("The identity of the offender, and
the precise nature of the offense, if there be one, normally are developed at the conclusion
of the grand jury's labors, not at the beginning."). Thus, "[a]s a necessary consequence of
its investigatory function, the grand jury paints with a broad brush." *Id.* The rationale
underlying *R. Enterprises* does not support the broad grand jury subpoenas issued to Mr.
Watson and Ozy. Here, both are indicted defendants, and the nature of the offenses is
known. Accordingly, the scope of the subpoenas and question of reasonableness under
Rule 17(c)(2) must be evaluated more narrowly than they would be in a pre-indictment
posture.

Where a typical grand jury subpoena is challenged on relevancy grounds on a
motion to quash, *R. Enterprises* instructs that such motion "must be denied unless the
district court determines that there is no reasonable possibility that the category of materials
the Government seeks will produce information relevant to the general subject of the grand
jury's investigation." *Id.* at 301. Although this reflects a broad view on relevance, it is not
without limitations. Critically, the government cannot circumvent this limitation on the
scope of the grand jury's investigation by defining categories of requested materials so
broadly that it would be impossible for the district court not the find *some* documents within
them relevant to the general subject of an investigation. *See, e.g.*, *In re Grand Jury
Subpoena, JK-15-029*, 828 F.3d at 1089 ("*R. Enterprises* does not suggest that by self-
defining the 'category of materials' sought as broadly as possible, the government insulates
its subpoenas from review.").

But this is precisely what the subpoena to Mr. Watson seeks to do. The subpoena
requests three categories of information over an almost eight-year period: (i) all documents
relating to Mr. Watson's employment at Ozy, including communications in any format; (ii)
all communications with any officer, owner, employee, consultant, or third-party
representative of Ozy; and (iii) all communications with any actual or potential client,
sponsor, partner, or investor of Ozy. *See* Dkt. # 59, Ex. E. These broad categories of
requests encompass huge swaths of communications—not limited by subject matter,
custodian, or meaningful date range—many of which have marginal, if any relevance to
the subject of the grand jury's investigation. What is more, particularly given that Ozy
operated as a news and media organization, many of these irrelevant communications
contain highly confidential and sensitive information. This is not within the bounds of
what the Supreme Court in *R. Enterprises* permitted as relevant or reasonable. "The
reference to 'categories of materials' in *R. Enterprises* confirms that subpoenas typically
designate for production a discrete 'category' of materials." *In re Grand Jury Subpoena,
JK-15-029*, 828 F.3d at 1089. Where, as here, the subpoena fails to do so, it is unreasonably
broad. *Id; see also ACLU v. Clapper*, 785 F.3d 787, 814–15 (2d Cir. 2015) ("Courts have

Hon. Eric R. Komitee
May 23, 2023
Page 6 of 14

typically looked to constrain even grand jury subpoenas to a standard of reasonableness related to a defined investigative scope; we have found excessively broad a subpoena requiring production of all of an accountant's files within a mere three filing cabinets, 'without any attempt to define classes of potentially relevant documents or any limitations as to subject matter or time period,' because it swept in papers that there was no reason to believe were relevant.").

> b.  The Subpoenas' Requests Fail to Identify the Information Being Sought with Specificity and Are Overbroad

A grand jury subpoena is also unreasonable if it fails to identify the materials to be produced with sufficient particularity.  "The particularity requirement has two dimensions: 'A grand jury subpoena must identify the demanded documents sufficiently clearly to permit compliance, and the request may not be so broad as to be oppressive.'" *Mermelstein*, 2005 WL 8159981, at *3 (quoting *In re Grand Jury Subpoena Duces Tecum Served upon Rabbinical Seminary Netzach Israel Ramailis*, 450 F. Supp. at 1084).  The specification of documents to be produced in response to the subpoena must be adequate, but not excessive, for the purposes of the relevant inquiry.  *See, e.g. United States v. Vilar*, No. S305CR621KMK, 2007 WL 1075041, at *47 (S.D.N.Y. Apr. 4, 2007) (collecting cases).

"When the government crafts subpoenas, it must make a reasonable effort to request only those documents that are relevant and non-privileged, consistent with the extent of its knowledge about the matter under investigation."  *In re Grand Jury Subpoena, JK-15-029*, 828 F.3d at 1088 (internal quotation marks omitted).  Here, "given the relatively well-defined focus of the government's investigation and the resulting indictments, a number of paragraphs in the subpoena were excessive."  *Vilar*, 2007 WL 1075041, at *49 (requests for, *inter alia*, correspondence between defendants' entities and all of their clients was too broad).  The government has substantial knowledge about the matter being investigated.  Indeed, it has been involved in years-long discussions and document productions with Mr. Watson and Ozy regarding its investigation and has obtained documents from key cooperators named in the indictment.  Nevertheless, it has made no effort—much less a reasonable effort—to tailor and target the subpoenas consistent with its knowledge about the matters under investigation.  The government's refusal to narrow the scope of the subpoena—in response to reasonable requests from counsel for Ozy—is improper.  *See In re Grand Jury Subpoena, JK-15-029*, 828 F.3d at 1089 ("[A] subpoena may be quashed when no effort is made to tailor the request to the investigation, even if some fraction of the material the subpoena seeks is relevant.").

Moreover, the materials described in the subpoenas are so broad as to be unduly burdensome.  Several of the subpoena requests are imprecise to the point where compliance would be difficult, if not impossible.  For example, the subpoenas request "any and all documents or materials related to . . . OZY Fest (regardless of year)."  If this paragraph is read in its broadest sense, "the burden involved in producing every document 'related to' [OZY Fest], without time limitation, would be immense."  *Vilar*, 2007 WL 1075041, at

Hon. Eric R. Komitee
May 23, 2023
Page 7 of 14

*48 (requests calling for all documents "related to" clients of defendants' entities and financial activities of entities found to be "fatally imprecise" and "so broad as to be unduly burdensome").  The request for all of Mr. Watson's communications as an employee of Ozy is a similarly broad and burdensome request.  *See In re Grand Jury Subpoena, JK-15-029*, 828 F.3d at 1089 (quashing subpoena where there was "no subject matter limitation whatsoever on the documents sought" and requests included all of the target's "email communication over several years, with no limitation on the content, senders, or recipients of the emails.").  The subpoenas issued to Mr. Watson and Ozy are thus unreasonably overbroad.  The burden imposed by this overbreadth is particularly impermissible given the irrelevance of the requests, as detailed above.  *See R. Enterprises*, 498 U.S. at 304 (Stevens, J., concurring) ("A more burdensome subpoena should be justified by a somewhat higher degree of probable relevance than a subpoena that imposes a minimal or nonexistent burden.").

