4549

1          UNITED STATES DISTRICT COURT
           EASTERN DISTRICT OF NEW YORK
2    - - - - - - - - - - - - - - X
                                :
3                               :
                                :
     UNITED STATES OF AMERICA,  :    23-CR-82(EK)
4                               :
                                :
5         -against-             :    United States Courthouse
                                :    Brooklyn, New York
6                               :
                                :
     CARLOS WATSON and OZY      :
7    MEDIA, INC.,               :    July 15, 2024
                                :    9:30 a.m.
8              Defendants.      :
                                :
9    - - - - - - - - - - - - - - X

10        TRANSCRIPT OF CRIMINAL CAUSE FOR JURY TRIAL
           BEFORE THE HONORABLE ERIC R. KOMITEE
11              UNITED STATES DISTRICT JUDGE

12

13              A P P E A R A N C E S :

14

     For the Government:  BREON PEACE, ESQ.
15                        United States Attorney
                          Eastern District of New York
16                           271-A Cadman Plaza East
                             Brooklyn, New York 11201
17                        BY: JONATHAN SIEGEL, ESQ.
                             GILLIAN KASSNER, ESQ.
18                           DYLAN A. STERN, ESQ.
                             Assistant United States Attorneys
19

20   For the Defendant    RONALD SULLIVAN LAW FIRM PLLC
     Carlos Watson:          1300 I Street NW, Suite 400E
21                           Washington, D.C. 20005
                          BY: RONALD S. SULLIVAN, ESQ.
22                           JANINE I. GILBERT, ESQ.

23

     For the Defendant    SHANNON FRISON, ESQ.
24   OZY Media, Inc.:        75 State Street, Suite 100
                             Boston, Massachusetts 02109

25

Proceedings                                    4550

1  REPORTED BY:

2  Jamie Ann Stanton, RMR, CRR, RPR
   Official Court Reporter
3  jamiestanton.edny@gmail.com

4  Proceedings recorded by computerized stenography.  Transcript produced by
   Computer-Aided Transcription.

5

6

7                    *     *     *     *     *

8            (In open court; jury not present.)

9            THE COURT:  We are going to bring the jury in as

10  soon as we know they are all assembled and as soon as I can

11  dig the robe out of the robing room, which is locked.

12  That's the update.  And Mr. Siegel got a haircut.  We're

13  waiting on one juror, is the update.

14            (Pause.)

15            THE COURT:  We are going to bring in the jury.

16            MR. SIEGEL:  Your Honor, and Mr. Jackson, before

17  we bring in the jury and set them up, it might make sense

18  for Mr. Jackson to just check the computer to make sure it

19  didn't like log off or anything.

20            THE COURT:  We can bring the jury in.  You can

21  check the laptop while they are here.

22            MR. SIEGEL:  Just so we don't get the log-in issue

23  that we talked about last week.

24            THE COURT:  Well said.

25            THE COURTROOM DEPUTY:  So I will bring them in,

Proceedings                    4551

1   and then I will check once they leave.

2          THE COURT:  Perfect.

3          (Jury enters.)

4          THE COURT:  Please be seated, everyone.

5          Ladies and gentlemen of the jury, Good morning.

6          THE JURORS:  Good morning.

7          THE COURT:  Hope you all had a relaxing and

8   restful weekend.  Now that all of you are here, you are a

9   jury again and we will have you retire to the jury room to

10  resume your deliberations.  Thank you.

11         (The jury retired to recommence deliberations at

12  9:50 a.m.)

13         (Jury exits.)

14         THE COURT:  I have an unrelated proceeding at

15  10:30.  I am not sure how long that will last.  It is a

16  criminal case to the extent that's relevant to people's

17  determinations of what they leave on the tables, but we will

18  keep you posted.  Stay close.

19         MR. SIEGEL:  Thank you, Your Honor.

20         (Court in recess, awaiting verdict of the

21  jury.)

22         (In open court; jury not present.)

23         THE COURT:  So everybody's here, we are back on

24  the record.

