

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

DCP:JRS/DAS/GK                                *271 Cadman Plaza East*
                                                          *Brooklyn, New York 11201*

July 16, 2024

By Hand and ECF

The Honorable Eric R. Komitee
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

              Re:       United States v. Carlos Watson and Ozy Media, Inc.
                         Criminal Docket No. 23-82 (EK)

Dear Judge Komitee:

              The government respectfully submits this letter in support of its motion to remand
the defendant Carlos Watson following his conviction on all counts of the indictment.  Pursuant
to 18 U.S.C. § 3143(a), a convicted defendant "shall" be ordered detained unless the defendant
shows "by clear and convincing evidence that the person is not likely to flee or pose a danger to
the safety of any other person or the community if released."  It is difficult to see how such a
showing could be made under the facts of this case.  The defendant has now been convicted of
engaging in a massive fraud and now faces a mandatory-minimum sentence of two years and an
estimated Guidelines sentence of 286 to 351 months' imprisonment.  Moreover, as the Court has
already recognized, the defendant has repeatedly violated court orders, and he has also engaged
in obstructive conduct and perjury.  In the alternative, should the Court not order the defendant
detained, the government respectfully submit that additional stringent conditions of bail should
be imposed.

I.        Factual Background

              A.        The Offenses of Conviction

              As proven at trial, from approximately 2018 to 2021, Watson directed a scheme to
defraud investors in and lenders to Ozy of tens of millions of dollars.  Watson repeatedly lied
directly to investors and lenders and ordered his top employees — Samir Rao and Suzee Han —
to lie to investors and lenders, forge contracts, falsify Ozy's general ledger, and impersonate
media executives from other companies, among other things.

              Following his conviction for these offenses, the defendant faces a mandatory-
minimum sentence of two years' imprisonment for Count Three and a maximum potential

sentence of 37 years. At present, the government estimates his Guidelines range of imprisonment as follows: A base offense level of 7 pursuant to U.S.S.G § 2B1.1(a)(1), a 24-point enhancement pursuant to U.S.S.G. § 2B1.1(b)(1)(M) (loss of more than $65 million), a two-point enhancement pursuant to U.S.S.G. § 2B1.1(b)(2)(A)(i) (more than 10 victims); a two-point enhancement pursuant to U.S.S.G. § 2B1.1(b)(17)(A) (more than $1 million from a financial institution); a two-point enhancement pursuant to U.S.S.G. § 3B1.1(c) (organizer or leader); and a two-point enhancement pursuant to U.S.S.G. § 3C1.1 (obstruction of justice), for a total offense level of 39. Assuming a criminal history category of I, this would yield an initial Guidelines range of 262 to 327 months' imprisonment for Counts One and Two. Pursuant to 18 U.S.C. § 1028A and U.S.S.G. § 2B1.6, an additional 24 months' consecutive sentence is then added for Count Three, for a total of 286 to 351 months' (approximately 24 to 29 years') imprisonment.

B.      The Pre-Indictment Obstructive Behavior

From the onset of the government's investigations, Watson attempted to conceal the scheme and his role in it. After receiving grand jury subpoenas, Watson and Ozy produced some responsive materials but withheld plainly responsive documents that incriminated Watson. For example, Watson and Ozy withheld cash-note emails showing that Watson received regular updates on Ozy's true financial performance, which drastically contradicted the information Watson provided to investors. Watson and Ozy additionally withheld a resignation email that Ozy's then-CFO sent to Watson and Rao after Rao sent a falsified contract to a potential lender — which Watson had previously instructed the then-CFO to do and which she had refused to do. In the email, the then-CFO described Watson's and Rao's conduct as "illegal," a "fraud," and a "felony."

Watson's obstruction extended to attempts to tamper with witnesses and retaliate against individuals he believed were cooperating with the government's investigation. At the beginning of the investigation, Watson agreed on behalf of Ozy that Ozy would pay Rao's and Han's legal bills. As to Rao, however, Ozy required Rao to sign a document claiming that Rao had acted in good faith at all times, a claim that Watson well knew was false. For a time, Ozy did in fact pay Rao's and Han's bills. In late December 2021, however, then-counsel for Ozy spoke separately with counsel for Rao and counsel for Han and told them that Ozy would no longer pay their legal bills because it believed they were cooperating with the government's investigation. At the time of these decisions, Watson was the only executive at Ozy and the only person at Ozy with authority to make such a decision.

In January 2022, after counsel for Rao challenged the legality of Ozy's actions, then-counsel for Ozy wrote to counsel for Rao and stated that Ozy would be willing to pay Rao's legal bills only if Rao signed a second affirmation re-affirming that Rao had acted in good faith, which Rao refused to do. Later that month, counsel for Rao spoke with then-counsel for Watson, who reiterated that Ozy would not pay Rao's legal bills because of the belief that Rao was cooperating with the government.[1]

---

[1]     Rao subsequently sued Ozy in Delaware Chancery Court seeking advancement of his legal fees. The Delaware Court ordered Ozy to advance the fees, as required under Delaware

During 2022, while the investigation remained pending, Watson hired accountants to retroactively alter Ozy's books and records to increase the amount of revenue recorded.[2] Unaltered records for the years 2015 to 2018 had been requested pursuant to the outstanding grand jury subpoenas but were never produced, and defense counsel has indicated that those records are now inaccessible.

