```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------x

  UNITED STATES,
                                              MEMORANDUM & ORDER
                                                 23-CR-82(EK)
              -against-

  CARLOS WATSON and OZY MEDIA, INC.,

                     Defendants.

-------------------------------------x
```

ERIC KOMITEE, United States District Judge:

Trial in this case recently concluded. During the defense case, defendant Watson took the stand, and his counsel sought to elicit Watson's testimony about a stock purchase agreement between Watson's company (Ozy Media) and one of its investors. The Court permitted questioning about various sections of the agreement, but precluded testimony about a provision in which the stock purchaser represented that he or she was an "Accredited Investor" — a defined term under Regulation D of the Securities Act of 1933. *See* Trial Tr. 3143; 17 C.F.R. § 230.501(a) (defining accredited investor). This order memorializes the reasons for that ruling.

The stock purchase agreement at issue is Government Exhibit 2019 ("GX2019"). The document is titled "Series C Preferred Stock Purchase Agreement" and is dated September 13, 2019. The Court admitted the exhibit into evidence, Tr. 3139-

40,[1] and the defense proceeded to question Mr. Watson about it. This line of questioning began with Section 3.5, in which "the Company" — Ozy — represents that it has delivered unaudited financial statements that "fairly present" its operating results "in all material respects." *Id*. at 3139-3143.  The defense then moved on to Section 4 of the contract — the "Representations and Warranties of the Investors."  GX2019 at 11.  Counsel elicited Mr. Watson's understanding of Section 4.4, for example, which is titled "Speculative Nature of Investment."  Tr. 3147:7-21; *see* GX2019 at 12.

At one point in this line of questioning, Mr. Watson testified about the meaning of the SEC's "accredited investor" definition; the government objected, and the Court sustained that objection:

> **Mr. Watson:** There's another piece in here that says they're an accredited investor, *which is a way of saying they're very sophisticated*, they make these investments regularly, they have lots of resources and so –
>
> **MR. SIEGEL:** Objection, Your Honor.
>
> **THE COURT:** Sustained.

Tr. 3143:3-9 (emphasis added).

The testimony about the investors' representation that they were accredited investors was excluded for two reasons.

---

[1] Though the government pre-marked the exhibit, Mr. Watson offered it into evidence.

First, the "sophistication" of a given investor, as Mr. Watson invoked in the testimony quoted above, is irrelevant to the issues in this trial. And second, Mr. Watson's testimony about the accredited investor definition constituted an incorrect statement of the law at the time GX 2019 was created (and, indeed, to this day). Given that, the testimony was likely to confuse, mislead, and prejudice the jury, and to waste its time, under Rule 403.

### I. The Sophistication of Investors Is Not Relevant

The sophistication of a stock purchaser is not, generally speaking, relevant to the question of whether a defendant committed securities fraud by his representations to that investor. In criminal prosecutions, "it does not matter whether the intended victims were gullible buyers or sophisticated investors, because the securities laws protect the gullible and unsophisticated as well as the experienced investor." *United States v. Schlisser*, 168 F. App'x 483, 486 (2d Cir. 2006).

The fact that some purchasers "may be sophisticated and knowledgeable does not warrant a less stringent standard" under the law. *Hanly v. Sec. and Exch. Comm'n*, 415 F.2d 589, 596 (2d Cir. 1969). "The [Securities] Act does not speak in terms of 'sophisticated' as opposed to 'unsophisticated' people dealing in securities. The rules when the giants play are the

3

same as when the pygmies enter the market." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 525-26 (1974) (Douglas, J., dissenting).

The defense sought to argue, in effect, that even if Watson and his alleged co-conspirators made material misstatements to investors, those investors would (or should) have done their own diligence and analysis and thereby recognized the misstatements as such. As the cases discussed above indicate, this is not a valid defense.[2]

## II. The Accredited Investor Definition Did Not Speak to Sophistication in 2019

As noted above, the defense sought to use the "accredited investor" definition to demonstrate that Ozy's investors were "very sophisticated." Tr. 3143:5-6. In addition to Watson's testimony that the term "is a way of saying they're very sophisticated," *id.*, Mr. Watson's counsel said the following in his opening argument: "These aren't some, you know, little country folks that just don't know what they're doing. These are big entities." *Id.* at 68:15-17. He argued that Ozy's investors "do their own due diligence" rather than relying

---

[2] It is likewise irrelevant whether the defendants' investors actually *relied* on misrepresentations rather than doing their own due diligence. *United States v. Vilar*, 729 F.3d 62, 88 (2d Cir. 2013) ("Reliance [] is not an element of a criminal case brought by the government under Section 10(b) or Rule 10b-5").

4

solely on that "Carlos said [Ozy made] this much money, ha, ha, ha, let's give him money." *Id.* at 68:22-24.

Mr. Watson misstated the law when he testified that accredited-investor status "is a way of saying" that an investor is "very sophisticated." *Id.* at 3143:5-6. The SEC's definition of "accredited investor," as it existed in 2019, did not require any showing of sophistication. Instead, the definition looked to the investor's ability to bear a financial loss.[3]

Section 4.6 of the Series C Preferred Stock Purchase Agreement defines "accredited investor" by reference to "Regulation D, Rule 501(a), promulgated by the Securities and Exchange Commission under the Securities Act." GX2019 at 17. That regulation — as it existed in 2019, when the Purchase Agreement was executed — relies on the "net worth," "total assets," or income of the investor, rather than any investment history or accreditation process. *See* 17 C.F.R. § 230.501(a)(3)-(4) (2019) (requiring organizations to have total assets in excess of $5,000,000 and natural persons to have either a net worth that exceeds $1,000,000, excluding the value

---

[3] The definition was expanded in December 2020 to include — as an alternative — a measure of investor sophistication, using certain "professional certifications" as a proxy. *See* 17 C.F.R. § 230.501(a)(10)(i)-(iv) (2023). That amendment did not, however, eliminate the net worth or income tests, so investors could continue to qualify without any claim to financial sophistication. *Id.* Moreover, the agreement at GX 2019 was dated September 13, 2019, and a December 2020 amendment obviously cannot inform the meaning of an agreement drafted more than fifteen months prior (or the defendant's understanding thereof). *See id.*

5

of their primary residence, or annual income in excess of $200,000 for the prior two years).

Because Regulation D said nothing about the relative sophistication of the investor, the testimony at issue would have misled and confused the jury. It would also have wasted the jury's time, given that Watson's (legally erroneous) testimony might have occasioned the need for "a mini trial [on] the meaning of securities law in which a fact witness gives an impression of what the law is, and then [the Court has] to tell the jury what the law actually is." Tr. 3151:19-22.

At bottom, Watson's testimony concerning the meaning of "accredited investor" was inadmissible to prove the term's actual meaning, because "witnesses may not present testimony in the form of legal conclusions." *Cameron v. City of New York*, 598 F.3d 50, 62 & n.5 (2d Cir. 2010). To the extent the testimony was intended to show that Mr. Watson held the mistaken *belief* that the term revealed something about his investors' sophistication, that too was inadmissible, for the reasons discussed above: investor sophistication plays no role in the elements of any charge in the indictment. *See supra* Section II. The testimony's remaining practical effect would have been to confuse or mislead the jury.

6

For those reasons, Mr. Watson's testimony concerning Section 4.6 of the Series C Preferred Stock Purchase Agreement was excluded.

SO ORDERED.

                                            /s/ Eric Komitee
                                            ERIC KOMITEE
                                            United States District Judge

Dated:     July 19, 2024
           Brooklyn, New York