c.    <u>The Subpoenas Seek Information Beyond a Reasonable Time Period</u>

To survive a motion to quash, the requested documents must be reasonably limited in time.  Courts look to the following factors to determine whether the timeframe of the records sought is reasonable: "the type and extent of the investigation; the materiality of the subject matter to the type of investigation; the particularity with which the documents are described; the good faith of the party demanding the broad coverage; and a showing of the need for such extended coverage."  *Trump v. Vance*, 480 F. Supp. 3d 460, 497 (S.D.N.Y.), *aff'd*, 977 F.3d 198 (2d Cir. 2020) (internal quotation marks omitted).  Greater particularity is required where the documents sought are not meaningfully restricted to a time frame.  *See id.*; *accord In re Grand Jury Subpoena Duces Tecum Addressed to Provision Salesmen and Distribs. Union*, 203 F. Supp. 575, 578–79 (S.D.N.Y. 1961) ("[A]s the period of time covered by the subpoena lengthens, the particularity with which the documents are described must increase.").

These factors weigh in favor of finding that the timeframe of the records sought by the subpoenas here is unreasonable.  As discussed above, the subpoenas fail to identify the information sought with particularity.  The requests in the subpoena to Mr. Watson are not limited by subject matter; thus, it is impossible to evaluate the materiality of the subject matter to the investigation.  Moreover, the government has made no showing of the need for the extended coverage sought by the subpoenas.  The indictment, for example, alleges criminal conduct from March 2018 to September 2021, yet the subpoenas seek information from September 2015 to April 2023.  To the extent the government will argue other acts outside the indictment justify this date range, such argument is unconvincing given that the warrant application to seize and search Mr. Watson's devices detailed only the allegations in the indictment and conduct that occurred in 2021 to 2023.  *See* Dkt. # 39, Ex. 1.  Thus, there has been no showing sufficient to justify the government's request for information dating back to September 2015.  The date range of the subpoena is particularly troublesome given the particular facts of this case: the range covers nearly the entire period of Ozy's existence, rendering the majority of the company's records subsumed by the requests.  As such, the information requested is unreasonable.

Hon. Eric R. Komitee
May 23, 2023
Page 8 of 14

II.      The Subpoenas are Oppressive Insofar as They Are Designed to Harass and
         Improperly Seek Trial Evidence

         While the "investigative power of a grand jury does not necessarily end with the
return of an indictment," post-indictment subpoenas must be issued for a proper dominant
purpose. *United States v. Jones*, 129 F.3d 718, 723 (2d Cir. 1997) ("Post-indictment action
is permitted to identify or investigate other individuals involved in criminal schemes . . . or
to prepare superseding indictments against persons already charged."). It is well-settled
that the grand jury may not be utilized "for the sole or dominating purpose of preparing an
already pending indictment for trial." *In re Grand Jury Subpoena Duces Tecum Dated
Jan. 2, 1985 (Simels)*, 767 F.2d 26, 29 (2d Cir. 1985).

         The subpoenas request information relating to alleged fraud already described in
detail in the 42-page indictment. The government is thus impermissibly using the
subpoenas for the dominating purpose of preparing the pending indictment against Ozy
and Mr. Watson for trial. As noted above, this is not an investigation in its early phases.
Rather, the government has been extensively engaged in investigating this matter and has
already received a significant volume of data from Mr. Watson and Ozy, as well as from
third parties.

         Moreover, the current subpoenas seek information identical to the prior subpoenas
issued to Mr. Watson and Ozy, pursuant to which both parties made document productions.
*See* Dkt. # 59 2–3. Despite the overlap between the requested information and the prior
demands, the government insists on obfuscating what it considers to be the remaining
deficiencies in the production. Such conduct is oppressive and unreasonable. *See, e.g.*,
*United States v. Henry*, 482 F.3d 27, 31 (1st Cir. 2007) ("[I]f the earlier production had
been unjustifiably deficient, the deficiencies should have been identified."). The
government should narrow the subpoenas to focus its requests on the perceived
deficiencies.

III.     The Subpoenas Violate Interests Protected by the First Amendment

         The subpoenas should be quashed, or at minimum modified, given the First
Amendment implications of compliance and to mitigate against the unnecessary
infringement of journalistic privileges. *See R. Enterprises*, 498 U.S. 292 at 307 (Stevens,
J., concurring) ("[T]he possible First Amendment implications of compliance should be
considered" on a motion to quash a grand jury subpoena."); *In re Search Warrant Executed
on Nov. 5, 2021*, No. 21 MISC. 813 (AT), 2023 WL 3005726, at *3 (S.D.N.Y. Mar. 21,
2023) ("The Second Circuit has long recognized a qualified evidentiary privilege for
information gathered in a journalistic investigation.").

         Ozy is fundamentally in the business of disseminating news. Indeed, it sent out
daily newsletters, produced podcasts and television shows, and employed or contracted
with numerous journalists to do the same. In issuing the subpoenas, the government has

Hon. Eric R. Komitee
May 23, 2023
Page 9 of 14

thus requested large swaths of information from a news organization.  The Court should carefully scrutinize the reasonableness of such requests and permit the government to proceed only where the information sought is relevant to the grand jury's investigation.  *See Branzburg v. Hayes*, 408 U.S. 665, 710 (1972) (Powell, J., concurring) ("Indeed, if the newsman is called upon to give information bearing only a remote and tenuous relationship to the subject of the investigation, or if he has some other reason to believe that his testimony implicates confidential source relationship without a legitimate need of law enforcement, he will have access to the court on a motion to quash and an appropriate protective order may be entered.  The asserted claim to privilege should be judged on its facts by the striking of a proper balance between freedom of the press and the obligation of all citizens to give relevant testimony with respect to criminal conduct."); *The New York Times Co. v. Gonzales*, 459 F.3d 160, 171 (2d Cir. 2006) ("There is therefore a clear showing of a compelling governmental interest in the investigation, a clear showing of relevant and unique information in the reporters' knowledge, and a clear showing of need. No grand jury can make an informed decision to pursue the investigation further, much less to indict or not indict, without the reporters' evidence.  It is therefore not privileged"); *In re Search Warrant Executed on Nov. 5, 2021*, 2023 WL 3005726, at *4 (reporters' privilege may be overcome for nonconfidential materials upon a showing that "the materials at issue are of likely relevance to a significant issue in the case, and are not reasonably obtainable from other available sources.").