25         We have a jury note, which has been marked as

Proceedings                                    4552

1   Court's Exhibit 15, one-five, which calls for two categories

2   of testimony.  Number one, Carlos Watson, day three

3   testimony, July 3, 2024, regarding GS call with

4   Mr. Sullivan.  And two, Carlos Watson testimony July 8,

5   2024, redirect, Mr. Siegel, all events leading up to call.

6           Mr. Siegel was conducting cross-examination, not

7   redirect, but I think we know what this means.

8           The parties should reach agreement as soon as

9   possible on everything that is responsive to this note and

10  everything that is not and we'll send it back when you

11  agree, or if in the unlikely event that there is anything

12  that the Court needs to iron out, you will let us know that.

13          MR. SIEGEL:  Thank you, Your Honor.

14          MR. SULLIVAN:  Thank you.

15          THE COURT:  Thank you all.

16          We are back off the record in United States versus

17  Watson.

18          (Court Exhibit 15 received in evidence.)

19          (Recess taken.)

20          THE COURT:  We are back on the record in United

21  States versus Watson.

22          I understand there is some question?

23          MR. SIEGEL:  So there's, I think, just three

24  issues that we wanted to raise for the Court.

25          So the first is there's a dispute about whether to

Proceedings                                    4553

1    include Ms. Frison's examination of Mr. Watson.  The

2    Government's view is that the note specifically asks for

3    Mr. Sullivan and Mr. Siegel's areas; however, I understand

4    the defense has a different view, so I'll let them give

5    their position on that.

6             MS. GILBERT:  Yes.  Let me just turn on the mic.

7             Yes, Your Honor.

8             It's our position that, first of all, they

9    requested testimony regarding the Goldman Sachs call.  And

10   although they say with Mr. Sullivan and then they say

11   redirect, all events leading up to the call, Ms. Frison is

12   the one who actually did do a, what they may have thought

13   was a redirect, regarding the events leading up to the call

14   with Mr. Watson.  It seems clear that they want the

15   testimony regarding the Goldman Sachs call.  It is possible

16   that they forgot that Ms. Frison did actually do a direct --

17   excuse me, a cross-examination regarding the Goldman Sachs

18   call, because it kept getting interrupted and it was brief.

19            So it's our position that since they seem to be

20   asking for the testimony regarding the Goldman Sachs call,

21   that we should respond with the testimony regarding the

22   Goldman Sachs call.

23            THE COURT:  Yes, my recollection is that

24   Ms. Frison's inquiries regarding the Goldman Sachs call were

25   interrupted with some frequency by objections and the reason

Proceedings                              4554

1    for those objections was that the testimony she was seeking

2    to elicit was both duplicative of testimony that

3    Mr. Sullivan had already elicited, point one, and also, a

4    minimal, at best, reference to her client, her personal

5    client, point two.

6              But even setting all of that aside, I do think

7    this note is clear in that it identifies, by name, the

8    lawyers whose examinations the jury is seeking, and

9    Ms. Frison's name is not included.  So that testimony we

10   will not send back.

11             What are the other issues?

12             MR. SIEGEL:  The other -- so the second issue is

13   on Mr. Sullivan's direct.  It asks for testimony regarding

14   the Goldman Sachs call, so the dispute is at a certain

15   point, Mr. Watson's testimony then goes into the things he

16   did after the Goldman Sachs call, for example, calling

17   investors, having a board meeting.  And then it continues

18   even further to how they later have a search for a CFO to

19   replace Mr. Rao.

20             The Government's view is that really the note says

21   regarding the Goldman Sachs call, so all the things that

22   happened after that, the calling the investors, the board

23   meeting, those are not responsive.  But, in particular,

24   things of, you know, over the coming months that they had a

25   CFO search, that that would not be responsive.

Proceedings                            4555

1        THE COURT:  The CFO search seems to me, and I am

2   going to hear from defense counsel in a moment, but the CFO

3   search seems to me to be very much far afield from the call.

4   The immediate aftermath, like things that happened that day,

5   may be a closer call.  Although, in that regard, the jury

6   has demonstrated to us that they clearly know how to ask for

7   the lead-up to the call as distinct from the call itself.