### C.      Post-Indictment Misconduct

Watson was indicted in February 2023, following which he was arrested and released on bail.  Since that time, he has engaged in a pattern of ongoing violations of the law and the conditions of his release.

First, even after indictment, Watson and his attorneys continued to obstruct the investigation by refusing the produce documents responsive to the grand jury subpoenas.  Even after the Court ultimately issued an order to compel production of materials that was directed at him personally, as well as Ozy, Watson largely ignored that order and continued to withhold documents, several of which were first produced as defense exhibits in the midst of trial, and many of which have never been produced to this day.

Second, in December 2023, in violation of the Court's protective order, Watson used discovery materials produced in this case to sue a victim in the case, Buzzfeed, and others. In particular, in his civil complaint, Watson quoted from internal Buzzfeed documents that had been produced in discovery, which was explicitly in violation of the Court's protective order.

Third, during the trial, Watson repeatedly smuggled phones into the courthouse and lied to court security officers about his possession of phones.  Even after being ordered by the Court to stop bringing phones, Watson continued smuggling in phones on at least two occasions, during which he falsely indicated that he did not have phones on him when he in fact did, and on at least one occasion he falsely told a security officer that the electronic device in his bag that was visible in the x-ray machine was a charger, when it was in fact a phone.

Fourth, after the Court issued a special order forbidding public statements about the case, Watson continued to publish a website about the case, tooblackforbusiness.org.  That website remained live for several weeks after the Court's order until the government specifically called it to the Court's attention, after which it was taken down within 24 hours.  Social media accounts for the website repeating much of the same content remain available online.

Fifth, at the end of the trial, Watson testified and flagrantly perjured himself, as the jury has now found.

---

law.  The government understands that Ozy nevertheless continued to refuse to advance Rao's legal fees and was ultimately held to be in contempt of court.

[2]      Notably, the purported revenue described in these altered financials remained well below the figures that Watson falsely claimed as the real revenue in his testimony at trial.

II.     <u>Applicable Law</u>

Pursuant to 18 U.S.C. § 3143(a)(1), "the judicial officer shall order that a person who has been found guilty of an offense and who is awaiting imposition or execution of sentence, other than a person for whom the applicable guideline . . . does not recommend a term of imprisonment, be detained, unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community."  Because a convicted defendant "is no longer entitled to the presumption of innocence" the statute places "the burden on a defendant."  <u>United States v. Madoff</u>, 316 F. App'x 58, 59 (2d Cir. 2009).

The statute thus "establishes a presumption in favor of detention."  <u>United States v. Abuhamra</u>, 389 F.3d 309, 319 (2d Cir. 2004).  "[S]uch detention promotes public safety by removing a presumptively dangerous person from the community; it also encourages general respect for the law by signaling that a guilty person will not be able to avoid or delay imposition and service of the sentence prescribed by law."  <u>Id.</u> at 320.

III.    <u>Argument</u>

For the reasons set forth below, Watson cannot meet his burden of showing by clear and convincing evidence that he is not a flight risk or a danger to the community and should therefore be detained.

First, Watson's demonstrated dishonesty and contempt for the Court's orders make it difficult to believe that he would comply with the conditions of release.  As noted above, Watson has defied the motion to compel ordered by the Court, violated the Court's protective order to file a lawsuit against a victim of his crimes and lied to courthouse security to try and sneak phones into the courthouse in violation of the Court's order.  Moreover, Watson spent five days lying under oath in an effort to avoid accountability for his crimes.  Any claim that he can now be trusted to comply with the Court's directives now rings hollow, as courts have recognized in similar circumstances.  <u>See</u> <u>United States v. Scali</u>, 738 F. App'x 32, 33 (2d Cir. 2018) ("[T]he court reasonably found that Scali's perjury conviction makes it difficult to trust his promise that he will not flee."); <u>United States v. Rahmankulov</u>, No. 21-CR-653 (05) (RA), 2023 WL 3479696, at *2 (S.D.N.Y. May 16, 2023) (denying bail following money laundering conviction and noting that defendant's demonstrated dishonesty heightened risk of flight); <u>United States v. Dupree</u>, No. 10-CR-627 (KAM), 2014 WL 12690878, at *1 (E.D.N.Y. Apr. 7, 2014) (denying bail pending appeal; court "not satisfied that Mr. Dupree would abide by any conditions of release . . . [i]n light of this past non-compliance with the conditions of his release"); <u>United States v. Nicolo</u>, 706 F. Supp. 2d 330, 334 (W.D.N.Y. 2010)(defendant's dishonest conduct demonstrates that he "could not be trusted to abide by any conditions that might be set on his release"); <u>United States v. Nouri</u>, No. 07-CR-1029 (DC), 2009 WL 2924334, at *2 (S.D.N.Y. Sept. 8, 2009) (Chin, J.) (denying reconsideration of decision to remand following fraud conviction; in light of fraudulent and obstructive conduct proven at trial and prior dishonesty with the court, "I simply do not trust him to return to court were he released").