The government's clarification in the subpoenas that it is not seeking records of newsgathering activities does not obviate these concerns; as newsgathering is fundamental to Ozy's business and the subpoenas' requests make no effort to distinguish materials relevant to the government's investigation from those covered by First Amendment privileges.[2]  Instead, as discussed above, the subpoenas are overbroad and seek information irrelevant to the subject of the government's investigation (not to speak of the undue burden of attempting to sift through nearly a decade's worth of communications to determine which relate to newsgathering and which do not).  Accordingly, the government cannot show a compelling interest in the information requested such that the privilege may be overcome.  The subpoenas should be quashed to protect Ozy's legitimate First Amendment interests.

---

[2] Although the Department of Justice Guidelines do not create enforceable rights, the Court is not barred from considering this policy in evaluating the ultimate question of reasonableness under Rule 17(c)(2).  Per Department of Justice policy, the compulsory legal process must be narrowly drawn when involving members of the news media.  Thus, the subpoenas should be "directed at material and relevant information regarding limited subject matter, avoid interference with unrelated newsgathering, cover a reasonably limited period of time, avoid requiring production of a large volume of material, and give reasonable and timely notice of the demand . . ." 28 C.F.R. § 50.10(g)(iii).  Moreover, "the compulsory legal process may not be used to obtain peripheral, nonessential, or speculative information."  28 C.F.R. § 50.10(j).  Such policy reflects an intention to protect the First Amendment and preserve journalistic privileges that should also inform this Court's approach.

Hon. Eric R. Komitee
May 23, 2023
Page 10 of 14

## The Government's Motion to Compel and Request to Hold Mr. Watson and Ozy in Contempt Should Be Denied

I.    Mr. Watson Should Be Permitted to Assert His Fifth Amendment Rights and Appoint a Corporate Custodian to Effectuate the Response to the Subpoenas

If the Court denies the motion to quash, Mr. Watson will invoke his Fifth Amendment rights and Ozy should be permitted to appoint a substitute corporate custodian to assist corporate counsel in responding to the subpoenas.  Ignoring any possibility of mistake by prior counsel, and rather than provide insight into perceived deficiencies in the production, the government is pursuing a theory that Mr. Watson has intentionally withheld evidence responsive to the subpoenas from prior productions, in what it claims is obstruction of justice.  *See* Dkt. # 39, Ex. 1 ¶¶ 12, 17.  Thus, any act of producing new materials by Mr. Watson risks potentially incriminating him.  In these circumstances, it is unfair to designate Mr. Watson as a corporate custodian, effectively a means to circumvent his Fifth Amendment rights.

The practice of appointing a third party to produce corporate records in connection with grand jury subpoenas originated nearly thirty years ago as a means to ensure that a corporation complies with its duty to respond, without impeding the Fifth Amendment privileges of any of its officers. *See In re Two Grand Jury Subpoenae Duces Tecum*, 769 F.2d 52, 57 (2d Cir.1985); *United States v. Barth*, 745 F.2d 184, 189 (2d Cir.1984). In *In re Two Grand Jury Subpoenae Duces Tecum*, the Second Circuit acknowledged that there was "no situation in which the fifth amendment would prevent a corporation from producing corporate records," as the corporation itself has no such privilege.  769 F.2d at 57.  Nevertheless, "where a corporation's custodian of records would incriminate himself if he were to act to produce the company's records . . . the corporation must appoint some other employee to produce the records" and, if no existing employee could do so, "then the corporation may be required to produce the records by supplying an entirely new agent." *Id*.  Where a grand jury target was subpoenaed in his capacity as a corporate custodian and asserted a Fifth Amendment privilege, the Second Circuit held that, by permitting the corporation itself to select an agent to produce the requested records, the district court had "effectively remove[d] any danger that the [grand jury target] will have to incriminate himself." *Id.*  Accordingly, the appointment of an outside agent served the dual goals of aiding the grand jury investigation, insofar as it did not impede the production of responsive documents, while also not compelling the testimony of the corporate custodian through any personal act of production such that his Fifth Amendment privilege would be infringed.

The Supreme Court's subsequent decision in *Braswell v. United States* did not abrogate this holding.  487 U.S. 99 (1988).  *Braswell* did not per se reject the practice of appointing a custodian to preserve the Fifth Amendment rights of a grand jury target. Rather, it rejected this solution where the third-party custodian could not effectively produce the documents without the assistance of the corporate officer.  In that scenario, the corporate officer's claim of privilege effectively thwarted the corporation's ability to respond because he was "the only person with knowledge about the demanded documents."

Hon. Eric R. Komitee
May 23, 2023
Page 11 of 14

*Id.* at 116–117. "In situations such as this . . . the appointment of a surrogate will simply not ensure that the documents sought will ever reach the grand jury room; the appointed custodian will essentially be sent on an unguided search." *Id.*[3]

Here, by contrast, there is no record that appointment of a third-party custodian would thwart the production of documents**.**  To the contrary, the record establishes that potentially responsive data has been preserved in a format where it can be searched and reviewed.  Moreover, the appointment of a third-party custodian would undoubtedly make the process smoother.  Mr. Watson is facing serious charges in a complex securities fraud indictment and is understandably focused on the defense of his case.  His life is at stake.  The complexities surrounding the production of these documents is a fulltime job, one better suited for an outside agent who can devote appropriate time and resources.  The concerns raised in *Braswell* are thus inapposite to the subpoenas at issue here, where Mr. Watson and Ozy have clearly represented to the government their intention to produce responsive documents through the appointed custodian.

Indeed, post-*Braswell*, no court appears to have gone so far as to preclude the practice of appointing an outside agent.  None of the cases cited by the government involve the situation presented here, namely, where the subpoenaed corporate custodian seeks to appoint a third party to preserve his individual Fifth Amendment privilege *while also ensuring that a response to the subpoena will properly be effectuated*.  Rather, all of those cases reject the use of the Fifth Amendment effectively to disregard the corporate form and shield business records from production.  *See* Dkt. # 59 at 7 (citing *United States v. Fridman*, 974 F.3d 163, 180–82 (2d Cir. 2020); *In re Grand Jury Proceeding*, 971 F.3d 40, 57 (2d Cir. 2020); *Armstrong v. Guccione*, 470 F.3d 89, 98 (2d Cir. 2006); *Matter of Grand Jury Subpoenas Dated Oct. 22, 1991 and Nov. 1, 1991*, 959 F.2d 1158, 1163 (2d Cir. 1992)).  Mr. Watson is not arguing—and has made clear in his correspondence with the government that he is not arguing—that the Fifth Amendment absolves him or Ozy of any obligation to ensure documents are produced responsive to the subpoenas.  Rather, he is merely requesting that he be permitted to transfer that obligation to a third-party agent given the particular Fifth Amendment concerns that the government has raised by casting previous perceived deficiencies in production as obstructive.  Of course, had the government subpoenaed only Ozy for all of the documents requested in the subpoenas, Ozy would have been free to designate any custodian of its choosing to effectuate its response—including an independent third-party.