8        MS. GILBERT:  Yes, Your Honor.

9        THE COURT:  And that would suggest that if they

10  wanted the aftermath of the call --

11       MS. GILBERT:  Exactly, which was going to be my

12  argument.  With respect to Mr. Sullivan's direct of

13  Mr. Watson, it is clear that they want testimony regarding

14  the Goldman Sachs call, which would suggest the --

15  everything related to the call.  Meaning the call, itself --

16  the things leading up to the call, the call itself and the

17  aftermath of the call.

18       THE COURT:  Where is the --

19       MS. GILBERT:  The aftermath of the call which

20  included all of the activities related to what happened

21  after the call.

22       THE COURT:  The CFO search is out.

23       MS. GILBERT:  But, Your Honor, the CFO search --

24       THE COURT:  Show me, show me where in the

25  transcript we are talking about the immediate aftermath

Proceedings                              4556

1    call?

2              MR. SIEGEL:  Your Honor, just to make clear, the

3    break, the Government would end it at page 3173, line 13.

4              MS. GILBERT:  And we would end it at page 3188.

5              Your Honor, it is --

6              THE COURT:  Just give me a minute to read this,

7    and then I will come back to you.

8              MR. SIEGEL:  And just for the record, I had handed

9    up a copy of the transcript with the redactions that, other

10   than what I am raising, we are basically agreed on.

11             THE COURT:  So there's a lunch break in between.

12   And obviously, we're going to redact all the colloquy

13   amongst the lawyers.

14             So the disputed testimony picks up on page 3177?

15             MR. SIEGEL:  That's right.

16             THE COURT:  I had gone to take a walk -- oh, you

17   had gone to take a walk.  You come back.  You headed out a

18   second time with Samir.  That's where we left off.  Why

19   didn't you just fire him on the spot?

20             That's not testimony regarding the call.  And it's

21   not testimony regarding all events leading up to the call.

22             MS. GILBERT:  Sorry, Your Honor, that is testimony

23   regarding the call.

24             THE COURT:  I think this is testimony regarding

25   the aftermath of the call and that --

Proceedings                                          4557

1          MS. GILBERT:  Yes.

2          THE COURT:  -- I say again, the jury did not ask

3    specifically for the aftermath of the call --

4          MS. GILBERT:  Your Honor --

5          THE COURT:  -- and I read, if I can finish my

6    sentence, please, without interruption, I read the part two

7    of this note in which the jury asks for events leading up to

8    the call --

9          MS. GILBERT:  That's for the Government's

10   testimony.

11         THE COURT:  If I can finish my sentence without

12   repeated, repeated interruption, Ms. Gilbert.  Please let me

13   finish my sentence without interrupting me constantly.

14         What I was trying to say was that the jury's

15   decision in this note to indicate that they want the events

16   leading up to the call indicates that they understand

17   clearly how to distinguish the call itself, on the one hand,

18   from the lead-up to the call, and things like the aftermath

19   of the call, on the other hand.  And so therefore,

20   Ms. Gilbert, I do not see this testimony about what happens

21   after the call as testimony regarding the GS call.

22         MS. GILBERT:  Your Honor, and we respectfully

23   disagree because, in fact, the jury said testimony regarding

24   the Goldman Sachs call.  And they distinguished that from

25   what they were requesting from Mr. Siegel's

Proceedings                                    4558

1  cross-examination, which was testimony regarding all events

2  leading up to the call.

3         So it seems to me that with respect to the direct

4  testimony, they were, in fact, requesting all testimony

5  regarding the Goldman Sachs call, which would be the

6  lead-up, the call itself, as well as the aftermath, versus

7  what they wanted from the cross-examination, which would be

8  the testimony of all events leading up to the call.  So we

9  respectfully disagree.

10        THE COURT:  Okay.  What is the testimony, if any,

11 regarding the time lapse between hanging up on the Goldman

12 call and calls to, for example, Marc Lasry?

13        MS. GILBERT:  Your Honor, with respect to the

14 testimony -- I mean, that's all in these pages, which I

15 thought you said you just read, but --

16        THE COURT:  What is the testimony, I say again,

17 regarding how much time elapsed?  Is there an answer to that

18 question?  And, if so, can you point me to it?