Second, absent a decision by the Court to overturn the jury's verdict, Watson is guaranteed to be sentenced to time in prison due to the mandatory-minimum sentence, and likely

4

faces a substantial sentence given his Guidelines range of 286 to 351 months' imprisonment.  He therefore faces a strong incentive to flee.  See United States v. Zhang, 55 F.4th 141, 151 (2d Cir. 2022) ("The prospect of a severe sentence can create a strong incentive for a defendant to flee and thereby avoid that sentence."); United States v. Khusanov, 731 F. App'x 19, 21 (2d Cir. 2018) ("[E]ven if, as a practical matter, Khusanov's maximum sentence exposure were only 15, rather than 30, years' imprisonment, that would still be sufficient to provide him with a strong incentive to flee."); United States v. Williams, No. 20-CR-293 (WFK), 2020 WL 4719982, at *2 (E.D.N.Y. Aug. 13, 2020) (Guidelines range of "92 to 115 months' imprisonment" gave defendant "a strong incentive to flee").  Indeed, the Second Circuit has affirmed remanding a convicted sentence facing a significantly lower Guidelines range, holding that a range of "87-108 months' imprisonment was significant enough to provide an incentive to flee."  Scali, 738 F. App'x at 33; see also United States v. Cubangbang, No. 18-CR-601 (PGG), 2020 WL 1905591, at *5 (S.D.N.Y. Apr. 17, 2020) (denying motion for bail pending sentencing and noting that "a range of 210 to 262 months' imprisonment under the Sentencing Guidelines . . . provides [the defendant] with an obvious incentive to flee); United States v. Paulino, No. 19-CR-54 (PGG), 2020 WL 1847914, at *6 (S.D.N.Y. Apr. 13, 2020) (denying bail pending sentencing where defendant faced a "Guidelines range of 84 to 105 months' imprisonment, a potential sentence that provides an obvious incentive to flee").  Additionally, Watson's most recent financial disclosure indicates that he is insolvent and that he has no equity in his home, suggesting that the current conditions of his release (and any other financial conditions) would provide little meaningful incentive to remain.  Even assuming that disclosure, which was not supported by financial records, is accurate, the trial and surrounding events have demonstrated Watson still has access to capital, through friends, family and supporters that could be used to flee.

Third, Watson's years-long fraudulent scheme and his ongoing dishonesty indicate that he remains a danger to the community.  Danger includes the risk of economic harm, and courts have found that defendants convicted of fraud offenses may continue posing a danger where the evidence does not suggest "that [a defendant's] scruples would stand in the way of his engaging in such activity [again], if he saw an opportunity to do so and thought that it might benefit him in some way," particularly where the defendant has demonstrated a "refusal to accept any responsibility for his actions, and his utter lack of remorse for his crimes, or for the harm and suffering that he has inflicted upon others."  Nicolo, 706 F. Supp. 2d at 335-36; see also Madoff, 316 F. App'x at 59-60 (noting that danger to the community includes "pecuniary" harm).  That risk is particularly salient here, where Watson continued to raise money from investors while the government's investigation was overt using post-hoc, fraudulent financials and has testified that he believes Ozy is simply "paused" pending this case.  Tr. 3551.  When one considers that the defendant has already committed numerous crimes of dishonesty (including lying to court security officials, in violation of 18 U.S.C. § 1001, and perjury) while on bail, there is reason to believe he would continue to raise money from investors or others based on his false view that he has not committed a crime.

\*          \*          \*

Even before conviction, when Watson was presumptively entitled to bail, the Court held that as a result of Watson's repeated misconduct it was "as close to [the] point [of revoking bail] as I can possible be without actually crossing that line."  July 8, 2024 Bail Hr'g Tr. 14:19-22.  In light of both the statutory presumption of detention and the jury's finding that

Watson engaged in a massive fraudulent scheme and perjured himself in this case, the time to revoke the defendant's bail has come.

Alternatively, in the event that the Court believes the defendant's bail should be continued pending sentencing, the government respectfully submits that the conditions of the defendant's bail should be strengthened, including by imposing home confinement, electronic monitoring and increasing the financial aspects of the bail so it is secured by assets beyond the defendant's house, which appears to have no equity left.  While the defendant has consistently disregarded the Court's orders and lied for his own benefit, and these measures are by no means a guarantee he will return to Court, they are some additional attempts to ensure his compliance should the Court continue his bail.

IV.     Conclusion

For the foregoing reasons, the government respectfully requests that the Court remand Watson pending sentencing or, in the alternative, impose additional stringent bail conditions.

Respectfully submitted,

BREON PEACE
United States Attorney

By:     /s/
        Jonathan Siegel
        Gillian Kassner
        Dylan A. Stern
        Assistant U.S. Attorneys
        (718) 254-6293 (Siegel)

cc:     Clerk of the Court (via ECF)
        All Counsel of Record (via ECF)

6