Moreover, the policy objectives underlying *Braswell* and the collective entity doctrine more generally are not at all threatened by the appointment of a third-party custodian in this case.  The conclusion that a corporate custodian cannot avail himself of the Fifth Amendment privilege serves three objectives.  *First*, it prevents the erosion of the long-settled rule that a corporation is not entitled to claim a Fifth Amendment privilege.

---

[3] Notably, *Braswell* affirmed that, because of the Fifth Amendment considerations, the government may make no evidentiary use of the act of production by a corporate custodian against the individual.  487 U.S. at 118.

Hon. Eric R. Komitee
May 23, 2023
Page 12 of 14

*Second*, it recognizes that the choice to incorporate carries both benefits, such as limited liability, and burdens, such as responding to subpoenas for corporate records. *Third*, "it avoids creating a category of organizations effectively immune from regulation by virtue of being beyond the reach of the Government's subpoena power." *See In re Grand Jury Subpoena Issued June 18, 2009*, 593 F.3d 155, 158–59 (2d Cir. 2010). Here, Ozy is not claiming it has a Fifth Amendment privilege and intends to produce documents responsive to the subpoenas via the appointment of an outside agent. Thus, these objectives are advanced by Mr. Watson's proposal, while safeguarding his Fifth Amendment rights.

Given the foregoing, the government's motion to compel Mr. Watson on penalty of contempt is premature and unnecessary. It should first permit the defense to produce responsive documents through an appointed agent. The government can then evaluate the completeness of that production, before making any argument that such approach is deficient or would be unsuccessful.

## II. Mr. Watson and Ozy Have Demonstrated Valid Objections to Compliance

Though the government "recognizes" that both Mr. Watson and Ozy "face logistical hurdles" in responding to the subpoenas, it submits that such challenges are not legally relevant to the Rule 17(c)(2) inquiry. *See* Dkt. # 59 at 5. That is wrong. A valid objection to compliance may be satisfied by evidence of the "mere cost in terms of time, money and effort of responding to a dragnet subpoena." *R. Enterprises*, 498 U.S. at 305 (Stevens, J., concurring). Here, the volume and location of the materials supports the finding that Mr. Watson's and Ozy's objections to compliance are valid, particularly given the massive amount of electronically stored information—over 250 terabytes of data—that would be required to be collected and reviewed to identify responsive material. The Court is legally permitted to—and should—weigh the costs of compliance against the government's relatively weak justification for its motion.

## III. Mr. Watson and Ozy Should Not Be Held in Contempt

Even assuming, *arguendo*, that the Court grants the government's motion to compel, it would be erroneous to hold Mr. Watson or Ozy in contempt. Contempt is inappropriate where, as here, the defense has a present inability to comply with the subpoenas. As previously described, and particularly considering the broad scope of the subpoenas, the volume of data to be collected and reviewed to respond to the requests is immense. Indeed, it would be impossible for the defense to collect, review and produce all responsive, non-privileged documents responsive to the subpoenas within forty-five days from the Court's order, as requested by the government. *See* Dkt. # 59 at 1. Mere collection of email communications alone could take longer than this period. Moreover, until recently Mr. Watson did not have access to the funds required to secure a document vendor, making it impossible to identify the deficiencies alleged by the government in the prior productions or begin review of the massive swaths of data requested in the subpoenas. Accordingly, the Court should not find Mr. Watson or Ozy in contempt should it fail to meet the unrealistic and impossible deadlines arbitrarily imposed by the government. *See United*

Hon. Eric R. Komitee
May 23, 2023
Page 13 of 14

*States v. Rylander*, 460 U.S. 752, 757 (1983) ("Where compliance is impossible, neither the moving party nor the court has any reason to proceed with the civil contempt action."); *Armstrong v. Guccione*, 470 F.3d 89, 99 (2d Cir. 2006) (defendant could avoid order of contempt by demonstrating that compliance with turnover orders is presently impossible).

Moreover, contempt is inappropriate where, as here, the defense has been proceeding in good faith.  Civil contempt of a court order may be found only where, (i) the order is clear and ambiguous, (ii) proof of noncompliance is clear and convincing, and (iii) the contemnor has not diligently attempted to comply in a reasonable manner.  *See S.E.C. v. Durante*, 641 F. App'x 73, 76 (2d Cir. 2016) (summary order).  Here, outgoing counsel for Mr. Watson and counsel for Ozy have been working diligently to preserve responsive documents and respond to the subpoenas.  Such efforts have included, *inter alia*, meeting with numerous document vendors to discuss effectively collecting, reviewing and producing documents to the subpoenas; lining up a third-party custodian to act as the corporate representative for purposes of responding to the subpoenas; communicating with prior counsel to better understand the government's alleged deficiencies; and attempting to meet and confer with the government regarding the subpoena response. All of these efforts have been in good faith to reasonably comply with the government's requests. Accordingly, there is no basis to hold either Mr. Watson or Ozy in contempt.

\* \* \*

For the foregoing reasons, Mr. Watson and Ozy respectfully request that the Court deny the government's motion to compel and grant Mr. Watson's and Ozy's motion to quash the grand jury subpoenas.

Hon. Eric R. Komitee
May 23, 2023
Page 14 of 14

Respectfully submitted,

/s/ *Noam Biale*
Noam Biale
Justine A. Harris
Michael Tremonte
Neesha Chhina
SHER TREMONTE LLP

*Attorneys for Carlos Watson*

Kenneth J. Montgomery
KENNETH J. MONTGOMERY, PLLC

*Attorneys for Ozy Media, Inc.*

cc:     All counsel of record (by ECF)
        Ronald Sullivan, Esq. (by email)

# EXHIBIT A

| | |
|---|---|
| **From:** | Noam Biale |
| **To:** | Siegel, Jonathan (USANYE); Kassner, Gillian (USANYE); Stern, Dylan (USANYE) |
| **Cc:** | Justine Harris; Neesha Chhina; Kenneth J. Montgomery Esq |
| **Subject:** | Watson discovery and subpoena issues |
| **Date:** | Monday, April 17, 2023 10:34:02 PM |

Dear Jon, Gillian, and Dylan:

We write to update you on our efforts to comply with your subpoena, dated March 6, 2023, and to obtain a vendor to review discovery.  We are providing a summary of the efforts we have undertaken on behalf of our client, but we believe the challenges we are facing apply equally to Ozy, so we are cc'ing Ken as well.  As noted in Justine's previous email, we intend to appoint a third-party custodian to respond on behalf of Mr. Watson, in order to avoid any risk to his Fifth Amendment rights.