19        MS. GILBERT:  Well, give me a moment as I look

20 through the testimony so I can point you to the lines.

21        So on page 3179 -- sorry, starting at the bottom

22 of 3178 --

23        THE COURT:  I read this already.  I don't see a

24 time lapse.

25        I am asking a specific question, here, which is:

Proceedings                                    4559

1    Is there an answer to the question of how much time elapsed?

2            MS. GILBERT:  I don't think at this particular

3    point he says exactly the amount of time that elapsed.  He

4    talks about what he did first, what he did next, and so on.

5            THE COURT:  Then he goes into how he spoke to

6    Michael Moe who actually helped me sell my first company so

7    I had known him for 20 or 25 years.

8            MS. GILBERT:  First it was Marc Lasry.

9            THE COURT:  Right.

10           Yeah, I think we are going to give the jury what

11   they have asked for.

12           MS. GILBERT:  And it's our position that they

13   asked for this.

14           THE COURT:  I understand that.  You've made that

15   clear on three occasions now.

16           MS. GILBERT:  Yes.

17           THE COURT:  And we respectfully disagree.

18           All right.  So what else is there?

19           MR. SIEGEL:  Your Honor, and so what you see

20   marked in red are the redactions.  I think there's one thing

21   that we have redacted that the defense disagrees with.  I

22   don't have the page and line number.

23           MS. GILBERT:  It's 3169.

24           THE COURT:  3169.

25           MS. GILBERT:  It's the last question.  It starts

Proceedings                    4560

1    at line 22.  And the objection, I believe -- actually, the

2    objection was stated halfway through the response of the

3    question, which is, why it is after, but I -- and the Court

4    sustained it and it's our position that that objection --

5    and that you sustained the objection as to what Mr. Watson

6    was testifying when he said:  He told me later on that he

7    hadn't seen -- that he hadn't seen them.

8            So it's our position that from line 22 on

9    page 3169 through line 3 on page 3170, up to, stopping at,

10   after the word "respond," that should remain in.  And after

11   the word "respond," should be redacted:  And he told me

12   later on that he hadn't seen them.

13           THE COURT:  I think we should include -- or I

14   think the Government should tell me, specifically, why we

15   should not include 3169, lines 22 through 25, period.

16           MR. SIEGEL:  Your Honor, in terms of the:  He

17   didn't look at my texts.

18           THE COURT:  Oh, he's speaking to?

19           MR. SIEGEL:  He's speaking to Mr. Rao's, you know,

20   what Mr. Rao did, and he had previously testified that he

21   wasn't able to really see what Mr. Rao was doing.

22           At the end of this, after we object and the Court

23   sustains it, Mr. Sullivan rephrases the question, and that's

24   at line 10 of 3170.

25           So you sent him the text and did he respond to

Proceedings                                      4561

1    your texts, and then Mr. Watson gives an answer to which

2    there is no objection.

3              THE COURT:  Which covers the same --

4              MR. SIEGEL:  Which covers the same topic.

5              THE COURT:  All right.  I agree that this should

6    be redacted as well.

7              Anything else?

8              MR. SIEGEL:  The only question -- I don't think

9    this is --

10             MS. GILBERT:  Well, Your Honor, that also redacts:

11   After you gave him the cut sign and attempted to -- it's our

12   position that if you want to redact, then redact at least

13   from -- it's from line 1 on page 3170.  3169, 22 to 25,

14   should be in.  There is no -- there is nothing objectionable

15   about that.  And he was in the room with Mr. Rao.  He

16   testified to that.

17             THE COURT:  Where does he say I wasn't able to see

18   what he was doing on his phone?  Mr. Siegel?

19             MR. SIEGEL:  It's earlier on.  Just one moment,

20   Your Honor.

21             MS. GILBERT:  Not being able to see what they're

22   doing is different from not being able to see whether he

23   looked at texts.  They are two different things.

24             THE COURT:  Not being able to see what someone is

25   doing on their phone?

1        MS. GILBERT:  Meaning, you may not be able to see

2   what I'm doing on my phone like this, but you can see if I

3   look at a text.