First, with respect to the latter issue, we have received price quotes and technical specs from four different potential vendors, but for various reasons have not been able to engage a vendor yet.  Accordingly, we are not currently in a position to review the discovery and that inability bears on our response to the subpoena, discussed below.  We are obviously anxious to rectify this situation and begin reviewing discovery as soon as possible, but the timing is not within our control.

Second, without waiving any objections to the subpoena, despite our diligent efforts, we are not currently in a position to produce documents in response.  There are several reasons for this, most significantly the fact that we are not able to engage a vendor presents serious technological barriers to compliance, making it essentially impossible at this time.

Before detailing those issues, as an initial matter, we think it makes sense to give you some of the background information we have receive from predecessor counsel.  Based on what we have learned, we are candidly perplexed at your continued pursuit of this issue.  It is our understanding, based on conversations with Dechert, that in response to the prior subpoenas, Mr. Watson as corporate custodian gave access to all of Ozy's email accounts and data to a third party vendor retained by counsel.  That vendor pulled the data and delivered it in searchable form to Ford O'Brien.  Ford O'Brien then did searches on the data to produce responsive documents.  Ford O'Brien then provided the search terms to Dechert, which ran the same search terms on Mr. Watson's personal devices, and produced responsive materials from those devices, as well as reviewing certain paper notebooks for responsive materials.  We are unsure what efforts you believe predecessor counsel should have undertaken that they did not.

We have also asked all predecessor counsel – Dechert, Ford O'Brien, Covington, and Steptoe – to provide us with any materials they collected in the course of their representation.  On March 17, Dechert provided us with a drive containing voluminous data (approximately 1.72 TB).  However, we are unable to open the vast majority of these files without a vendor.  Accordingly, we do not know what is in the drive, and whether it contains the material produced to the government previously, though we believe it does.  Ford O'Brien, meanwhile, has declined to provide us with any data or information about their prior productions.  We understand that Covington and Steptoe did not make productions, but that you re-produced Ford O'Brien's production to them.  We have asked them for

a copy of that production and are awaiting a response.

Meanwhile, we have been working with our IT expert to determine whether we can export Ozy data and provide it to you.  There are several barriers to doing so, however.  First, there are categories of data to which we do not have access.  For the data that we can access, the full volume of data is so large – over 250 TB – that it would be impossible to export and is certainly beyond the capacity of our server space to handle.  Our IT expert has been able to export a small subset of email accounts, though these are far more time-limited than what the subpoena calls for.  To do so took him approximately a week, and he estimates that to export the remainder of email accounts would take approximately nine weeks (assuming no technical difficulties – he already encountered problems attempting to export one of the accounts and ultimately was unsuccessful).  Further, that only accounts for emails, not for any of the files or media, which, again, are too big to transfer.  Even if they could be exported, we are advised that the export would put the files in a format that would make them impossible to search.  In their current form, we are not able to search those files to determine what is responsive and export a subset.

In sum, without a vendor, we are not currently able to respond to the subpoena.  And in any event, we believe that based on the procedure undertaken by prior counsel, Mr. Watson did produce emails as a corporate custodian – these were just not produced to you twice – and it is not clear how any responsive materials would have been left out.  To save time and resources, we request that you engage in a more fulsome, good faith dialogue with us about what you believe is missing and we can attempt to fill those gaps.  We believe a demand for wholesale re-production from both Mr. Watson and Ozy is harassing and an inappropriate basis for a Grand Jury subpoena.

We look forward to working with you,

Justine, Noam, Neesha

Noam Biale (he/him) | Sher Tremonte LLP
90 Broad Street, 23rd Fl. New York, NY 10004
O: 212-300-2445 | M: 510-221-7213 | F: 212-202-4156
nbiale@shertremonte.com | www.shertremonte.com

# EXHIBIT B

| From: | Siegel, Jonathan (USANYE) |
|---|---|
| To: | Noam Biale; Kassner, Gillian (USANYE); Stern, Dylan (USANYE) |
| Cc: | Justine Harris; Neesha Chhina; Kenneth J. Montgomery Esq |
| Subject: | RE: Watson discovery and subpoena issues |
| Date: | Tuesday, April 18, 2023 5:30:37 PM |

Noam,

Thank you for your email.

Putting aside the reason for the delay, it is Mr. Watson's responsibility to solve the issue and respond to the subpoena. Please let us know when you'll be retaining a vendor.

As for your contention that prior counsel appropriately complied with the subpoena by producing emails to Ozy, we do not understand how Mr. Watson can comply with a subpoena by providing documents to a third-party not acting on his behalf, and we are not aware of any legal authority to support that position. The issue might not matter if Ozy had in turn produced on Mr. Watson's behalf all the documents required by the subpoena, but it has not, and significant gaps remain. Mr. Watson cannot free himself of his duty to respond by giving the documents to Ozy and then pointing the finger at Ozy when Ozy fails to produce the documents.

To the extent you are unsure what is missing, I would direct you to the subpoena itself, which requires production of, among other things, all written communications with certain enumerated categories of people, such as Ozy employees, investors and potential investors. No prior counsel for Watson or Ozy has ever told us that they completed production of documents responsive to these requests. Indeed, before Ford O'Brien left the case, they told us they were still responding to the Ozy subpoena, and they never told us that they had produced any documents responsive to the Watson subpoena not otherwise covered by the Ozy subpoena, and no prior counsel for Watson has produced corporate emails on his behalf.

Finally, to respond to your statements that "a demand for wholesale re-production from both Mr. Watson and Ozy is harassing and an inappropriate basis for a Grand Jury subpoena," we are not seeking a re-production of documents, nor is that the basis for our subpoena. Rather, we are asking Mr. Watson to comply with the subpoena (which was originally issued in October 2021) and produce documents that as of yet neither he nor Ozy has produced.

Given where we are, we plan to ask the Court to set a deadline for you to let us know (1) if you're going to produce documents in response to the subpoena, (2) if so, when, and (3) if you intend to not produce documents in response to some aspect of the subpoena, to state the reason why.  Depending on the answers the those questions, we can determine if a motion to compel is necessary.