4        MR. SIEGEL:  So Your Honor, on page 3167, lines 3

5   to 4, Mr. Watson testified:  It wasn't clear to me whether

6   he was on a phone or on a computer.

7        THE COURT:  So he doesn't even know that he is on

8   the phone.

9        MS. GILBERT:  Speaking on the phone or on the

10  computer.

11       THE COURT:  All right.  This text outlined in red

12  will be redacted --

13       MS. GILBERT:  Unbelievable.

14       THE COURT:  -- for all the reasons we've discussed

15  here.

16       MR. SIEGEL:  Your Honor, I think the only

17  remaining question and I don't think this is a dispute, this

18  is just the Court's preference, there are some pages where

19  the pages are redacted --

20       THE COURT:  Hold on a second.

21       Ms. Gilbert, I think you just said the word

22  "unbelievable," is that?

23       MS. GILBERT:  Yes, I did.

24       THE COURT:  Okay.  I just want the record to be

25  clear on that.

Proceedings                                    4563

1          MS. GILBERT:  Yes.  I'm happy to say it again.

2          THE COURT:  Mr. Siegel?

3          MS. GILBERT:  I'm not sure why we're

4    participating.

5          THE COURT:  Mr. Siegel?

6          MR. SIEGEL:  There are some pages that the entire

7    page is redacted and it's just a question of preference for

8    the Court if you would prefer us to just omit those pages or

9    keep them in as redacted, so that the jury knows there

10   aren't missing pages?

11         THE COURT:  I have no preference.

12         MR. SIEGEL:  Then unless the defense has a strong

13   view, it's easier to just print it as it is with some pages

14   all redacted.

15         THE COURT:  That's fine with me.  Okay.

16         MS. GILBERT:  As opposed to?

17         MR. SIEGEL:  So we will apply the redactions and

18   send them to Mr. Jackson and he can print them out, both

19   sides can give them one final look and then we can send it

20   back.  But I think other than that we are agreed.

21         THE COURT:  Thank you.  Sounds like we have a

22   plan.

23         (Recess taken.)

24         THE COURT:  I think we are all here now.  We are

25   back on the record in United States versus Watson.

Proceedings                                          4564

1          We do not have a jury note.

2          I called the parties back in an effort to see you

3    in advance of the proceeding I had on for 2:30 to say the

4    following:  Ms. Gilbert, there was yet another flare-up of

5    sorts during the discussions we had before the break.  The

6    parties brought it to my attention that they had disagreed

7    on whether certain testimony should be sent back to the jury

8    in response to the jury note we got, that's the testimony at

9    the bottom of page 3169 and on to page 3170.

10          And by way of setting the stage here, I'll just

11   note that this testimony we are talking about is testimony

12   that all came in the form of a single answer to a single

13   question in which that answer was followed by an objection,

14   and that objection was sustained.

15          And I am sure I don't need to tell anybody in this

16   room that the default rule, to say the least, is that

17   testimony that is the subject of, or even followed by, a

18   sustained objection is excluded from the record.

19          Ms. Gilbert was making an argument that that

20   default rule should not apply here because, in her view, the

21   objection was to somewhat less than the full answer that was

22   provided.  I listened to that objection.  We had some back

23   and forth between the parties.  I considered the defense

24   position, and ultimately did not agree with it.  And that

25   was the point at which Ms. Gilbert interjected with the

1    improper commentary that the record will reflect.

2            That's been a recurring theme throughout this

3    trial, together with other themes.

4            Theme number one, as you know, is what I've

5    described as the defense disregard for the operation of the

6    Federal Rules of Criminal Procedure and for Court-ordered

7    deadlines.  There is more to say on that issue, but I

8    discussed that issue at some length in my order excluding

9    Ms. Watson's testimony.  There is the theme of the defense

10   belligerence in the manner in which it has addressed the

11   Court that's been discussed, as you know, on the record, as

12   well.  And then finally, we have the candor to the Court

13   issues that have been the subject of some colloquy back and

14   forth.