Best,
Jon


Jonathan Siegel
Assistant United States Attorney
Eastern District of New York
271A Cadman Plaza East
Brooklyn, New York 11201
Tel: 718-254-6293
Email: Jonathan.Siegel@usdoj.gov

---

**From:** Noam Biale <NBiale@shertremonte.com>
**Sent:** Monday, April 17, 2023 10:34 PM
**To:** Siegel, Jonathan (USANYE) <JSiegel@usa.doj.gov>; Kassner, Gillian (USANYE) <GKassner@usa.doj.gov>; Stern, Dylan (USANYE) <DStern1@usa.doj.gov>
**Cc:** Justine Harris <JHarris@shertremonte.com>; Neesha Chhina <NChhina@shertremonte.com>; Kenneth J. Montgomery Esq <ken@kjmontgomerylaw.com>
**Subject:** [EXTERNAL] Watson discovery and subpoena issues

Dear Jon, Gillian, and Dylan:

We write to update you on our efforts to comply with your subpoena, dated March 6, 2023, and to obtain a vendor to review discovery.  We are providing a summary of the efforts we have undertaken on behalf of our client, but we believe the challenges we are facing apply equally to Ozy, so we are cc'ing Ken as well.  As noted in Justine's previous email, we intend to appoint a third-party custodian to respond on behalf of Mr. Watson, in order to avoid any risk to his Fifth Amendment rights.

First, with respect to the latter issue, we have received price quotes and technical specs from four different potential vendors, but for various reasons have not been able to engage a vendor yet.  Accordingly, we are not currently in a position to review the discovery and that inability bears on our response to the subpoena, discussed below.  We are obviously anxious to rectify this situation and begin reviewing discovery as soon as possible, but the timing is not within our control.

Second, without waiving any objections to the subpoena, despite our diligent efforts, we are not currently in a position to produce documents in response. There are several reasons for this, most significantly the fact that we are not able to engage a vendor presents serious technological barriers to compliance, making it essentially impossible at this time.

Before detailing those issues, as an initial matter, we think it makes sense to give you some of the background information we have receive from predecessor counsel. Based on what we have learned, we are candidly perplexed at your continued pursuit of this issue. It is our understanding, based on conversations with Dechert, that in response to the prior subpoenas, Mr. Watson as corporate custodian gave access to all of Ozy's email accounts and data to a third party vendor retained by counsel. That vendor pulled the data and delivered it in searchable form to Ford O'Brien. Ford O'Brien then did searches on the data to produce responsive documents. Ford O'Brien then provided the search terms to Dechert, which ran the same search terms on Mr. Watson's personal devices, and produced responsive materials from those devices, as well as reviewing certain paper notebooks for responsive materials. We are unsure what efforts you believe predecessor counsel should have undertaken that they did not.

We have also asked all predecessor counsel – Dechert, Ford O'Brien, Covington, and Steptoe – to provide us with any materials they collected in the course of their representation. On March 17, Dechert provided us with a drive containing voluminous data (approximately 1.72 TB). However, we are unable to open the vast majority of these files without a vendor. Accordingly, we do not know what is in the drive, and whether it contains the material produced to the government previously, though we believe it does. Ford O'Brien, meanwhile, has declined to provide us with any data or information about their prior productions. We understand that Covington and Steptoe did not make productions, but that you re-produced Ford O'Brien's production to them. We have asked them for a copy of that production and are awaiting a response.

Meanwhile, we have been working with our IT expert to determine whether we can export Ozy data and provide it to you. There are several barriers to doing so, however. First, there are categories of data to which we do not have access. For the data that we can access, the full volume of data is so large – over 250 TB – that it would be impossible to export and is certainly beyond the capacity of our server space to handle. Our IT expert has been able to export a small subset of email accounts, though these are far more time-limited than what the subpoena calls for. To do so took him approximately a week, and he estimates that to export the remainder of email accounts would take approximately nine weeks (assuming no technical difficulties – he already encountered problems attempting to export one of the accounts and ultimately was unsuccessful). Further, that only accounts for emails, not for any of the files or media, which, again, are too big to transfer. Even if they could be exported, we are advised that the export would put the files in a format that would make them impossible to search. In their current form, we are not able to search those files to determine what is responsive and export a subset.

In sum, without a vendor, we are not currently able to respond to the subpoena. And in any event, we believe that based on the procedure undertaken by prior counsel, Mr. Watson did produce emails as a corporate custodian – these were just not produced to you twice – and it is not clear how any responsive materials would have been left out. To save time and resources, we request that you

engage in a more fulsome, good faith dialogue with us about what you believe is missing and we can attempt to fill those gaps.  We believe a demand for wholesale re-production from both Mr. Watson and Ozy is harassing and an inappropriate basis for a Grand Jury subpoena.

We look forward to working with you,

Justine, Noam, Neesha

Noam Biale (he/him) | Sher Tremonte LLP

90 Broad Street, 23rd Fl. New York, NY 10004

O: 212-300-2445 | M: 510-221-7213 | F: 212-202-4156

nbiale@shertremonte.com | www.shertremonte.com

# EXHIBIT C

| | |
|---|---|
| **From:** | Siegel, Jonathan (USANYE) |
| **To:** | Noam Biale; Kenneth Montgomery |
| **Cc:** | Justine Harris; Neesha Chhina; Michael Tremonte; Stern, Dylan (USANYE); Kassner, Gillian (USANYE) |
| **Subject:** | RE: [EXTERNAL] Re: U.S. v. Watson and Ozy, 23-CR-82 (EK) |
| **Date:** | Thursday, May 4, 2023 3:50:21 PM |

Noam,

Thank you for laying this out, it is very helpful.  We respectfully disagree with your arguments and will respond to them in our motion.

We have never agreed that Mr. Watson did not need to respond to the subpoena.  If Mr. Watson and Ozy want to coordinate on a subpoena response to avoid duplication of effort, that's not a problem from our perspective.  If Mr. Watson wants to retain Ozy's counsel to respond on his behalf (or vice versa), that's also not a problem from our perspective, assuming any conflicts are appropriately addressed and waived.  But in our view Mr. Watson is a corporate custodian — perhaps the only remaining corporate custodian — and he must respond to the subpoena one way or another.

Best,
Jon

Jonathan Siegel

Assistant United States Attorney

Eastern District of New York

271A Cadman Plaza East

Brooklyn, New York 11201

Tel: 718-254-6293

Email: Jonathan.Siegel@usdoj.gov

---

**From:** Noam Biale <NBiale@shertremonte.com>
**Sent:** Tuesday, May 2, 2023 11:15 PM
**To:** Siegel, Jonathan (USANYE) <JSiegel@usa.doj.gov>; Kenneth Montgomery
<ken@kjmontgomerylaw.com>
**Cc:** Justine Harris <JHarris@shertremonte.com>; Neesha Chhina <NChhina@shertremonte.com>;
Michael Tremonte <MTremonte@shertremonte.com>; Stern, Dylan (USANYE)
<DStern1@usa.doj.gov>; Kassner, Gillian (USANYE) <GKassner@usa.doj.gov>
**Subject:** Re: [EXTERNAL] Re: U.S. v. Watson and Ozy, 23-CR-82 (EK)

Hi Jon,

I disagree and believe a phone call would be useful.  At very least, Ken could have communicated his proposed timing for responding to the subpoena.