15           I have given warnings to the defense throughout

16   this case on these issues.  And I will just observe, for the

17   record, that as to what happened today, just before the

18   break, no warning should be required.  Nevertheless, in an

19   abundance of caution, and based on the Second Circuit's

20   guidance in the *Doral Produce* case, I think, from 2003,

21   among others, District Courts are required to provide an

22   opportunity to be heard before imposing any contempt

23   sanctions.

24           I have a proceeding set to start now.  I was

25   hoping to start it at 2:30, but Ms. Gilbert, if you want to

Proceedings                                    4566

1    be heard on the contempt question as to what happened today,

2    I would invite you to put in a letter of three pages or less

3    by the close of business tomorrow.

4              That's all I have to say on that subject.

5              On the subject of staying close, two things, which

6    are, one, please stay close.  I understand that people have

7    to get lunch and that sometimes that can be far from the

8    courthouse, but we do have a fully functioning cafeteria

9    here and that may help with people getting back to us in a

10   more timely way so that other hearings, like the one that

11   people are waiting for in the audience right now, don't have

12   to wait for an extended period of time while we assemble all

13   the lawyers in this case.  And the second request, when the

14   Court's deputy calls, please provide an estimate that is as

15   accurate as you can make it as to how long it will actually

16   take for people to get back.  I am advised that Mr. Jackson

17   called Mr. Watson's counsel at 2:22, and was advised that

18   counsel was ten minutes out.  We didn't get started until

19   closer to 2:45.

20             Again, I am not requiring precision and perfection

21   here, but it will help us to know in the management of my

22   calendar how long it will actually take people to get back.

23             All right.  Thank you all.  That concludes this

24   episode.

25             And let's call the next case, please.

Proceedings                          4567

1          MS. GILBERT:  Your Honor, I have a question.

2          THE COURT:  Yes.

3          MS. GILBERT:  With respect to the contempt that

4    you are considering, I assume you are only considering with

5    respect to the "unbelievable" comment?

6          THE COURT:  I mean, I do think --

7          MS. GILBERT:  Since I was not on the defense team

8    for the other piece that you mentioned?

9          THE COURT:  Well, you were on the defense team

10   five minutes before the "unbelievable" comment, when I had

11   to ask you multiple times to please stop shouting --

12         MS. GILBERT:  I was not shouting at any point

13   during the proceeding.

14         THE COURT:  -- at the Court.  We are going to

15   preserve the audio from today's proceedings as we have --

16         MS. GILBERT:  Please.  I would ask that it be

17   preserved as well.

18         THE COURT:  And the interruptions as well, I think

19   we were talking about moments before the episode in question

20   today.

21         But no, I do think it's incumbent on me,

22   obviously, this contempt will be found or not found based on

23   this episode, but if I am to impose a sanction, then I would

24   think the scope of the sanction should be informed by the

25   broader issues that we have discussed throughout this case.

1    And I am not suggesting that you should be held responsible

2    for anything that any other lawyer did, but I do think it's

3    fair to say that you and I have had some conversations along

4    these lines during the course of the case as well.  And I'll

5    leave it at that.

6            MS. GILBERT:  Yes.

7            THE COURT:  Thank you, all.

8            MS. GILBERT:  I'm just asking, though, you

9    mentioned related to the -- related to the -- the discovery

10   issues, you mentioned that as one of the things --

11           THE COURT:  That was background.  I do think your

12   name comes up in that order from time to time, but I am

13   not -- I have already indicated that contempt was something

14   that we needed to discuss in the aftermath of this case

15   along with the Rule 23.1 issues that have been the subject

16   of so much colloquy back and forth.  I'm not purporting to

17   resolve all of those today or tomorrow, so you can, I think

18   you can confine your response to what transpired today, and

19   we'll proceed accordingly.

20           MS. GILBERT:  Okay.

21           THE COURT:  Thank you.

22           MS. GILBERT:  And how soon will I be able to get

23   the audio for the?

24           THE COURT:  You will have a transcript.  I am

25   asking you about the --

1          MS. GILBERT:  I would also like the audio.

2          THE COURT:  -- improper interjection.

3          But, yes, we will preserve the audio.  You may or

4    may not have it before you respond tomorrow and you should

5    assume that the volume issues are not part of this order.