Nevertheless, two important points are worth clarifying over email:

First, filing a motion to compel just days after we received the Ford O'Brien production is, at the very least, premature.  While I understand you feel pressured by the Judge's deadline, we would be happy to jointly request a modification of that schedule.  It is beyond absurd to force the defense to spend hours responding to another motion, when we need that time to review the voluminous productions (only just received) to determine what responsive materials, if any, were missing from the productions made by Dechert LLP and Ford O'Brien.

Second, Ken is <u>not</u> representing Carlos Watson in connection with the subpoena response.  Instead, as we have tried to explain to you previously, since we assume Carlos Watson to be a target of the ongoing grand jury investigation, he is not appropriately treated as a corporate custodian compelled to produce documents.  Rather, the subpoena should be directed to an individual whose personal Fifth Amendment rights – including his act of production privilege – are not implicated.  *See, e.g.*, *In re Two Grand Jury Subpoenas Duces Tecum*, 769 F.2d 52, 54 (2d Cir. 1985).  Indeed, the dilemma is heightened given that you have repeatedly characterized Ford O'Brien's response on behalf of the company as somehow evidencing obstructive conduct by Mr. Watson himself.  Accordingly, to be crystal clear: Carlos Watson is not acting as a corporate custodian and asserts his Fifth Amendment rights.

We fully appreciate that corporations do not have Fifth Amendment rights.  However, since your subpoena to Mr. Watson seeks corporate records, we proposed, and we understood you to agree, that it would be sensible and appropriate for the corporation's counsel to respond and produce the corporate records sought by the subpoena you served on Mr. Watson in his "representative capacity."  To the extent you are concerned that Mr. Watson has in his personal possession corporate documents responsive to your corporate subpoena, you can be assured that Ken, as company counsel, will take all reasonable steps to collect those materials and respond to the subpoena.

The law recognizes that it is not appropriate for the government to circumvent the protections of the Fifth Amendment by designating a target of the grand jury investigation a corporate custodian. In these situations, i.e., when a "custodian" is a target, caselaw recognizes that a third-party or alternative custodian should be designated.  *Id.*  at 57.  When we spoke after court last Friday, I thought we had agreement that we could skip the additional burdensome and somewhat formalistic step of designating a third party custodian, and that the company could simply respond to both subpoenas.  Please let me know immediately if I misunderstood.

If you do proceed with the motion to compel, please attach this email correspondence to your motion so that the Court has an accurate picture of our requests to meet and confer.

Noam

**From:** Siegel, Jonathan (USANYE) <Jonathan.Siegel@usdoj.gov>
**Date:** Tuesday, May 2, 2023 at 9:14 PM
**To:** Noam Biale <NBiale@shertremonte.com>, Kenneth Montgomery
<ken@kjmontgomerylaw.com>
**Cc:** Justine Harris <JHarris@shertremonte.com>, Neesha Chhina
<NChhina@shertremonte.com>, Michael Tremonte <MTremonte@shertremonte.com>,
Stern, Dylan (USANYE) <Dylan.Stern@usdoj.gov>, Kassner, Gillian (USANYE)
<Gillian.Kassner@usdoj.gov>
**Subject:** RE: [EXTERNAL] Re: U.S. v. Watson and Ozy, 23-CR-82 (EK)

Noam,

Given that we are a few days out from filing our motion to compel, we think it is
important for you to lay out whatever issues or clarifications you have in writing.  We
don't want to risk inadvertently misstating or misunderstanding your positions.  Once we
understand what it is you want to discuss, we can decide if a call makes sense.

Best,
Jon


Jonathan Siegel
Assistant United States Attorney
Eastern District of New York
271A Cadman Plaza East
Brooklyn, New York 11201
Tel: 718-254-6293
Email: Jonathan.Siegel@usdoj.gov

**From:** Noam Biale <NBiale@shertremonte.com>
**Sent:** Monday, May 1, 2023 11:18 PM
**To:** Siegel, Jonathan (USANYE) <JSiegel@usa.doj.gov>; Kenneth Montgomery
<ken@kjmontgomerylaw.com>
**Cc:** Justine Harris <JHarris@shertremonte.com>; Neesha Chhina <NChhina@shertremonte.com>;
Michael Tremonte <MTremonte@shertremonte.com>; Stern, Dylan (USANYE)
<DStern1@usa.doj.gov>; Kassner, Gillian (USANYE) <GKassner@usa.doj.gov>
**Subject:** Re: [EXTERNAL] Re: U.S. v. Watson and Ozy, 23-CR-82 (EK)

All,

In light of the email exchange, we think it makes sense to get on the phone and talk this out.  There seems to be some confusion here that we'd like to clarify.

I know Ken has a busy trial schedule this week, so would 5 PM on Wednesday work for everyone?

Noam

---

**From:** Siegel, Jonathan (USANYE) <Jonathan.Siegel@usdoj.gov>
**Date:** Monday, May 1, 2023 at 1:48 PM
**To:** Kenneth Montgomery <ken@kjmontgomerylaw.com>
**Cc:** Noam Biale <NBiale@shertremonte.com>, Justine Harris <JHarris@shertremonte.com>, Neesha Chhina <NChhina@shertremonte.com>, Michael Tremonte <MTremonte@shertremonte.com>, Stern, Dylan (USANYE) <Dylan.Stern@usdoj.gov>, Kassner, Gillian (USANYE) <Gillian.Kassner@usdoj.gov>
**Subject:** RE: [EXTERNAL] Re: U.S. v. Watson and Ozy, 23-CR-82 (EK)

Ken,

All of the materials previously produced by Watson and Ozy are in the production we sent Friday, which you should be getting today.

Given the age of the subpoenas, the fact that prior law firms for both defendants were responding without ever raising these objections, and the Court's decision to set a motion schedule in spite of our initial request to allow more time for negotiation, we think it makes sense to move forward with our motion to compel.  But if you would like to put your specific concerns in writing, along with a proposal for resolving the issue, we will consider them.  And you of course can address your concerns in your opposition to our motion to compel or in a cross-motion to quash.

We would also be interested in your view on whether a Curcio hearing is necessary given your representation of Watson for purposes of the subpoena response, and if so, who you think would be the right person to waive any conflict on behalf of Ozy.