6    You will have a transcript.

7          MS. GILBERT:  Okay.

8          THE COURT:  Thank you.

9          (Court in recess, awaiting verdict of the jury.)

10          (In open court; jury not present.)

11          THE COURT:  Everyone, we are back on the record in

12    the United States versus Watson.

13          (Court Exhibit 16 received in evidence.)

14          We have a jury note which has been marked Court's

15    Exhibit 16.  It's titled:  Request.  Transcript - pages

16    approximately 1560 to 1590 testimony - Tripti Thakur,

17    T-H-A-K-U-R.  Signed by the foreperson.

18          Is that range, 1560 to 1590, in fact, Ms. Thakur's

19    testimony?

20          MR. SIEGEL:  I believe it is, but we're pulling it

21    up right now.

22          THE COURT:  I will be, I think, returning to

23    Chambers, which is a three-minute walk from here.  And I

24    think that if you all agree on what should be sent back,

25    especially if it's pages 1560 through 1590, you may not need

Proceedings                    4570

1   me.  Well, get me one way or another so we can make a record

2   on what's going back.  Thank you.

3          (Recess taken.)

4          THE COURT:  I think step one is to bring the jury

5   in and to let them go, and then step two will be to sort

6   through these issues.

7          So can we bring in the jury?

8          (Jury enters.)

9          THE COURT:  Please be seated, everyone.

10         Ladies and gentlemen of the jury, we are going to

11  let you go for the evening now.  We were all working away on

12  the last transcript request we got and lost track, to some

13  degree, of the time.  I do mean to let you go at 5:15 on

14  every day unless there is some specific reason not to.  So

15  thank you for communicating with me that it was time to go.

16         We will ask you to have a restful evening, not do

17  any research, not discuss the case with anybody, including

18  even each other when you are outside the jury room and

19  unless everyone is present.  Obviously, any impropriety you

20  should report to Mr. Jackson.  We don't expect that that

21  will happen, but that is something we will always remind you

22  of.

23         And apart from that, we wish you a good and

24  restful evening.  Thank you.

25         (Jury exits.)

Proceedings                    4571

1        THE COURT:  So there is a question about Court's

2   Exhibit 16?

3        MR. SIEGEL:  Yes, Your Honor.

4        So as you know, the note requests approximately

5   pages 1560 to 1590.  Ms. Thakur's testimony begins on

6   page 1556.  It ends at page 1636.  So the dispute between

7   the parties is how soon to cut it off.

8        The Government's view is that the reason they are

9   giving these specific page numbers, even though they've

10  never seen the transcript, is that they are looking at

11  things that were cited in the parties' closings.  In

12  particular, the Government did cite page 1560, which is

13  their first number in their range and did cite several pages

14  in the 1580s, which is about the e-mail that she sent.  We

15  also cited pages in the 1600s from Ms. Thakur, which they

16  did not ask for.

17       So the Government's view is that what we should

18  basically do is add some amount of error bars on this range

19  that they gave us.  So start at page 1556, which is the

20  beginning of her testimony and it's four pages earlier than

21  what they asked for, and end at page 1595, which is the end

22  of the discussion of the e-mail which is what she's in the

23  middle of discussing at page 1590.

24       THE COURT:  Let me pull up the transcript.

25       And the defense wants what?

Proceedings                                          4572

1          MR. SULLIVAN:  We want 1556 through 1636, which is

2    Ms. Thakur's testimony in its entirety.

3          I will note that Court's Exhibit 17 doesn't only

4    read pages approximately 1560 to 1590.  After that, there

5    are two spaces, and then a separate writing which says:

6    Testimony, dash, Tripti Thakur.  And it is, a, and the, most

7    plausible, we submit, is that they want the testimony of

8    Tripti Thakur and they think that testimony is found

9    approximately between pages 1560 and 1590.  The Government

10   is correct that the Government mentioned 1560, specifically,

11   in closing.  They did not mention 1590, so to conclude that

12   they wanted some very specific range with the outer limit at

13   1590, is not the most consistent read of that, we submit,

14   the most consistent read in the absence of something saying

15   pages approximately 1560 to 1590 within or in or part of or

16   of the testimony of Tripti Thakur, rather, the better read

17   is we want the testimony of Tripti Thakur and we remember

18   from closing that the transcript range is approximately 1560

19   to 1590.  The actual is 1556 to 1636.  And that, we submit,

20   is most responsive.