Best,
Jon


Jonathan Siegel

Assistant United States Attorney

Eastern District of New York

271A Cadman Plaza East

Brooklyn, New York 11201

Tel: 718-254-6293

Email: Jonathan.Siegel@usdoj.gov

---

**From:** Kenneth Montgomery <ken@kjmontgomerylaw.com>
**Sent:** Saturday, April 29, 2023 7:41 AM
**To:** Siegel, Jonathan (USANYE) <JSiegel@usa.doj.gov>
**Cc:** Noam Biale <NBiale@shertremonte.com>; Justine Harris <JHarris@shertremonte.com>; Neesha Chhina <NChhina@shertremonte.com>; Michael Tremonte <MTremonte@shertremonte.com>; Stern, Dylan (USANYE) <DStern1@usa.doj.gov>; Kassner, Gillian (USANYE) <GKassner@usa.doj.gov>
**Subject:** [EXTERNAL] Re: U.S. v. Watson and Ozy, 23-CR-82 (EK)

Good morning Jon, Gillian, and Dylan:

I'm writing to you on behalf of Ozy Media regarding the subpoena you served on my client and Carlos Watson in his capacity as a corporate custodian.  Please be advised that Mr. Watson has designated my firm as custodian to respond to both subpoenas.

I'm coordinating with Sher Tremonte to use the data vendor that they are in the process of retaining for this purpose. I cannot begin until you reproduce what Ford O'Brien previously produced so we can de-dupe that material with the material we have. You indicated you would do that at the last court conference – do you have an estimate of when we will get that material?

In addition, I have concerns about the scope of both subpoenas in terms of date range, overbreadth, particularity, and compliance with 28 C.F.R. § 50.10.  I am hopeful we can discuss narrowing the scope in a way that makes Ozy's response less burdensome and more reasonable while still addressing your concerns.  Happy to set up a time to talk next week to talk through it all. I am picking a jury all week but am available around 1 pm most days and after 5 pm.

kenneth@kjmontgomerylaw.com
198 A Rogers Ave
Brooklyn, New York 11225
(718) 403-9261 Telephone
(614) 455-9261 Facsimile
www.kjmontgomerylaw.com

This electronic mail message is privileged and confidential and is intended only for the use of the person(s) to whom it is addressed. If you are not the addressee, copying, disclosure or other use of this message and its contents are prohibited by applicable law. If you have received the message in error, please advise us by reply e-mail to kenneth@kjmontgomerylaw.com and delete the message.

Because Internet e-mail and attachments can be altered electronically, the integrity of this communication cannot be guaranteed.

On Fri, Apr 21, 2023 at 1:44 PM Siegel, Jonathan (USANYE) <Jonathan.Siegel@usdoj.gov> wrote:

> All,
>
> Please see the attached discovery letter. The materials have been uploaded to USAfx, and you should be getting an invite to the folder shortly.  If you don't get the invite or if you have any trouble downloading anything, please reach out to Jake Menz, who should be able to help.
>
> Thank you.
>
> Best,
> Jon
>
> Jonathan Siegel
> Assistant United States Attorney
> Eastern District of New York
> 271A Cadman Plaza East
> Brooklyn, New York 11201
> Tel: 718-254-6293
> Email: Jonathan.Siegel@usdoj.gov

EXHIBIT C

| Volume | Date | Documents |
|---|---|---|
| SR-DOJ-000011 - SR-DOJ-000012 | 01.05.2022 | 2 |
| Vol 01 USAO-EDNYOZY000000001-USAO-EDNYOZY000000164 | 04.21.2023 | 27 |
| Vol 02 EDNYOZY000000001-EDNYOZY000375893 | 04.28.2023 | 76,632 |
| Vol 03 (EDNYOZY000375894-EDNYOZY000376035 & SEC-DOJ-EPROD-000000001-SEC-DOJ-EPROD-001767301) | 05.05.2023 | 119,077 |
| FILTER 2023.06.14 Production | 06.14.2023 | Unknown; could not extract |
| Vol 04 EDNYOZY000376036-EDNYOZY003408051 | 06.30.2023 | 786,295 |
| Vol 05 USAO-EDNYOZY000000168-USAO-EDNYOZY000000169 | 07.11.2023 | 2 |
| Vol 06 USAO-EDNYOZY000000170-USAO-EDNYOZY000000240 | 07.12.2023 | 33 |
| Vol 07 EDNYOZY003408052-EDNYOZY003416203 | 07.13.2023 | 2,330 |
| Vol 08 EDNYOZY003416204-EDNYOZY003420143 | 09.19.2023 | 348 |
| FILTER 2023.10.25 Production | 10.25.2023 | 421,776 |
| Vol 09 EDNYOZY003420144-EDNYOZY003793059 & FILTER 2023.11.14 Production | 11.14.2023 | 421,398 |
| Vol 10 USAO-EDNYOZY000000244-USAO-EDNYOZY000000252 | 01.17.2024 | 210,570 |
| FILTER 2024.01.30 Production | 01.30.2024 | 51 |
| Vol 11 USAO-EDNYOZY000000254-USAO-EDNYOZY000000612 | 03.07.2024 | 8 |
| Vol 12 (EDNYOZY003793060-EDNYOZY003793099; SEC-DOJ-EPROD-001767302-SEC-DOJ-EPROD-001768418; USAO-EDNYOZY000000613) | 03.13.2024 | 45,673 |
| Vol 13 USAO-EDNYOZY000000615-USAO-EDNYOZY000000617 | 03.28.2024 | 1 |
| Vol 14 EDNYOZY003793100-EDNYOZY003797399; USAO-EDNYOZY000000618-USAO-EDNYOZY000000619-USAO-EDNYOZY000000726-USAO-EDNYOZY000000733 | 04.11.2024 | 410,067 |
| Vol 15 (04.13.2024) Preliminary 3500 Material | 04.13.2024 | 1290 |
| Vol 16 (04.18.2024) Supplemental 3500 Material | 04.13.2024 | 14 |
| Vol 17 (05.03.2024) Supplemental 3500 Material | 05.03.2024 | 46 |
| Vol 20 (05.17.2024) Supplemental 3500 Material | 05.17.2024 | 57 |
| Vol 21 (05.24.2024) Supplemental 3500 Material | 05.24.2024 | 4 |
| Vol 22 (05.26.2024) Supplemental 3500 Material | 05.26.2024 | 4 |
| Vol 23 (05.28.2024) Supplemental 3500 Material | 05.28.2024 | 1 |
| Vol 24 (05.28.2024) Supplemental 3500 Material | 05.28.2024 | 9 |
| Vol 25 (06.11.2024) Supplemental 3500 Material | 06.11.2024 | 2 |

| | | |
|---|---|---|
| Vol 26 (06.12.2024) Supplemental 3500 Material | 06.12.2024 | 2 |
| Vol 27 (06.20.2024) Supplemental 3500 Material | 06.20.2024 | 2 |
| | | **2,495,721** |