21          The parties have already done the work redaction.

22          THE COURT:  It's not a long cross-examination,

23   right?

24          MR. SULLIVAN:  No.  So we're talking, I guess,

25   41 pages difference between what the Government asks and

Proceedings                                    4573

1   what we ask, which includes their redirect, as well.

2           MR. SIEGEL:  I will just note they asked for

3   30 pages, and so we would be sending them over 70 pages.

4           THE COURT:  I think the easiest way to do this is

5   just to send them the exact page range they ask for and if

6   they want more than that, they can come back and ask on one

7   side or the other.

8           MR. SIEGEL:  Your Honor, I think the problem -- I

9   mean, they, themselves noted that it was approximately.  So

10  I think giving them some amount of error bars at the

11  beginning and the end, so we're proposing four additional

12  pages at the beginning, only because the testimony starts

13  four pages earlier, and then five additional pages at the

14  end, just to take them to the end of the subject that's

15  being discussed at page 1590.

16          Now, certainly, if we do that, then it includes

17  both the beginning and the end of the subjects that are

18  covered in that range, but they can still ask for more, but

19  it doesn't stop in the middle of a topic.

20          MR. SULLIVAN:  And of course, we'd object to that.

21  If the Court's inclined to give them precisely what they

22  asked for, then precisely what they asked for, but it says

23  approximately, there's just no basis for them to know where

24  it begins and where it ends except a couple references in

25  closing.  It's plausible that they thought they represented

Proceedings                          4574

1    the approximate range of Tripti Thakur's testimony, so.

2              THE COURT:  A lot of things are possible.  I think

3    if they wanted her testimony in its entirety, that would

4    have been extremely easy for them to ask for.  They could

5    have just said give us Tripti Thakur's testimony period.

6              MR. SULLIVAN:  It does say:  Testimony, Tripti

7    Thakur.

8              THE COURT:  I understand, but they also add that

9    they want transcript pages approximately 1560 to 1590.

10             So let's begin with pages 1560 to 1590 and see

11   what they follow up with, if anything.

12             MR. SIEGEL:  Okay.

13             THE COURT:  And most likely, given the

14   Government's preference to a bunch of pages in the 1580s in

15   closing argument, if that's what you are telling me

16   happened, I think it is the most likely, the most plausible

17   reading of this, that they're looking for a range that would

18   subsume those transcript citations that were offered up to

19   them in that way.

20             MR. SIEGEL:  So we will just prepare page 1560 to

21   1590.

22             THE COURT:  Ready to go in the morning.

23             And I will think overnight about whether I should

24   be providing any additional specific instructions to the

25   jury about how to ask for transcript excerpts and I welcome

Proceedings                                    4575

1    input from all of you on that subject, as well.

2            MR. SIEGEL:  Your Honor, the one thing that we

3    would ask is that since this will be happening right at the

4    beginning of the day when, assuming we follow the same

5    protocol, you will be bringing them in, to tell them that we

6    are giving them exactly pages 1560 to 1590, but, of course,

7    when they read that, if they want something more, they can

8    just ask for that.

9            THE COURT:  I may well say that.  I think that

10   would be fairly straightforward, in fact.  All right.  I

11   think that's it for the day.  Thank you all.

12           MR. SIEGEL:  Your Honor, 9:30 tomorrow.

13           THE COURT:  9:15 for the lawyers.  9:30 for the

14   jury.

15           MR. SIEGEL:  Thank you, Your Honor.

16       (Matter adjourned to Tuesday, July 16, 2024, 9:30 a.m.)

17              *         *         *         *

18

19

20

21

22

23

24

25

4576

1                    <u>I N D E X</u>

2                  E X H I B I T S

3

4

5      Court Exhibit 15                           4552

6

7      Court Exhibit 16                           4569

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25